UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

|  |  |
|---|---|
| iRACING.COM MOTORSPORT SIMULATIONS, LLC, a Delaware Limited Liability Company, | Civil Action No. MAGISTRATE JUDGE |
| Plaintiff, | COMPLAINT |
| v. | 05   11639 NG |
| TIM ROBINSON, individually and d/b/a www.ow-racing.com and www.torn8oalley.com | RECEIPT # AMOUNT $ SUMMONS ISSUED |
| Defendant. | LOCAL RULE 4.1 WAIVER FORM MCF ISSUED BY DPTY. CLK. DATE |

iRacing.com Motorsport Simulations, LLC, f/k/a First, LLC and First-Racing.Net ("iRacing"), alleges for its complaint against Tim Robinson ("Robinson"), individually and d/b/a www.ow-racing.com and www.torn8oalley.com, as follows:

## INTRODUCTION

1.     In December 2004, iRacing trusted Robinson enough to allow him to test the Beta version of an auto racing simulation computer game iRacing was developing but had not yet released (the "Beta Software") under the protections of a Confidential Disclosure Agreement.  A few months later, iRacing discovered that Robinson was offering unauthorized modifications to iRacing's NASCAR® Racing 2003 Season ("NASCAR® 2003") computer auto racing simulation software for free download from www.ow-racing.com and asked Robinson to cease and desist from offering those downloads. Robinson temporarily removed the links from his website to the offending files, but threatened to make the links "active again at an appropriate time."

2.     Apparently, Robinson believes it is now an "appropriate time" to

intentionally and maliciously: (a) violate iRacing's registered copyrights in NASCAR®
2003 by offering downloads and reactivate links to his modifications of NASCAR®
2003, which modifications include mechanisms that enable end users to circumvent
NASCAR® 2003's copyright protection systems; (b) register and maintain two different,
sister websites (www.owracing.com and www.torn8oalley.com) through which he can
facilitate the propagation and support of his NASCAR® 2003 derivative versions; and
(c) violate the Confidential Disclosure Agreement by disclosing and disseminating
confidential and proprietary information regarding iRacing's Beta Software.

      3.      Accordingly, iRacing brings this action for: (a) emergency, preliminary
and permanent injunctive relief and damages arising from Robinson's multiple and
volitional violations of United States copyright law, the End User License Agreement,
and the Confidential Disclosure Agreement; and (b) declaratory judgment that iRacing
owns the exclusive rights to create derivative works from NASCAR® 2003.

JURISDICTION AND VENUE

      4.      This Court has subject matter jurisdiction pursuant to 28 U.S.C. §§ 1331,
1338 and 1367.

      5.      Pursuant to 28 U.S.C. § 1400(b), venue is proper in this jurisdiction
because iRacing is located here and Robinson's violation and threatened violation of
iRacing's copyrights knowingly caused and continues to cause injury here. Indeed, the
Confidential Disclosure Agreement lists iRacing's address as Bedford, Massachusetts
and, between the time Robinson first posted links to the offending files and the present,
Robinson has, on numerous occasions, contacted representatives of iRacing both via
email and via telephone numbers with Massachusetts area codes.

**2**

## THE PARTIES

6.      iRacing is a limited liability company organized and existing under the laws of the state of Delaware, with a principal place of business in Bedford, Massachusetts. iRacing is the registered copyright owner of the NASCAR® 2003 computer software game that is the leader in the simulated auto racing genre.

7.      On information and belief, Robinson resides in Richardson, Texas. Robinson has actual knowledge that his copyright violations cause injury to iRacing in Massachusetts.

8.      Robinson has registered both www.ow-racing.com and www.torn8oalley.com as domain names.

## iRACING'S COPYRIGHTS

9.      NASCAR® 2003 was developed by iRacing's predecessor-in-interest, Papyrus Design Group, Inc. ("Papyrus"), and released by Papyrus and its parent company, Sierra On-Line, Inc. ("Sierra"), in February 2003. David Kaemmer is iRacing's President and a founder of Papyrus.

10.     Papyrus and Kaemmer developed NASCAR® 2003 through tremendous effort and at great expense (a fact Robinson expressly acknowledged in the Confidential Disclosure Agreement). NASCAR® 2003's game designers, artists, producers and programmers strove to create a software game that appealed to a large number of players and would maintain the interest of those players for many years.

11.     iRacing is the registered owner of NASCAR® 2003 under United States Copyright Office number PA-1-266-286. The registration is in full force and effect and covers nearly all aspects of NASCAR® 2003 as it is distributed in the marketplace,

**3**

including, without limitation:

     (a)    all of the human and machine readable computer code and any other data distributed on CD-ROM with each copy of the game;

     (b)    all graphical and textual elements of the screens that appear when the game is executed on a personal computer;

     (c)    all graphical and textual elements of manuals and other documents distributed with the games; and

     (d)    all motion picture and sound recordings, and other audio visual elements.

12.    In early May 2004, Papyrus ceased operations.

13.    On May 28, 2004, Papyrus and Sierra sold their copyrights in the NASCAR® 2003 software to iRacing's predecessor, First, LLC, and now iRacing is the registered owner of copyrights in the software.

NASCAR® 2003

14.    NASCAR® 2003 is widely regarded as the most realistic computerized auto racing simulation ever created. Numerous NASCAR drivers have used it as a training tool. NASCAR® 2002 and NASCAR® 2003 respectively won the gamespy.com Racing Simulation of the Year award.

15.    NASCAR® 2003 was distributed on CD-ROMs for use on personal computers.

16.    NASCAR® 2003 includes an application called Securom to protect the software from piracy. In effect, Securom creates a lock and key that only allows the user to run NASCAR® 2003 if the NASCAR® 2003 CD-ROM is in the computer's disc

**4**

drive. This application protects against piracy by seeking to prevent the use of illicit copies or altered versions of the software.

<u>THE END USER LICENSE AGREEMENT</u>

17.    Upon installation of NASCAR® 2003 on a user's computer, the software presents the user with the End User License Agreement and asks the user to accept or reject its terms.

18.    NASCAR® 2003 only installs on the user's computer if the user accepts the EULA's terms. If the user rejects the EULA's terms, the setup will close, NASCAR® 2003 will not install on the computer and the user may not use the software. iRacing attaches a true and correct copy of the NASCAR® 2003 EULA as <u>Exhibit A</u> and incorporates that agreement as if fully set forth herein.

