UNITED STATES DISTRICT COURT
FOR THE
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| iRACING.COM MOTORSPORT SIMULATIONS LLC, )<br>a Delaware Limited Liability Company, Plaintiff )<br>)<br>V.                                                                                           )<br>)<br>TIM ROBINSON, individually and d/b/a                      )<br>www.ow-racing.com,  www.torn8oalley.com, and  )<br>www.first-racing-sucks.com Defendant                     )<br>------------------------------------------------------------------- | Civil Action No.<br>05-11639 NG |

MEMORANDUM IN SUPPORT OF
DEFENDANT TIM ROBINSON'S MOTION TO DISMISS
FOR LACK OF PERSONAL JURISDICTION AND FOR IMPROPER VENUE

**Prior Proceedings**

Plaintiff  iRacing.com Motor Sport Simulations LLC (hereinafter "iRacing") filed this action on August 5, 2005.  The Complaint, in five Counts, asserts claims for copyright infringement (Count I), circumvention of copyright protection systems (Count II), declaratory relief (Count III) and breach of contract (Counts IV and V).  iRacing asserted that the Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1331 (federal question jurisdiction), § 1338 (Acts of Congress relating to copyrights) and § 1367 (ancillary jurisdiction).  Complaint ¶ 4. iRacing asserted that venue is proper in this jurisdiction pursuant to 28 U.S.C. § 1400(b).

After the Court denied iRacing's *ex parte* requests for injunctive relief, the defendant, Tim Robinson and iRacing reached agreement on the entry of a consent preliminary injunction. Dkt 14.

Robinson filed an Answer to the Complaint on August 30, 2005. Dkt. 16. Among the defenses asserted are that the Court lacks personal jurisdiction over him; and this Court is not a proper venue for the claims alleged. Answer ¶s 93, 94, 95

iRacing filed an Amended Complaint on September 7, 2005 asserting the same five causes of action. Dkt. 18. Robinson filed an Answer to the Amended Complaint on September 17, 2005. Dkt.19. Robinson again asserted as defenses that the Court lacks personal jurisdiction over him; and this Court is not a proper venue for the claims alleged. Amended Answer ¶s 93, 94, 95. Robinson now advances those defenses by means of his Motion to Dismiss and submits his Affidavit and this Memorandum in support of his Motion.

**Facts**

iRacing, formerly known as First, LLC and First-Racing.Net, is a limited liability company, organized in August 2003 and existing under the laws of the state of Delaware. Amended Complaint Opening paragraph and ¶ 6. iRacing did not register in Massachusetts as a Foreign Limited liability Company until June 13, 2005. Robinson Affid. ¶ 28 & Ex. 2.

According to a posting on the www.first-racing.net site, iRacing.com was founded by John Henry, principal owner of the Boston Red Sox, and David Kaemmer, founder of Papyrus Design Group. John Henry is described as "an avid sim racer." Robinson has raced against him. Robinson Affid. ¶ 27 & Ex. 1. Presently iRacing still is not selling anything. Robinson Affid. ¶ 7. According to iRacing's press release, what it intends to market bears little similarity to NASCAR2003. Robinson Affid. ¶ 27 & Ex. 1.

iRacing is represented by counsel who have offices both in Boston and in Colorado, and attorneys from both offices are assisting in this case. Dkt. 13.

Defendant, Tim Robinson, is a resident of Richardson, Texas.  Robinson Affid. ¶ 1.  He is an employee of a wireless  messaging company in Plano, Texas.  Id. ¶ 3.  Robinson has no property, no bank accounts and no other assets in Massachusetts.  Id. ¶ 3. He has no office, no telephone listing, no mailing address in Massachusetts.   Id. ¶ 3.  He is not qualified to do business in Massachusetts.  Id. ¶ 3.  He does not employ any person in Massachusetts.  Id. ¶ 4.  He has never shipped or delivered any products into Massachusetts.  Id. ¶ 4.  He has never sold anything in Massachusetts. Id. ¶ 4.  He has not been to Massachusetts since 1985.  Id. ¶ 2.