19.    If accepted by a user, the EULA permits the user to install NASCAR® 2003 on a home, portable or business computer, but only permits use of a single copy of the software. <u>Exhibit A, ¶ 1.</u>

20.    The EULA explicitly prohibits:

(a)    copying, reproducing, deriving source code or reverse engineering NASCAR® 2003 (i.e., analyzing the computer-language instructions to determine the way in which the programs were written), <u>Exhibit A, ¶ 3.A</u>;

(b)    transferring reproductions of NASCAR® 2003 to other parties in any way, <u>Exhibit A, ¶ 3.C(i)</u>; and

(c)    exploiting the game for "any commercial purpose." <u>Exhibit A, ¶ 3.C(ii ).</u>

21.    Finally, the EULA limits the purposes for which an end user may copy the

**5**

program to those necessary for the end user's utilization of the program or for his or her personal archives. Exhibit A, ¶ 10. The EULA specifically requires the end user to destroy all archival copies of the program if he or she transfers his or her rights to the program. Id.

22. The EULA provides commercially reasonable contractual protection of iRacing's rights and copyrights in NASCAR® 2003.

23. The EULA has not materially changed from the time it was distributed with the original software release of NASCAR® 2003.

24. In email exchanges with iRacing, Robinson informed iRacing that he had the NASCAR® 2003 EULA in his possession. Based on this information, iRacing believes that Robinson installed NASCAR® 2003 on a computer and accepted the NASCAR® 2003 EULA.

25. To the extent Robinson did not accept the EULA or otherwise obtained and used a pirated copy of NASCAR® 2003, he did so in violation of iRacing's copyrights by making unlicensed use of the software.

26. iRacing holds the rights to enforce the EULA to the extent necessary to protect its rights in NASCAR® 2003.

6

## ROBINSON'S MODIFICATION OF NASCAR® 2003

27.    Among other things, NASCAR® 2003 contains executable files, which are denominated by the suffix "exe". An executable file contains both instructions to the computer in the form of machine code and data upon which some of those instructions operate. Upon installation of NASCAR® 2003, NR2003.exe is installed on the user's computer hard drive.

28.    NR2003.exe contains machine-readable software code that implements many complex physics formulas. NR2003.exe also contains data that is run through these physics formulas. These physics formulas are at the core of the creative expression that is NASCAR® 2003 and are a large part of the creative value manifested in the software code. With each previous new release of the NASCAR® series, Papyrus programmers improved the physics formulas and changed the data to make the simulation more realistic and more exciting for the user.

29.    This physics formula data is part of the NR2003.exe file and is stored at fixed locations within that computer file. Each time the NASCAR® 2003 program is run, the physics formula data values are installed into the same locations in the computer's electronic memory.

30.    Upon information and belief, through explicitly prohibited reverse engineering either the NR2003.exe file and/or using tools that examine the computer's memory as NR2003.exe is running, third parties located the physics formula data in NR2003.exe file and determined the meaning.

31.    Using the information illicitly acquired through such reverse engineering, third parties developed the Hack Tool, which is a computer program that identifies and

**7**

locates the physics formula data within NR2003.exe, extracts this proprietary data from NR2003.exe, modifies the data, reads the modified data back into NR.2003.exe from the disk, and then overwrites NR2003.exe's data with the modified data.

32.    Upon information and belief, Robinson used the Hack Tool or some other third party application to modify the NR2003.exe to change parameters within the NASCAR® 2003 physics model to simulate two racing series other than NASCAR. Specifically, Robinson created two executables: (1) the "OW-Racing 2005 Mod" which simulates the Indy Racing League; and (2) the "Sprint Car Mod" that simulates the Sprint Car Series (collectively, the "Open Wheel Mods").

33.    The executable file for OW-Racing 2005 Mod is owr2k5_v1.0.0.1.zip.

34.    The Open Wheel Mods are unlicensed derivatives of NASCAR® 2003 that are more than 99 percent original NR2003.exe code and less than one percent modified code.

35.    When installing the OW-Racing 2005 Mod, the application asks the end user for the NASCAR® 2003 directory installed on his or her PC, then copies this directory and adds some modified files, including a hacked executable that defeats the Securom copy protection (the "NO-CD file").

36.    The Sprint Car Mod does not itself include a NO-CD file, but Robinson has developed a separate NO-CD file that users may download to circumvent the Securom copy protection when running the Sprint Car Mod.

37.    The executable application for the NO-CD file for the Sprint Car Mod is called owsc_nocd_temp.zip.

38.    With these NO-CD files, both Open Wheel Mods can run as standalone

**8**

versions that do not require the user to have a NASCAR® 2003 CD physically in his computer to run the software.

39.    Defeating the Securom copy protection allows persons who download the Open Wheel Mods to freely transfer them to users who have neither a legitimate version of NASCAR® 2003 installed on their computers nor a copy of the NASCAR® 2003 CD.

40.    Robinson's circumvention of the Securom copy protection thus promotes game piracy and dissuades consumers from buying legitimate copies of NASCAR® 2003.

### ROBINSON'S DISTRIBUTION OF NASCAR® 2003 DERIVATIVE VERSIONS

41.    In or around March 2005, iRacing discovered that Robinson was offering modifications to NASCAR® 2003 for free download in violation of iRacing's copyrights.

42.    On March 4, 2005, iRacing sent Robinson an email requesting that Robinson cease and desist offering infringing files for download.

43.    Robinson complied, but threatened to make those links "active again at an appropriate time."

44.    In or around August 2005, iRacing discovered that:

(a)    in order to propagate the OW-Racing 2005 Mod, Robinson was offering it for free download on two websites: www.ow-racing.com and www.first-racing-sucks.com; and

(b)    in order to propagate the NO-CD file for the Sprint Car Mod, Robinson was: (i) offering it for free download on www.torn8oalley.com; and (ii) providing a link to the NO-CD file on www.ow-racing.com.

**9**

45.    www.ow-racing.com is hosting the OW-Racing 2005 Mod and a link to the NO-CD file for the Sprint Car Mod.

46.    www.first-racing-sucks.com is also distributing the OW-Racing 2005 Mod.

47.    www.torn8oalley.com is hosting the NO-CD file for the Sprint Car Mod.