Robinson is a long-time avid fan of NASCAR racing.  Id. ¶ 5.  He became interested in simulated NASCAR racing in late 1996.  Id. ¶ 5.  In 2002, he stumbled across the web site www.torn8oalley.com  which hosted live racing with other sim car enthusiasts.  Id. ¶ 18.  Robinson became involved with the people hosting www.torn8oalley.com, and in 2003 made arrangements for the then-owner of the web site to place the race servers with Robinson in Plano, Texas.  Id. ¶ 18.

In February 2003 Robinson purchased in Texas a copy of NASCAR2003 that was being marketed by Papyrus.  Id. ¶ 6.   The End User License Agreement ("EULA") accompanying the game includes the following forum selection and choice of law provisions:

> 11.  Miscellaneous.  This License Agreement shall be deemed to have been made and executed in the State of California and any dispute arising hereunder shall be resolved in accordance with the law of California.  You agree that any claim asserted in any legal proceeding by one of the parties against the other shall be commenced and maintained in any state or federal court located in the State of California, County of Los Angeles, having subject matter jurisdiction with respect to the dispute between the parties. . . . .   [Amended Complaint, Ex. A, ¶ 11].

Papyrus subsequently released "a patch" in September 2003 that ultimately unlocked the capability for multiple types of physics to be used within the game.  Id. ¶ 6.   Using the "Sandbox" tool also issued by Papyrus,  one can export track geometry from NASCAR2003,

read it, and potentially create new tracks. Id. ¶ 6.  Numerous people, including Robinson, have created new tracks for use with the NASCAR2003 game, using the Sandbox or other similar available tools. Id. ¶ 6.

Papyrus ceased business some time in early 2004, and it appeared that NASCAR2003 would no longer be available for sale. Id. ¶ 7. Indeed, NASCAR2003 has not been offered for sale by any successor to Papyrus. Id. ¶ 7. The only copies of NASCAR2003 available for purchase today are copies sold on eBay and similar sites. Id. ¶ 7.

Robinson developed additional new tracks that could be used with the NASCAR2003 game. Id. ¶ 8. Robinson also developed numerous completely different models of cars that could be used with the game. Id. ¶ 8. The cars differ not only in appearance, but also in the physics of those cars, so that they respond differently on the tracks. Id. ¶ 8.

 In June 2004, Robinson created www.OW-Racing.com , a web site host for a community of simulated ("sim") racing enthusiasts. Id. ¶ 13. During the Summer of 2004, using a standard hex editor and trial and error methods, Robinson also developed a modification to NASCAR2003d and released it to a selected group of beta testers. Id. ¶ 13. The product was not intended for sale; Robinson intended to distribute it freely. Id. ¶ 13. None of the tracks or beta models can be used without the NASCAR2003 program. Id. ¶ 13.

In late 2004, Robinson was solicited by email , and was subsequently informed that he had been accepted as a "beta tester" of iRacing.com's proposed new product. Id. ¶ 9-10. Robinson received an email from a person Robinson believed to be located in Ohio that provided links to the beta test files. Id. ¶ 10.  The files were nothing new. Id. ¶ 10.

 In early 2005, the original owner of www.torn8oalley.com  tired of the work involved, and transferred operation of the site to Robinson. Id. ¶ 18. Robinson continues hosting the race

servers at his work site in Plano, Texas.  Id. ¶ 18.  Because of this and other commitments, Robinson did not have the time to devote to testing iRacing's proposed new product, and Robinson ceased serving as a beta tester.  Id. ¶ 10.

In March 2005, Robinson endeavored to engage Steve Myers in discussions whereby First-Racing and the sim racing community could peacefully co-exist.  Id. ¶ 15.  However, the exchanges concerning Robinson's web site became confrontational.  Id. ¶ 15.  About the same time frame, another employee of First-Racing contacted Robinson to try to persuade him to do some work for First-Racing, but Robinson had no interest in working for First-Racing.  Id. ¶ 15.