ROBINSON'S PUBLICATION OF iRACING'S CONFIDENTIAL INFORMATION

48.    On December 23, 2004, before publishing the OW-Racing 2005 Mod or the NO-CD file, Robinson, as "Owner, OW-Racing.com," agreed to test the beta version of racing software iRacing was developing but had not yet released (the "Beta Software").

49.    As part of that agreement, Robinson signed a Confidential Disclosure Agreement in which he agreed not to disclose "valuable and confidential information" relating to the Beta Software.

50.    iRacing attaches a true and correct copy of the Confidential Disclosure Agreement as Exhibit B and incorporates that agreement as if fully set forth herein

51.    Specifically, the Confidential Disclosure Agreement provides:

(a)    "Without prior written consent of Company, [Robinson] shall neither disclose to any third party any or all of the Information disclosed by Company hereunder, including the existence of the Product, or permit any such third party to have access to such Information, nor use such Information for any purpose other than [Beta testing] . . . .," Exhibit B, ¶ 2;

(b)    "[Robinson] shall be held expressly liable for any damages sustained by the Company due a [sic] breach of this agreement by [Robinson]. [Robinson] may also be held liable for damages sustained by the Company due

**10**

to a release or dissemination of confidential information, proprietary information, intellectual property or software," Exhibit B, ¶ 7; and

> (c)   "[Robinson] hereby acknowledges that such information, software and intellectual property in development is the result of great expense by the Company and acknowledges that future income of the Company could be adversely impacted by the release or dissemination of proprietary intellectual property." Id.

52.    In reliance on the Confidential Disclosure Agreement, iRacing disclosed confidential information to Robinson and, for a time, Robinson participated in testing the Beta Software.

53.    In June and July 2005, in violation of the Confidential Disclosure Agreement, Robinson made numerous postings on the Internet in which he disclosed and disseminated confidential and proprietary information regarding the Beta Software and differences between the Beta Software and NASCAR® 2003.

54.    iRacing has captured screen shots of these postings and, if requested, will make them available in camera for the Court's inspection.

55.    In one of the postings, Robinson asserted that the Confidential Disclosure Agreement would "never stand up in court."

56.    Robinson's violation of the Confidential Disclosure Agreement was thus both intentional and malicious.

## THE NEED FOR INJUNCTIVE RELIEF

57.    Copyright law protects NASCAR® 2003, which is also protected by the EULA and numerous other efforts by iRacing and its predecessors-in-interest to prevent its unauthorized dissemination.

58.    Robinson's creation, publication and distribution of the OW-Racing 2005 Mod and the NO-CD file have and will cause iRacing immediate, irreparable and incalculable injury.

59.    Robinson was aware of iRacing's copyrights in NASCAR® 2003, and his posting of derivative versions thereof was and is in knowing and willful violation of such rights.

60.    A temporary restraining order, as well as preliminary and permanent injunctive relief, are necessary to protect iRacing's registered copyrights and to protect iRacing against both actual and presumed irreparable harm.

### COUNT I
(COPYRIGHT INFRINGEMENT UNDER THE COPYRIGHT ACT § 501(A))

61.    iRacing realleges and incorporates by this reference the allegations contained in paragraphs 1 through 63 of this Complaint.

62.    iRacing is the assignee of the registered copyright in NASCAR® 2003.

63.    Robinson's actions constitute direct infringement of iRacing's exclusive right to reproduce and distribute copies of its copyrighted works and derivative versions thereof.

64.    Robinson's actions constitute a direct infringement of iRacing's exclusive rights under copyright by contributing to the infringing activity of users so substantially

**12**

as to be directly liable for the end-user's infringing activity.

65.     Robinson's actions constitute contributory infringement and active inducement of infringement of iRacing's exclusive rights under copyright because Robinson knew or should have known that his acts would induce, cause or materially contribute to third parties' infringement of iRacing's exclusive rights under copyright.

66.     Robinson's actions constitute vicarious infringement of iRacing's exclusive rights under copyright.

67.     Robinson's actions were a knowing, intentional and deliberate violation of iRacing's copyrights.

68.     As a result of Robinson's infringements, iRacing has suffered and continues to suffer damages and irreparable injury.

## COUNT II
(CIRCUMVENTION OF COPYRIGHT PROTECTION SYSTEMS – 17 U.S.C. § 1201(a))

69.     iRacing realleges and incorporates by this reference the allegations contained in paragraphs 1 through 71 of this Complaint.

70.     NASCAR® 2003's Securom copy protection is a technological measure that effectively controls access to a copyrighted work.

71.     Robinson's actions directly circumvent the Securom copy protection.

72.     Robinson likewise knowingly and directly offers to the public, provides or otherwise traffics in technology that is primarily designed or produced for the purpose of circumventing the Securom copy protection, or that has only a limited commercially significant purpose or use other than to circumvent the Securom copy protection.

73.     Robinson's actions constitute both vicarious and contributory violations of

**13**

the prohibitions against circumvention of copyright protection systems and against trafficking in such circumvention technology.

74. Robinson's actions constitute active inducement of violations of the prohibitions against circumvention of copyright protection systems and against trafficking in such circumvention technology.

75. As a result of Robinson's infringements, iRacing has suffered and continues to suffer damages and irreparable injury.

## COUNT III
## (DECLARATORY RELIEF)

76. iRacing realleges and incorporates by this reference the allegations contained in paragraphs 1 through 78 of this Complaint.

77. iRacing is the assignee of the registered copyright in NASCAR® 2003.

78. As the assignee of the registered copyright, iRacing has the exclusive right to reproduce and distribute copies of its copyrighted works and derivative versions thereof.

79. Nonetheless, Robinson has stated that his conduct is not illegal and, accordingly, has implied that either iRacing's copyright in NASCAR® 2003 is not enforceable, iRacing does not have standing to enforce the EULA, or both.

80. Accordingly, iRacing requests a declaratory judgment that: (a) Robinson has no right to reproduce or distribute copies of NASCAR® 2003 or any derivative versions thereof; (b) iRacing has the exclusive right to the source code and object code of NASCAR® 2003; and (c) iRacing has the exclusive right to reproduce and distribute copies of its copyrighted works and derivative versions thereof.

**14**

## COUNT IV
### (BREACH OF CONTRACT -- EULA)

81.    iRacing realleges and incorporates by this reference the allegations

contained in paragraphs 1 through 83 of this Complaint.