After iRacing sent threatening emails to Robinson, and after iRacing had commenced suit against another sim racer, Robinson established a new web site, www.FirstRacingSucks.com where anybody could post comments about First Racing, both pro and con.  Id. ¶ 20.  Persons supporting and opposing First-Racing's actions taken against members of the sim racing community posted messages on the site.

Robinson does not make any money from any of his web sites.  Id. ¶ 19b.  There is no charge for visiting any of his sites or for downloading any files, including Robinson's creations that are available at that site.  Id. ¶ 19a, 23.  There is the ability to make a donation, but Robinson has never received any.  Id. ¶ 23.  Robinson has never accepted any money for providing any of his creations to the rest of the Sim Racing Community.  Id. ¶ 13, 19b, 23.

For those 25 sim enthusiasts who want to participate in live races that are hosted on the www.Torna8oAlley.com race server, there used to be a monthly membership fee.  Id. ¶ 19a.  The money went toward paying for the servers that host the races, and paying for the bandwidth.  Id. ¶ 19b.  Any money left over was used for a party for the sim enthusiasts who attend the annual

NASCAR Nextel Cusp Series spring race in Texas. Id. ¶ 19b. Presently no one is required to pay any specific membership fee. Id. ¶ 19.

## Argument

### I. Venue in Massachusetts is improper.

A. The Venue Statute relied upon by Plaintiff demonstrates that venue in Massachusetts is not proper.

The sole statute on which iRacing relies to justify venue in Massachusetts is 28 U.S.C. § 1400(b). iRacing asserts that venue is proper under that statute

> because iRacing is located here and Robinson's violation and threatened violation of iRacing's copyrights knowingly caused and continues to cause injury here. Indeed, the Confidential Disclosure Agreement lists iRacing's address as Bedford, Massachusetts and, between the time Robinson first posted links to the offending files and the present, Robinson has, on numerous occasions, contacted representatives of iRacing both via email and via telephone numbers with Massachusetts area codes. [Complaint ¶ 5].

None of the reasons cited by iRacing are applicable under the statute upon which iRacing relies. Section 1400(b) relates to actions for "patent infringement." [1] iRacing has not asserted any claim for "patent infringement" in its Amended Complaint. Further, that section is of no avail to iRacing because the only districts in which it permits actions to be instituted are "where

---

[1]

**28 U.S.C. § 1400. Patents and copyrights**
(a) Civil actions, suits, or proceedings arising under any Act of Congress relating to copyrights or exclusive rights in mask works or designs may be instituted in the district in which the defendant or his agent resides or may be found.

(b) Any civil action for patent infringement may be brought in the judicial district where the defendant resides, or where the defendant has committed acts of infringement and has a regular and established place of business.

the defendant resides, or where the defendant has committed acts of infringement <u>and</u> has a regular and established place of business." Emphasis supplied. Robinson does not reside in Massachusetts. Putting to one side whether a web site hosted in Texas can constitute an act of infringement in Massachusetts, Robinson does not have a regular and established place of business in Massachusetts. Robinson Affid. ¶ 1-4.

Section 1400(*a*) does address actions "relating to copyrights" and iRacing has asserted claims relating to copyrights. However that section only authorizes actions to be "instituted in the district in which the defendant or his agent resides or may be found." Robinson does not reside in Massachusetts; Robinson has not been within the District of Massachusetts for over twenty years; and he has no agent in Massachusetts. Robinson Affid. ¶ 1-4. Hence, Robinson cannot be "found" in Massachusetts.

Therefore, plaintiff's cited venue statute, far from supporting venue in Massachusetts, affirmatively demonstrates that venue here is improper for plaintiff's claims.