82.    The EULA explicitly prohibits:

(a)    copying, reproducing, deriving source code or reverse engineering

NASCAR® 2003, Exhibit C, ¶ 3.A;

(b)    transferring reproductions of NASCAR® 2003 to other parties in

any way, Exhibit C, ¶ 3.C(i); and

(c)    exploiting the game for "any commercial purpose." Exhibit C,

¶ 3.C(ii ).

83.    Robinson failed to do those things the EULA required him to do and/or did

things the EULA prohibited him from doing, including among other things:

(a)    Robinson copied NASCAR® 2003;

(b)    Robinson created and/or used an executable file that overrode and

disabled the Securom copy protection for the NASCAR® 2003 program;

(c)    Robinson transferred reproductions of NASCAR® 2003 and games

derivative of NASCAR® 2003 to members of the public as a download from the

Internet; and

(d)    Robinson exploited NASCAR® 2003 for his own commercial

purposes.

84.    iRacing fully performed under the EULA to the extent that contract

required iRacing to perform.

**15**

85.    All conditions precedent or concurrent to iRacing's claims have been fulfilled, performed or excused.

86.    Robinson's breaches of the EULA damaged iRacing in an amount it will prove at trial.

COUNT V
(BREACH OF CONTRACT – CONFIDENTIAL DISCLOSURE AGREEMENT)

87.    iRacing realleges and incorporates by this reference the allegations contained in paragraphs 1 through 89 of this Complaint.

88.    The Confidential Disclosure Agreement provides:

(a)    "Without prior written consent of Company, [Robinson] shall neither disclose to any third party any or all of the Information disclosed by Company hereunder, including the existence of the Product, or permit any such third party to have access to such Information, nor use such Information for any purpose other than [Beta testing] . . . . ;"

(b)    "[Robinson] shall be held expressly liable for any damages sustained by the Company due a [sic] breach of this agreement by [Robinson]. [Robinson] may also be held liable for damages sustained by the Company due to a release or dissemination of confidential information, proprietary information, intellectual property or software;" and

(c)    "[Robinson] hereby acknowledges that such information, software and intellectual property in development is the result of great expense by the Company and acknowledges that future income of the Company could be

**16**

adversely impacted by the release or dissemination of proprietary intellectual property."

89.     Robinson failed to do those things the Confidential Disclosure Agreement required him to do and/or did things that agreement prohibited him from doing, including among other things:

(a)     Robinson disclosed to third parties some or all of the confidential information iRacing disclosed to him relating to the Beta Software;

(b)     Robinson permitted third parties to have access to some or all of the confidential information iRacing disclosed to him relating to the Beta Software;

(c)     Robinson used some of all of the confidential information iRacing disclosed to him for purposes other than Beta testing; and

(d)     Robinson released and/or disseminated iRacing's confidential information, proprietary information, intellectual property or software.

90.     iRacing fully performed under the Confidential Disclosure Agreement to the extent that contract required iRacing to perform.

91.     All conditions precedent or concurrent to iRacing's claims have been fulfilled, performed or excused.

92.     As a result of Robinson's breaches of the Confidential Disclosure Agreement, iRacing has suffered and continues to suffer damages and irreparable injury.

PRAYERS FOR RELIEF

WHEREFORE, iRacing respectfully requests that this Court:

**17**

A.    Issue temporary, preliminary and permanent injunctions enjoining Robinson and his agents and affiliates from:

      (i)    Infringing iRacing's copyrights;

      (ii)    Circumventing iRacing's copyright protection systems and distributing circumvention technology;

      (iii)    Continuing to breach the EULA and the Confidential Disclosure Agreement; and

      (iv)    Assisting, aiding, or abetting any person or entity from engaging in any of the acts set forth in this paragraph.

B.    Requiring Robinson to deliver to iRacing all copies of material in his possession that infringe or violate any of iRacing's rights;

C.    Enter judgment in favor of iRacing on Counts I, II, IV and V of this Complaint and award iRacing all actual and consequential damages it suffered as a result of Robinson's conduct;

D.    Enter a declaratory judgment in favor of iRacing on Count III that: (a) Robinson has no right to reproduce or distribute copies of NASCAR® 2003 or any derivative versions thereof; (b) iRacing has the exclusive right to the source code and object code of NASCAR® 2003; and (c) iRacing has the exclusive right to reproduce and distribute copies of its copyrighted works and derivative versions thereof.

E.    Impose penalties against Robinson for willful violation of the copyright laws;

F.    Award iRacing its costs, attorneys' fees and other expenses pursuant to the copyright laws and Paragraph 9 of the EULA;

**18**

G.    Award iRacing pre-and post-judgment interest on its damages meas red

at the higher of: (1) the statutory interest rate; or (2) moratory interest measured b the

benefit Robinson obtained from using and modifying the source code and object c de

for NASCAR® 2003 in a manner prohibited by the copyright laws and the applicab

EULA; and

H.    Order such further relief as the Court deems just and proper.

DATED: August ___, 2005            Respectfully submitted.

iRacing.com Motorsport Simulations, LLC

By its attorneys,

PETRIE SCHWARTZ LLP
Irwin B. Schwartz (#548763)
500 Boylston Street, Suite 1860
Boston, Massachusetts 02116
Telephone: (617) 421-1800
Facsimile: (617) 421-1810

**19**

EULA.txt

YOU SHOULD CAREFULLY READ THE FOLLOWING END USER LICENSE AGREEMENT BEFORE INSTALLING
THIS SOFTWARE PROGRAM. BY INSTALLING OR OTHERWISE USING THE SOFTWARE PROGRAM, YOU
AGREE TO BE BOUND BY THE TERMS OF THIS AGREEMENT. IF YOU DO NOT AGREE TO THE TERMS
OF THIS AGREEMENT, PROMPTLY RETURN THE UNUSED SOFTWARE PROGRAM TO THE PLACE OF
PURCHASE OR CONTACT SIERRA ENTERTAINMENT, INC. CUSTOMER SERVICE AT (310) 649-8008
FOR A FULL REFUND OF THE PURCHASE PRICE WITHIN 30 DAYS OF THE ORIGINAL PURCHASE.