B.      Massachusetts is Not the Proper Venue for Enforcing the End User License Agreement (Count IV)

The End User License Agreement ("EULA") was drafted by iRacing's predecessor-in-interest. Complaint ¶18 & Ex. A. A consumer is unaware of its content until after purchasing and paying for the product. It greets the user when the user attempts to install and use the NASCAR2003 game that the user has purchased. <u>Ibid</u>. It is a "take-it-or-leave-it" EULA. A user has no ability to modify its terms. <u>Ibid.</u> The EULA includes both a choice of law provision and a forum selection clause:

> 11. Miscellaneous. This License Agreement shall be deemed to have been made and executed in the State of California and any dispute arising hereunder shall be resolved in accordance with the law of California. **You agree that any claim asserted**

>    **in any legal proceeding by one of the parties against the other shall be commenced
>    and maintained in any state or federal court located in the State of California,
>    County of Los Angeles**, having subject matter jurisdiction with respect to the dispute
>    between the parties. . . . [Emphasis provided].

Putting to one side whatever rights Robinson, a Texas resident purchasing the product in Texas, may have to object to the forum-selection clause, on the grounds of unfairness, given the unreasonable deficit in bargaining power (see, e.g., Schubach v. Household Fin. Corp., 375 Mass.133, 135, 376 N.E.2d 140 (1978)), certainly iRacing is in no position to disregard its own forum selection clause. Cases may be cited where a defendant has sought and secured relief from a forum-selection clause, but none has been found where the creator of a non-negotiable forum-selection clause thereafter has sought and been granted relief from the clause.

In short, plaintiff's filing of a lawsuit in Massachusetts, is in direct contravention of its own forum-selection clause  Either (I)  iRacing is bound by the provisions of the EULA agreement, in which case iRacing knowingly filed this lawsuit in an improper venue and the claim should be dismissed; or (ii)  iRacing is not bound by the provisions of the EULA agreement, in which case neither is Robinson, and iRacing has no claim under the EULA. Either way, this claim should be dismissed.

## II.    The Court lacks Personal Jurisdiction over Robinson

A.    Although "federal question" jurisdiction is asserted, the analysis required is similar to that in a diversity case.

The start of the personal jurisdiction inquiry in federal question cases like this one differs from the inquiry in diversity cases. See 28 U.S.C. § 1332. Here, "the constitutional limits of the court's personal jurisdiction are fixed . . . not by the Fourteenth Amendment but by the Due Process Clause of the Fifth Amendment." United Elec., Radio & Mach. Workers v. 163 Pleasant

St. Corp., 960 F.2d 1080, 1085 (1st Cir. 1992).  However, personal jurisdiction and service of process are inextricably intertwined, and because of constraints on service of process, as will be seen, the analysis in this case becomes the same as that required in diversity cases.  See Id. at 1085-1086.

The basis for service of process returnable to a particular court must be grounded within a federal statute or Civil Rule.  Id. at 1085, citing Lorelei Corp. v. County of Guadalupe, 940 F.2d 717, 719-20 (1st Cir. 1991) and Johnson Creative Arts, Inc. v. Wool Masters, Inc., 743 F.2d 947, 950 (1st Cir. 1984)

> In other words, though personal jurisdiction and service of process are distinguishable, they are inextricably intertwined, since service of process constitutes the vehicle by which the court obtains jurisdiction.  See Lorelei, 940 F.2d at 719 n.1; cf. Robertson v. Railroad Labor Bd., 268 U.S. 619, 622, 45 S.Ct. 621, 622-23, 69 L.Ed. 1119 (1925) (a federal court cannot acquire personal jurisdiction over a defendant unless the defendant is properly served with process).
>
> Civil Rule 4 constitutes the principal mechanism for service of process in the federal courts.  In the majority of cases, Rule 4(f) limits service of process 'to the territorial limits of the state in which the court is held.'  Johnson, 743 F.2d at 950.  But, a number of federal laws provide for either nationwide or worldwide service . . . and Rule 4(e) authorizes extraterritorial service in such circumstances.

United Elec., 960 F.2d at 1085-1086.