This software program (the "Program"), any printed materials, any on-line or
electronic documentation, and any and all copies and derivative works of such
software program (including materials created with a so called level editor, if
included) and materials are the copyrighted work of Sierra Entertainment, Inc., a
division of Vivendi Universal Games, Inc. and/or its wholly owned subsidiaries, or
its suppliers.    All rights reserved, except as expressly stated herein.  All use of
the Program is governed by the terms of this End User License Agreement provided
below ("License Agreement"). The Program is solely for use by end users according to
the terms of the License Agreement. Any use, reproduction or redistribution of the
Program not in accordance with the terms of the License Agreement is expressly
prohibited.
END USER LICENSE AGREEMENT

      1. Limited Use License. Sierra Entertainment, Inc. ("Sierra ") hereby
grants, and by installing the Program you thereby accept, a limited, non-exclusive
license and right to install and use one (1) copy of the Program for your use on
either a home, business or portable computer. In addition, the Program has a
multi-player capability that allows users to utilize the Program over the Internet
via Sierra's online game network Sierra.com. Use of the Program over Sierra.com is
subject to your acceptance of Sierra.com's Terms of Use Agreement. Sierra
Entertainment, Inc. reserves the right to update, modify or change the Sierra.com
Terms of Use Agreement at any time. The Program is licensed, not sold. Your license
confers no title or ownership in the Program.

      2. Ownership. All title, ownership rights and intellectual property rights
in and to the Program and any and all copies thereof (including but not limited to
any titles, computer code, themes, objects, characters, character names, stories,
dialog, catch phrases, locations, concepts, artwork, animations, sounds, musical
compositions, audio-visual effects, methods of operation, moral rights, any related
documentation, and "applets" incorporated into the Program) are owned by Sierra
Entertainment, Inc. or its licensors. The Program is protected by the copyright laws
of the United States, international copyright treaties and conventions and other
laws. All rights are reserved. The Program contains certain licensed materials and
Sierra 's licensors may protect their rights in the event of any violation of this
Agreement.

      3. Responsibilities of End User.
            A. Subject to the Grant of License hereinabove, you may not, in
whole or in part, copy, photocopy, reproduce, translate, reverse engineer, derive
source code, modify, disassemble, decompile, create derivative works based on the
Program, or remove any proprietary notices or labels on the Program without the
prior consent, in writing, of Sierra.
            B. The Program is licensed to you as a single product. Its component
parts may not be separated for use on more than one computer.
            C. You are entitled to use the Program for your own use, but you are
not entitled to:
(i) sell, grant a security interest in or transfer reproductions of the Program to
other parties in any way, nor to rent, lease or license the Program to others
without the prior written consent of Sierra.
(ii) exploit the Program or any of its parts for any commercial purpose including,
but not limited to, use at a cyber café, computer gaming center or any other
location-based site. Sierra may offer a separate Site License Agreement to permit
you to make the Program available for commercial use; contact Sierra for details;
(iii) host or provide matchmaking services for the Program or emulate or redirect
the communication protocols used by Sierra in the network feature of the Program,
through protocol emulation, tunneling, modifying or adding components to the
Page 1

EULA.txt
Program, use of a utility program or any other techniques now known or hereafter
developed, for any purpose including, but not limited to network play over the
Internet, network play utilizing commercial or non-commercial gaming networks or as
part of content aggregation networks without the prior written consent of Sierra ;
(iv) create or maintain, under any circumstance, more than one simultaneous
connection to Sierra.com. All such connections to Sierra.com, whether created by the
Program or by other tools and utilities, may only be made through methods and means
expressly approved by Sierra Entertainment, Inc. Under no circumstances may you
connect, or create tools that allow you to connect to Sierra.com's private binary
interface or interfaces other than those explicitly provided by Sierra
Entertainment, Inc. for public use.

        4. Program Transfer. You may permanently transfer all of your rights under
this License Agreement, provided the recipient agrees to the terms of this License
Agreement and you agree to remove the Program from your home or portable computer.

        5. Termination. This License Agreement is effective until terminated. You
may terminate the License Agreement at any time by destroying the Program. Sierra
may, at its discretion, terminate this License Agreement in the event that you fail
to comply with the terms and conditions contained herein. In such event, you must
immediately destroy the Program.

        6. Export Controls. The Program may not be re-exported, downloaded or
otherwise exported into (or to a national or resident of) any country to which the
U.S. has embargoed goods, or to anyone on the U.S. Treasury Department's list of
Specially Designated Nationals or the U.S. Commerce Department's Table of Denial
Orders. By installing the Program, you are agreeing to the foregoing and you are
representing and warranting that you are not located in, under the control of, or a
national or resident of any such country or on any such list.

        7. Limited Warranty. Sierra expressly disclaims any warranty for the
Program, Editor and Manual(s). The Program, Editor and Manual(s) are provided "as
is" without warranty of any kind, either express or implied, including, without
limitation, the implied warranties of merchantability, fitness for a particular
purpose, or noninfringement. The entire risk arising out of use or performance of
the Program and Manual(s) remains with the User, however Sierra warrants up to and
including 90 days from the date of your purchase of the Program that the media
containing the Program shall be free from defects in material and workmanship. In
the event that the media proves to be defective during that time period, and upon
presentation to Sierra of proof of purchase of the defective Program, Sierra will at
its option 1) correct any defect, 2) provide you with a product of equal or lesser
value, or 3) refund your money. Some states do not allow the exclusion or limitation
of implied warranties or liability for incidental damages, so the above limitations
may not apply to you.

        8. Limitation of Liability. NEITHER SIERRA, VIVENDI UNIVERSAL INTERACTIVE
PUBLISHING NORTH AMERICA, INC., ITS PARENT, SUBSIDIARIES OR AFFILIATES SHALL BE
LIABLE IN ANY WAY FOR LOSS OR DAMAGE OF ANY KIND RESULTING FROM THE USE OF THE
PROGRAM OR USE OF SIERRA ENTERTAINMENT, INC.'S ONLINE GAME NETWORK, SIERRA.COM
INCLUDING, BUT NOT LIMITED TO, LOSS OF GOODWILL, WORK STOPPAGE, COMPUTER FAILURE OR
MALFUNCTION, OR ANY AND ALL OTHER COMMERCIAL DAMAGES OR LOSSES. ANY WARRANTY AGAINST
INFRINGEMENT THAT MAY BE PROVIDED IN SECTION 2-312(3) OF THE UNIFORM COMMERCIAL CODE
AND/OR IN ANY OTHER COMPARABLE STATE STATUTE IS EXPRESSLY DISCLAIMED. FURTHER,
SIERRA ENTERTAINMENT, INC. SHALL NOT BE LIABLE IN ANY WAY FOR THE LOSS OR DAMAGE TO
PLAYER CHARACTERS, ACCOUNTS, STATISTICS OR USER PROFILE INFORMATION STORED ON
SIERRA.COM. I UNDERSTAND AND ACKNOWLEDGE THAT SIERRA ENTERTAINMENT, INC. CANNOT AND
WILL NOT BE RESPONSIBLE FOR ANY INTERRUPTIONS OF SERVICE ON SIERRA.COM INCLUDING,
BUT NOT LIMITED TO ISP DISRUPTIONS, SOFTWARE OR HARDWARE FAILURES OR ANY OTHER EVENT
WHICH MAY RESULT IN A LOSS OF DATA OR DISRUPTION OF SERVICE. Some states do not
allow the exclusion or limitation of incidental or consequential damages, or allow
limitations on how long an implied warranty lasts, so the above limitations may not
apply.