In the present case, by service of a summons upon Robinson in Texas,  iRacing seeks to require Robinson, a Texas resident, to defend himself in the United States District Court of Massachusetts.   iRacing's service of the summons in Texas clearly was beyond the territorial limits of effective service of Fed. R. Civ. P.  4(f) and 4(k).

"Hence, our analysis comes full circle.  When insufficient statutory authorization for extraterritorial service exists, Rule 4(e) allows such service 'only to the extent permitted by the law of the state in which the district court sits." Lorelei, 940 F.2d at 720; see Johnson, 743 F.2d

at 950.  It follows that, absent a federal statute permitting service of process on [Robinson in Texas], our threshold inquiry must focus on Massachusetts law concerning personal jurisdiction, notwithstanding that this is a federal question case.  And, because state law is subject to Fourteenth Amendment limitations, the minimum contacts doctrine, while imposing no direct state-by-state constraint on a federal court in a federal question case, acts indirectly as a governing mechanism for the exercise of personal jurisdiction.  See Lorelei, 940 F.2sd at 720."  United Elec. Wkrs, supra, 960 F.2d 1086.

B.      iRacing bears the burden of proving that this Court has Jurisdiction under the Massachusetts Long Arm Statute and that it comports with Due Process

iRacing bears the burden of proving that the Court has personal jurisdiction over Robinson.  Foster-Miller, Inc. v. Babcock & Wolcox Canada, 46 F.3d 138, 145 (1st Cir. 1995). Under Massachusetts law, iRacing bears the burden of proving both that (1) the assertion of jurisdiction is authorized under the Massachusetts long-arm statute; and (2) if authorized, the exercise of jurisdiction is consistent with basic due process requirements mandated by the United States Constitution.  Good Hope Indus., Inc. v. Ryder Scott Co., 378 Mass. 1, 5-6, 389 N.E.2d 76 (1979). Noonan v. Winston Co., 902 F.Supp. 298, 302 (D. Mass. 1995), aff'd 135 F.3d 85 (1998).

It is iRacing's burden to demonstrate the existence of "every fact required to satisfy 'both the forum's long-arm statute and the Due Process Clause of the Constitution.'" United Elec. Workers v.  Pleasant St. Corp, 987 F.2d 39, 44 (1st Cir. 1993) (citations omitted). "The prima facie showing must be based upon evidence of specific facts set forth in the record." Ibid. To meet this requirement, the plaintiff must "go beyond the pleadings and make affirmative proof."

Ibid. (internal quotation marks omitted). However, in evaluating whether the prima facie standard has been satisfied, "the district court is not acting as a factfinder; rather, it accepts properly supported proffers of evidence by a plaintiff as true and makes its ruling as a matter of law." Ibid.  Foster-Miller, Inc. v. Babcock & Wilcox Can., 46 F.3d 138, 147 (1st Cir. 1995).

In determining whether a non-resident defendant is subject to its jurisdiction, a federal court 'is the functional equivalent of a state court sitting in the forum state.'" Sawtelle v. Farrell, 70 F.3d 1381, 1387 (1st Cir. 1995), quoting Ticketmaster-New York, Inc. v. Alioto, 26 F.3d 201, 204 (1st Cir. 1994). "A district court may exercise authority over a defendant by virtue of either general or specific jurisdiction." Mass. Sch. of Law at Andover, Inc. v. Am. Bar Ass'n, 142 F.3d 26, 34 (1st Cir. 1998). "Specific jurisdiction exists when there is a demonstrable nexus between a plaintiff's claims and a defendant's forum-based activities." Id. "General jurisdiction exists when the litigation is not directly founded on the defendant's forum-based contacts, but the defendant has nevertheless engaged in continuous and systematic activity, unrelated to the suit, in the forum state." United Elec., supra, 960 F.2d at 1088.  In the present case, under the undisputable facts, iRacing can demonstrate neither the existence of General Jurisdiction or Specific Jurisdiction.