Page 2

EULA.txt

9. Equitable Remedies. You hereby agree that Sierra would be irreparably damaged if the terms of this License Agreement were not specifically enforced, and therefore you agree that Sierra shall be entitled, without bond, other security, or proof of damages, to appropriate equitable remedies with respect to breaches of this License Agreement, in addition to such other remedies as Sierra may otherwise have available to it under applicable laws. In the event any litigation is brought by either party in connection with this License Agreement, the prevailing party in such litigation shall be entitled to recover from the other party all the costs, attorneys' fees and other expenses incurred by such prevailing party in the litigation.

10. Limitations on License. Nothing in this License Agreement shall preclude you from making or authorizing the making of another copy or adaptation of the Program provided, however, that (1) such new copy or adaptation is created as an essential step in your utilization of the Program in accordance with the terms of this License Agreement and for NO OTHER PURPOSE; or (2) such new copy or adaptation is for archival purposes ONLY and all archival copies are destroyed in the event of your Transfer of the Program, the Termination of this Agreement or other circumstances under which your continued use of the Program ceases to be rightful.

11. Miscellaneous. This License Agreement shall be deemed to have been made and executed in the State of California and any dispute arising hereunder shall be resolved in accordance with the law of California. You agree that any claim asserted in any legal proceeding by one of the parties against the other shall be commenced and maintained in any state or federal court located in the State of California, County of Los Angeles, having subject matter jurisdiction with respect to the dispute between the parties. This License Agreement may be amended, altered or modified only by an instrument in writing, specifying such amendment, alteration or modification, executed by both parties. In the event that any provision of this License Agreement shall be held by a court or other tribunal of competent jurisdiction to be unenforceable, such provision will be enforced to the maximum extent permissible and the remaining portions of this License Agreement shall remain in full force and effect. This License Agreement constitutes and contains the entire agreement between the parties with respect to the subject matter hereof and supersedes any prior oral or written agreements.

I hereby acknowledge that I have read and understand the foregoing License Agreement and agree that the action of installing the Program is an acknowledgment of my agreement to be bound by the terms and conditions of the License Agreement contained herein. I also acknowledge and agree that this License Agreement is the complete and exclusive statement of the agreement between Sierra and I and that the License Agreement supersedes any prior or contemporaneous agreement, either oral or written, and any other communications between Sierra and myself.

CONFIDENTIAL DISCLOSURE AGREEMENT (the "Agreement"), dated as of August 20th, 2004, by between FIRST, LLC, 175 Middlesex Turnpike, Bedford, MA, 01730 USA ("FIRST"), **Tim Robinson** ,having its principal place of business **104 Poppy Ln, Richardson, TX** ("Receiving Party").

## WITNESSETH

**WHEREAS,** Company possesses certain valuable and confidential information relating to its tentatively titled product, "FIRST-Racing.net", (the "**Product**"); including but not limited to specifications and product features of said Product (the "**Information**"); and

**WHEREAS,** Company is willing to provide the Receiving Party, on a confidential basis, with some of its Information, so as to allow Company and the Receiving Party to enter into beta testing the Product; and

**WHEREAS,** the Receiving Party is willing to accept Company's disclosure of Information on a confidential basis, as provided for hereunder.

**NOW, THEREFORE,** in view of the foregoing premises which are hereby incorporated as a part of the Agreement, and in consideration of the mutual promises contained herein, Company and the Receiving Party hereby agree as follows:

1. Company shall disclose either orally or in written form primarily on its beta website such of the Information as it deems necessary to facilitate its beta testing with the Receiving Party as stated above, and the Receiving Party shall accept and hold such Information in confidence in accordance with the provisions of Paragraph 2 hereof. Upon the request at any time by Company, the Receiving Party shall promptly return to Company all Information disclosed in written or tangible form, together with all copies thereof.

2. Without prior written consent of Company, the Receiving Party shall neither disclose to any third party any or all of the Information disclosed by Company hereunder, including the existence of the Product, or permit any such third party to have access to such Information, nor use such Information for any purpose other than stated above and shall limit internal dissemination of the Information within its own organization to individuals whose duties justify the need to know such Information, and then only if there is a clear understanding with such individuals of their obligation to maintain the confidentiality of such Information and to restrict the use of such Information to the purpose herein specified. Such obligations of confidentiality shall continue until such a time as the Information becomes public knowledge without fault on the part of the Receiving Party. In addition, The Receiving Party acknowledges by signing this document that they are not under the employ, or beta testing, for any third party developing or producing Racing or Driving games or simulations.

3. The parties hereto understand that each may now market or have under development products which are competitive with products or services now offered or which may be offered by the other. Subject to the terms and conditions of this Agreement, discussions and/or communications between the parties hereto will not serve to impair the right of either party to develop, make, use, procure, and/or market products or services now or in the future which may be competitive with those offered by the other, nor require either party to disclose any planning or other information to the other.

4. For the purpose of keeping the Information confidential, the Receiving Party shall use efforts fully commensurate with those which the Receiving Party employs for the protection of corresponding information of Receiving Party, but the use of such efforts shall not constitute a defense in the event that any of the Information is not kept confidential in accordance with the terms of this Agreement.

5. The Receiving Party represents and warrants to Company that it is not a party to any other agreement or under any obligation to any third party which would prevent it from entering into this Agreement or which would adversely affect this Agreement, or the Receiving Party's compliance with any of the undertakings set forth herein and also represents and warrants that the Receiving Party has no relationship other than that of being a customer with any game company or concern.