C.        The Court Lacks General Jurisdiction over Robinson .

In evaluating whether the exercise of personal jurisdiction is warranted, courts concentrate on the "quality and quantity of contacts between the potential defendant and the forum." Phillips Exeter Acad. v. Howard Phillips Fund, Inc., 196 F.3d 284, 288 (1st Cir. 1999). In order for the assertion of general jurisdiction to comport with due process,  two criteria must be met:  First, there must be "continuous and systematic general business contacts" between the foreign defendant and the forum. Helicópteros Nacionales de Colombia, S.A. v. Hall, 466 U.S.

408, 416 (1984). Second, the plaintiff must show that the exercise of jurisdiction would be reasonable. See Donatelli v. National Hockey League, 893 F.2d 459, 465 (1st Cir. 1990) (discussing the five "gestalt factors" used to determine fundamental fairness of exercising jurisdiction). As a threshold matter, "[t]he standard for evaluating whether these contacts satisfy the constitutional general jurisdiction test is considerably more stringent than that applied to specific jurisdiction questions." Noonan v. Winston Co., 135 F.3d 85, 93 (1st Cir. 1998) (internal quotation marks omitted).    The analysis starts with Robinson's contacts with the forum because "[i]f the same do not exist in sufficient abundance . . . the inquiry ends." Donatelli, supra, 893 F.2d at 465.

    1. *Robinson's actual contacts with Massachusetts are not continuous and systematic, and are not  general business contacts*. –  In determining what constitutes "continuous and systematic" contacts, the analysis is "a fact-specific evaluation" of the defendant's contacts with the forum. Noonan, supra,135 F.3d at 93.  Robinson's contacts with Massachusetts are negligible to non-existent.  Robinson has no property or presence in Massachusetts, and almost 20 years have elapsed from his last visit to Massachusetts.   Robinson Affid. ¶ 2-4.

    2. *Robinson's  hosting of Web Sites in Texas does not support jurisdiction in Massachusetts* –  The mere fact that Robinson is hosting web sites in Texas that may be found by someone in Massachusetts is not sufficient grounds to subject him to jurisdiction of courts in Massachusetts.  See McBee v. Delica Co., Ltd., 417 F.3d 107, 124 (1st Cir. 2005).

> The mere existence of a website does not show that a defendant is directing its business activities towards every forum where the website is visible; as well, given the omnipresence of Internet websites today, allowing personal jurisdiction to be premised on such a contact alone would "eviscerate" the limits on a state's jurisdiction over out-of-state or foreign defendants.

Ibid., citing Jennings v. AC Hydraulic A/S, 383 F.3d 546, 549-50 (7th Cir. 2004)

None of the sites are being used for business purposes. None of the sites are being advertised. Robinson is not promoting the sale of any product. The web site [www.firstracingsucks.com](www.firstracingsucks.com) is used solely as a forum for exchange of views concerning First-Racing. The [www.ow-racing.com](www.ow-racing.com) site does not offer anything for sale. It simply permits visitors to the site to view what is there, and to download available files free of charge. The site [www.torn8oAlley.com](www.torn8oAlley.com) is similar to the [www.ow-racing.com](www.ow-racing.com) site, in that visitors can view the site and can download available files free of charge. The only additional feature of that site is that approximately 25 members can race against each other. None of these members are believed to be from Massachusetts. The cost of maintaining the site used to be defrayed by members paying a set monthly fee, and any leftover money is used to hose a party for members. Robinson does not profit from the site. Robinson Affid. ¶ 19a-b. Now it is strictly donations. Id. ¶ 19c.

3. *Exercising jurisdiction over Robinson would be unreasonable* – Because the contacts are missing, the question of reasonableness is not reached. However, even if it were to be reached, clearly it is unreasonable to exercise jurisdiction over Robinson. Robinson is a resident of Texas who has had no occasion to visit Massachusetts, and very limited personal resources to defend himself long distance. Robinson Affid. ¶ 1,3, 10. On the other hand, in stark contrast, one of the two principals of iRacing is John Henry, who is independently wealthy and hence has extraordinary financial resources to litigate anywhere. Also, iRacing has demonstrated that distance means nothing to iRacing, as iRacing already has engaged Colorado counsel to assist iRacing in the present case. And John Henry, as an owner of the Red Sox, also has reason and regular opportunity to travel to many states.