6. This disclosure of Information by Company to the Receiving Party shall not result in any obligation on the part of either party to enter into any future agreement or to undertake any other obligation not set forth in a written agreement signed by the parties hereto.

7. The Receiving Party shall be held expressly liable for any damages sustained by the Company due a breach of this agreement by the Receiving Party. The Receiving Party may also be held liable for damages sustained by the Company due to a release of or dissemination of confidential information, proprietary information, intellectual property or software. The Receiving Party hereby acknowledges that such information, software and intellectual property in development is the result of great expense by the Company and acknowledges that future income of the Company could be adversely impacted by the release or dissemination of proprietary intellectual property.

8. This Agreement contains the entire understanding between parties with respect to the matters contemplated herein and supersedes all previous written and oral negotiations, commitments, and understandings. This Agreement cannot be altered or otherwise amended except pursuant to an instrument in writing signed by each of the parties hereto and making specific reference to this Agreement.

**IN WITNESS WHEREOF,** Company and the Receiving Party have caused this Agreement to be executed, as of the date first above written.

Company:
FIRST LLC.

By: _____

Print Name: **Steve Myers**

Title: **Vice President of Operations**

Date: 12/14/04

Receiving Party:

By: _____

Print Name: **TIMOTHY O. ROBINSON**

Title: **OWNER, OW-RACING.COM**

Date: **12/23/04**

◥JS 44 (Rev. 11/04)

# CIVIL COVER SHEET

The JS 44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. (SEE INSTRUCTIONS ON THE REVERSE OF THE FORM.)

## I. (a) PLAINTIFFS

IRACING.COM MOTORSPORT SIMULATIONS, LLC, a Delaware Limited Liability Company

## DEFENDANTS

TIM ROBINSON, individually and d/b/a www.ow-racing.com, ~~www.first-racing-sucks.com~~, and www.tom8oalley.com

**(b)** County of Residence of First Listed Plaintiff    Middlesex
(EXCEPT IN U.S. PLAINTIFF CASES)

County of Residence of First Listed Defendant    Collin, Texas
(IN U.S. PLAINTIFF CASES ONLY)

NOTE: IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE
LAND INVOLVED.

**(c)** Attorney's (Firm Name, Address, and Telephone Number)

Irwin B. Schwartz, Esquire, Petrie Schwartz LLP, 500 Boylston Street, Suite 1860, Boston, MA 02116 (617-421-1800 (Ext. 32))

Attorneys (If Known)

## II. BASIS OF JURISDICTION (Place an "X" in One Box Only)

| | |
|---|---|
| ☐ 1   U.S. Government Plaintiff | ☒ 3   Federal Question (U.S. Government Not a Party) |
| ☐ 2   U.S. Government Defendant | ☐ 4   Diversity (Indicate Citizenship of Parties in Item III) |

## III. CITIZENSHIP OF PRINCIPAL PARTIES (Place an "X" in One Box for Plaintiff
(For Diversity Cases Only) and One Box for Defendant)

| | PTF | DEF | | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | ☒ 1 | ☐ 1 | Incorporated or Principal Place of Business In This State | ☒ 4 | ☐ 4 |
| Citizen of Another State | ☐ 2 | ☒ 2 | Incorporated and Principal Place of Business In Another State | ☐ 5 | ☐ 5 |
| Citizen or Subject of a Foreign Country | ☐ 3 | ☐ 3 | Foreign Nation | ☐ 6 | ☐ 6 |

## IV. NATURE OF SUIT (Place an "X" in One Box Only)

| CONTRACT | TORTS | | FORFEITURE/PENALTY | BANKRUPTCY | OTHER STATUTES |
|---|---|---|---|---|---|
| ☐ 110 Insurance | **PERSONAL INJURY** | **PERSONAL INJURY** | ☐ 610 Agriculture | ☐ 422 Appeal 28 USC 158 | ☐ 400 State Reapportionment |
| ☐ 120 Marine | ☐ 310 Airplane | ☐ 362 Personal Injury - | ☐ 620 Other Food & Drug | ☐ 423 Withdrawal | ☐ 410 Antitrust |
| ☐ 130 Miller Act | ☐ 315 Airplane Product | Med. Malpractice | ☐ 625 Drug Related Seizure | 28 USC 157 | ☐ 430 Banks and Banking |
| ☐ 140 Negotiable Instrument | Liability | ☐ 365 Personal Injury - | of Property 21 USC 881 | | ☐ 450 Commerce |
| ☐ 150 Recovery of Overpayment | ☐ 320 Assault, Libel & | Product Liability | ☐ 630 Liquor Laws | **PROPERTY RIGHTS** | ☐ 460 Deportation |
| & Enforcement of Judgment | Slander | ☐ 368 Asbestos Personal | ☐ 640 R.R. & Truck | ☒ 820 Copyrights | ☐ 470 Racketeer Influenced and |
| ☐ 151 Medicare Act | ☐ 330 Federal Employers' | Injury Product | ☐ 650 Airline Regs. | ☐ 830 Patent | Corrupt Organizations |
| ☐ 152 Recovery of Defaulted | Liability | Liability | ☐ 660 Occupational | ☐ 840 Trademark | ☐ 480 Consumer Credit |
| Student Loans | ☐ 340 Marine | **PERSONAL PROPERTY** | Safety/Health | | ☐ 490 Cable/Sat TV |
| (Excl. Veterans) | ☐ 345 Marine Product | ☐ 370 Other Fraud | ☐ 690 Other | | ☐ 810 Selective Service |
| ☐ 153 Recovery of Overpayment | Liability | ☐ 371 Truth in Lending | **LABOR** | **SOCIAL SECURITY** | ☐ 850 Securities/Commodities/ |
| of Veteran's Benefits | ☐ 350 Motor Vehicle | ☐ 380 Other Personal | ☐ 710 Fair Labor Standards | ☐ 861 HIA (1395ff) | Exchange |
| ☐ 160 Stockholders' Suits | ☐ 355 Motor Vehicle | Property Damage | Act | ☐ 862 Black Lung (923) | ☐ 875 Customer Challenge |
| ☐ 190 Other Contract | Product Liability | ☐ 385 Property Damage | ☐ 720 Labor/Mgmt. Relations | ☐ 863 DIWC/DIWW (405(g)) | 12 USC 3410 |
| ☐ 195 Contract Product Liability | ☐ 360 Other Personal | Product Liability | ☐ 730 Labor/Mgmt.Reporting | ☐ 864 SSID Title XVI | ☐ 890 Other Statutory Actions |
| ☐ 196 Franchise | Injury | | & Disclosure Act | ☐ 865 RSI (405(g)) | ☐ 891 Agricultural Acts |
| **REAL PROPERTY** | **CIVIL RIGHTS** | **PRISONER PETITIONS** | ☐ 740 Railway Labor Act | **FEDERAL TAX SUITS** | ☐ 892 Economic Stabilization Act |
| ☐ 210 Land Condemnation | ☐ 441 Voting | ☐ 510 Motions to Vacate | ☐ 790 Other Labor Litigation | ☐ 870 Taxes (U.S. Plaintiff | ☐ 893 Environmental Matters |
| ☐ 220 Foreclosure | ☐ 442 Employment | Sentence | ☐ 791 Empl. Ret. Inc. | or Defendant) | ☐ 894 Energy Allocation Act |
| ☐ 230 Rent Lease & Ejectment | ☐ 443 Housing/ | **Habeas Corpus:** | Security Act | ☐ 871 IRS—Third Party | ☐ 895 Freedom of Information |
| ☐ 240 Torts to Land | Accommodations | ☐ 530 General | | 26 USC 7609 | Act |
| ☐ 245 Tort Product Liability | ☐ 444 Welfare | ☐ 535 Death Penalty | | | ☐ 900Appeal of Fee Determination |
| ☐ 290 All Other Real Property | ☐ 445 Amer. w/Disabilities - | ☐ 540 Mandamus & Other | | | Under Equal Access |
| | Employment | ☐ 550 Civil Rights | | | to Justice |
| | ☐ 446 Amer. w/Disabilities - | ☐ 555 Prison Condition | | | ☐ 950 Constitutionality of |
| | Other | | | | State Statutes |
| | ☐ 440 Other Civil Rights | | | | |