Thus, in addition to the lack of continuous and systematic general business contacts. exercise of general jurisdiction over Robinson would be unreasonable.

D.      The Court Lacks Specific Jurisdiction

In addition to the absence of contacts sufficient to satisfy the "continuous and systematic" threshold requirement for general jurisdiction, Robinson's contacts with Massachusetts also are insufficient for the exercise of specific jurisdiction. Determining whether iRacing has alleged sufficient facts for a finding of specific jurisdiction requires a three-part analysis. Phillips Exeter, supra, 196 F.3d at 288.   First, the claim that undergirds the litigation must directly relate to or arises out of Robinson's contacts with the forum.  Second, those contacts with Massachusetts must have constituted purposeful availment of the benefits and protections afforded by the forum's laws. Third, if and only if iRacing's case clears these first two hurdles, the court then must analyze the overall reasonableness of an exercise of jurisdiction in light of a variety of pertinent factors that touch upon the fundamental fairness of an exercise of jurisdiction. Ibid. Although iRacing's failure to overcome any one of these three hurdles dooms a finding of specific jurisdiction, in fact iRacing  cannot overcome any of these three hurdles.

1. *The claims that undergird the litigation do not directly relate to or arise out of Robinson's contacts with Massachusetts.* "The requirement that a suit arise out of, or be related to, the defendant's in-forum activities comprises the least developed prong of the due process inquiry." Ticketmaster-N.Y v. Alioto, 26 F.3d 201, 206 (1st Cir. 1994). "We know to a certainty only that the requirement focuses on the nexus between defendant's contacts and the plaintiff's cause of action." Id.; accord Sawtelle v. Farrell, 70 F.3d 1381, 1389 (1st Cir. 1995). We begin by identifying the alleged contacts, since there can be no requisite nexus between the contacts and

the cause of action if no contacts exist. Cf. Sawtelle, 70 F.3d at 1389 (stating that the defendant's contacts are central to each prong of the tripartite analysis).

In this case, iRacing essentially alleges three relatedness contacts between Robinson and Massachusetts:

> i. "Robinson's violation and threatened violation of iRacing's copyrights knowingly caused and continues to cause injury here";
> ii. "[T]he Confidential Disclosure Agreement lists iRacing's address as Bedford, Massachusetts"; and
> iii. "[B]etween the time Robinson first posted links to the offending files and the present, Robinson has, on numerous occasions, contacted representatives of iRacing both via email and via telephone numbers with Massachusetts area codes."

Amended Compl. ¶ 5. Individually and collectively, these allegations are insufficient to warrant Massachusetts exercising jurisdiction over Robinson.

i. The fact that Robinson's Texas web sites may cause injury to iRacing in Massachusetts cannot serve as a basis for asserting jurisdiction. If that were so, then it would mean that in every case a plaintiff could always sue where the plaintiff has its usual place of business, regardless of where the defendant may be located . Indeed, if this were the standard, iRacing could just as easily have alleged potential injury in any other state and compelled Robinson to defend himself in any of the fifty states. See McBee v. Delica Co., Ltd., 417 F.3d 107 (1st Cir. 2005). Such an interpretation undermines and renders meaningless the restrictions placed on service of process and on jurisdiction by numerous federal statutes and Federal Rules. Clearly, neither the federal statutes nor the Federal Rules authorize this result. The effects of the injuries caused by Robinson's activities do not qualify as related contacts.

ii. The fact that the Confidential Disclosure Agreement lists iRacing's address as Bedford, Massachusetts" is irrelevant. The issue is what were Robinson's contacts with

Massachusetts, not what were iRacing's contacts. Furthermore, on the date that iRacing was circulating this Agreement, in fact iRacing had not qualified to do business in Massachusetts. Robinson Affid. ¶ 28 & Ex. 2.

iii. Robinson's contacts with iRacing also are irrelevant. The contacts were two-fold in nature. Some contacts were generated by iRacing, seeking to have Robinson do some work for it; Robinson declined. Id. ¶ 15. The other contacts consisted of Robinson's attempts to negotiate a resolution between iRacing and the Sim racing community. Id. ¶ 15. None of iRacing's claims arise from any of these contacts.