## V. ORIGIN (Place an "X" in One Box Only)

| | | | | | | Appeal to District |
|---|---|---|---|---|---|---|
| ☒ 1 Original Proceeding | ☐ 2 Removed from State Court | ☐ 3 Remanded from Appellate Court | ☐ 4 Reinstated or Reopened | ☐ 5 Transferred from another district (specify) | ☐ 6 Multidistrict Litigation | ☐ 7 Judge from Magistrate Judgment |

## VI. CAUSE OF ACTION

Cite the U.S. Civil Statute under which you are filing (Do not cite jurisdictional statutes unless diversity):
17 U.S.C. §501

Brief description of cause:
Actual and threatened violation of Plaintiff's Copyrights

## VII. REQUESTED IN COMPLAINT:

☐ CHECK IF THIS IS A CLASS ACTION
UNDER F.R.C.P. 23

DEMAND $

CHECK YES only if demanded in complaint:
JURY DEMAND:   ☐ Yes   ☒ No

## VIII. RELATED CASE(S) IF ANY

(See instructions):

JUDGE

DOCKET NUMBER

DATE

08/04/2005

SIGNATURE OF ATTORNEY OF RECORD

**FOR OFFICE USE ONLY**

RECEIPT #     AMOUNT     APPLYING IFP     JUDGE     MAG. JUDGE

UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

1.  Title of case (name of first party on each side only)  IRACING.COM MOTORSPORT SIMULATIONS, LLC v.
    TIM ROBINSON e+ al.

2.  Category in which the case belongs based upon the numbered nature of suit code listed on the civil cover sheet.  (See local
    rule 40.1(a)(1)).

    [ ]   I.     160, 410, 470, R.23, REGARDLESS OF NATURE OF SUIT.

    [✓]   II.    195, 196, 368, 400, 440, 441-446, 540, 550, 555, 625, 710, 720, 730,   *Also complete AO 120 or AO 121
                 740, 790, 791, 820*, 830*, 840*, 850, 890, 892-894, 895, 950.            for patent, trademark or copyright cases

    [ ]   III.   110, 120, 130, 140, 151, 190, 210, 230, 240, 245, 290, 310,
                 315, 320, 330, 340, 345, 350, 355, 360, 362, 365, 370, 371,
                 380, 385, 450, 891.

    [ ]   IV.    220, 422, 423, 430, 460, 480, 490, 610, 620, 630, 640, 650, 660,
                 690, 810, 861-865, 870, 871, 875, 900.

    [ ]   V.     150, 152, 153.

3.  Title and number, if any, of related cases. (See local rule 40.1(g)).  If more than one prior related case has been filed in this
    district please indicate the title and number of the first filed case in this court.

4.  Has a prior action between the same parties and based on the same claim ever been filed in this court?

                                                                              YES [ ]        NO [✓]

5.  Does the complaint in this case question the constitutionality of an act of congress affecting the public interest?  (See 28 USC
    §2403)
                                                                              YES [ ]        NO [✓]
    If so, is the U.S.A. or an officer, agent or employee of the U.S. a party?

                                                                              YES [ ]        NO [✓]

6.  Is this case required to be heard and determined by a district court of three judges pursuant to title 28 USC §2284?

                                                                              YES [ ]        NO [✓]

7.  Do all of the parties in this action, excluding governmental agencies of the united states and the Commonwealth of
    Massachusetts ("governmental agencies"), residing in Massachusetts reside in the same division? - (See Local Rule 40.1(d)).

                                                                              YES [ ]        NO [✓]

        A.     If yes, in which division do all of the non-governmental parties reside?

               Eastern Division [ ]            Central Division [ ]            Western Division [ ]

        B.     If no, in which division do the majority of the plaintiffs or the only parties, excluding governmental agencies,
               residing in Massachusetts reside?

               Eastern Division [✓]            Central Division [ ]            Western Division [ ]

8.  If filing a Notice of Removal - are there any motions pending in the state court requiring the attention of this Court?  (If yes,
    submit a separate sheet identifying the motions)

                                                                              YES [ ]        NO [✓]

(PLEASE TYPE OR PRINT)
ATTORNEY'S NAME  Irwin B. Schwartz
ADDRESS  500 Boylston Street, Suite 1860, Boston, MA 02116
TELEPHONE NO.  (617) 421-1800 x32

(CategoryForm.wpd - 2/15/05)