2. There has been no purposeful availment of benefits and protections of Massachusetts laws – Robinson has not sought to avail himself of any benefits or protections of Massachusetts laws. He has no reason to do so, because he simply has had no contacts with Massachusetts.

Nor has Robinson done anything else that would subject him to personal jurisdiction under the Massachusetts Long-Arm Statute. iRacing's cause of action does not arise from Robinson's (a) transacting any business in Massachusetts, (b) contracting to supply services or things in Massachusetts, (c) causing a tortuous injury by an act or omission in Massachusetts, or (d) causing tortuous injury in this commonwealth by an act or omission outside this commonwealth if he regularly does or solicits business, or engages in any other persistent course of conduct, or derives substantial revenue from goods used or consumed or services rendered in Massachusetts. See G.L. c. 223A, § 3. Although Robinson maintains three web sites, none of them generate any income from anybody in Massachusetts. Robinson Affid. ¶ 19d. The alleged "injury" to iRacing is in the nature of contract damages, not tort damages. And, in any event, Robinson does not regularly do business in Massachusetts and the conduct of Robinson that iRacing complains about all occurred in Texas.

Although the Massachusetts courts have broadly construed the phrase "transacting any business", still iRacing must prove purposeful conduct with Massachusetts residents or businesses within Massachusetts.  See Tatro v. Manor Care, Inc., 416 Mass. 763, 767, 625 N.E.2d 549 (1994).  Jurisdiction simply does not lie under the Massachusetts Long Arm Statute where, as here, (1) Robinson maintains no office, no telephone listing, no mailing address in Massachusetts, (2) Robinson has no bank accounts in Massachusetts and neither owns, rents or uses any property in Massachusetts; (3) Robinson is not qualified to conduct business in Massachusetts and has not directed any solicitation of business into Massachusetts, (4) Robinson employs no individual in Massachusetts; and (5) Robinson has never shipped or delivered any products to Massachusetts.  See Droukas v. Divers Training Academy, Inc., 375 Mass. 149, 154, 376 N.E.2d 548 (1978);  Automatic Sprinkler Corp.v. Seneca Foods Corp., 361 Mass. 441, 444-445, 280 N.E.2d 423 (1972).

3.  *Exercise of jurisdiction simply would be unreasonable in the totality of the circumstances.–* In view of (i) the total lack of Robinson's contacts with Massachusetts, (ii) the fact that the Complaint relates to Robinson's involvement in a hobby, not a business, (iii) the fact that filing in Massachusetts is not permitted under the venue statute relied upon, and (iv)  the further fact that iRacing is suing on a document that identifies California as the sole permitted forum for its claims, it is unreasonable to subject Robinson to jurisdiction in a Massachusetts forum. If iRacing is permitted to pursue its claims anyplace, that place should be the district in which Robinson resides.  See 28 U.S.C. § 1400(a).

**Conclusion**

Upon the foregoing points and authorities, Robinson respectfully requests that his motion to dismiss be allowed, and that the case either be dismissed, on the ground that it was knowingly improperly filed in Massachusetts, or, if not dismissed, that it be transferred to the United States District Court in the District of Texas where Robinson resides..

By his attorneys,

Joseph F. Ryan BBO# 435720
Lyne Woodworth & Evarts LLP
600 Atlantic Avenue
Boston, MA 02210
Telephone 617/523-6655 - Telecopy 617/248-9877
E-mail: Jryan@LWELaw.com