UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

---

|  | X |  |
|---|---|---|
| IRACING.COM MOTORSPORT SIMULATIONS, LLC, a Delaware Limited Liability Company, | : | Civil Action No. 05-11639 NG |
|  | : |  |
| Plaintiff, | : |  |
|  | : |  |
| v. | : |  |
|  | : |  |
| TIM ROBINSON, individually and d/b/a www.ow-racing.com, www.torn8oalley.com and www.First-Racing-Sucks.com, | : | |
|  | : |  |
| Defendant. | : |  |
|  | X |  |

---

**MEMORANDUM OF POINTS AND AUTHORITIES
IN SUPPORT OF MOTION FOR PARTIAL SUMMARY JUDGMENT**

**Petrie Schwartz LLP**
500 Boylston Street, Suite 1860
Boston, Massachusetts 02116
(617) 421-1800

Counsel for Plaintiff iRacing.com Motorsport
Simulations, LLC

Dated:  August 11, 2006

## TABLE OF CONTENTS

TABLE OF AUTHORITIES ........................................................................iii-v

INTRODUCTION ................................................................................ 1

    RULE 56.1 STATEMENT OF UNDISPUTED MATERIAL FACTS ...................... 1

THE END USER LICENSE AGREEMENT.................................................... 3

ROBINSON'S MODIFICATION OF NASCAR® 2003.................................... 4

    *The OW-Racing 2004 Mod* ........................................................ 4

    *The NO-CD File* ...................................................................... 5

    *The OW-Racing 2004 Mod* ...................................................... 6

ROBINSON'S DISTRIBUTION OF NASCAR® 2003 DERIVATIVE WORKS................. 7

ARGUMENT .................................................................................. 8

    I.   ROBINSON VIOLATED IRACING'S COPYRIGHTS.................................. 9

        A.  iRacing Owns the Copyright to NASCAR® 2003 .............................. 10

        B.  Robinson Copied NASCAR® 2003 and Distributed Derivative Works ........................................................................ 11

        C.  Robinson Cannot Hide Behind "Fair Use" ...................................... 13

    II.  ROBINSON VIOLATED THE DIGITAL MILLENIUM COPYRIGHT ACT..... 17

CONCLUSION AND REQUEST FOR RELIEF............................................ 20

## TABLE OF AUTHORITIES

### Federal Cases

Anderson v. Liberty Lobby, Inc.,
  477 U.S. 242 (1986) ................................................................................. 9

Baystate Techs. Inc. v. Bowers,
  81 F. Supp. 2d 152 (D. Mass. 1999) ...................................................... 14

Bowers v. Baystate Techs., Inc.,
  320 F.3d 1317 (Fed. Cir. 2003) .............................................................. 14

Data Gen. Corp. v. Grumman Sys. Support Corp.,
  36 F.3d 1147 (1st Cir. 1994) .......................................................... 9, 10, 11

Davidson & Assocs., Inc. v. Jung,
  334 F. Supp. 2d. 1164 (E.D. Mo 2004)............................................passim

Flag Fables, Inc. v. Jean Ann's Country Flags & Crafts, Inc.,
  730 F. Supp. 1165 (D. Mass. 1989) ........................................................ 12

Fonovisa, Inc. v. Cherry Auction, Inc.,
  76 F.3d 259 (9th Cir. 1996) .................................................................... 12

Greenwich Workshop, Inc. v. Timber Creations, Inc.,
  932 F. Supp. 1210 (C.D. Cal. 1996) ....................................................... 12

GSI Lumonics, Inc. v. BioDiscovery, Inc.,
  112 F. Supp. 2d 99 (D. Mass. 2000) ...................................................... 10

Harper & Row Publishers, Inc. v. Nation Enter.,
  471 U.S. 539 (1985) ............................................................................... 13

John G. Danielson, Inc. v. Winchester-Conant Props., Inc.,
  186 F. Supp. 2d. 1 (D. Mass. 2002) .......................................................... 9

MAI Sys. Corp. v. Peak Computer, Inc.,
  991 F.2d 511 (9th Cir. 1993) .......................................................... 7, 10, 11

Martin v. Stericycle, Inc.,
  389 F. Supp. 2d 131 (D. Mass. 2005) ....................................................... 9

Metro-Goldwyn-Mayer Studios, Inc. v. Grokster, Ltd.,
  125 S. Ct. 2764 (2005) ........................................................................... 12

iii

Micro Star v. Formgen, Inc.,
  154 F.3d 1107 (9th Cir. 1998) ..................................................................... 13

Network Commerce, Inc. v. Microsoft Corp.,
  422 F.3d 1353 (Fed. Cir. 2005) ..................................................................... 2

Perfect 10 v. Google, Inc.,
  416 F. Supp. 2d 828 (C.D. Cal. 2006) ........................................................ 15

Playboy Enters., Inc. v. Frena,
  839 F. Supp. 1552 (M.D. Fla. 1993) ........................................................... 15

Rubin v. Brooks/Cole Publ'g Co.,
  836 F. Supp. 909 (D. Mass. 1993) ........................................................ 13, 16

Sega Enters. Ltd. v. MAPHIA,
  948 F. Supp. 932 (N.D. Cal. 1996) ................................................... 15, 16, 17

Segrets, Inc. v. Gillman Knitwear Co., Inc.,
  207 F.3d 56 (1st Cir. 2000) ......................................................................... 8, 9

Sony Computer Entm't Am., Inc. v. Filipiak,
  406 F. Supp. 2d 1068 (N.D. Cal. 2005) ...................................................... 17

TPS, Inc. v. U.S. Dept. of Defense,
  330 F.3d 1191 (9th Cir. 2003) ....................................................................... 5

U.S. v. Elcom Ltd.,
  203 F. Supp. 2d 1111 (N.D. Cal. 2002) ...................................................... 20

Universal City Studios, Inc. v. Corley,
  273 F.3d 429 (2d Cir. 2001) .................................................................. 17, 20

Universal City Studios, Inc. v. Reimerdes,
  111 F. Supp. 2d 294 (S.D.N.Y. 2000)................................................ 18, 19, 20

**Federal Statutes**

17 U.S.C. § 101................................................................................................ 10

17 U.S.C. § 106(1)-(3)........................................................................................ 9

17 U.S.C. § 107................................................................................................ 13

17 U.S.C. § 501(a) ................................................................................. 9

17 U.S.C. § 1201 ................................................................................. 18

17 U.S.C. § 1201(a)(2) .................................................................. 17, 19

17 U.S.C. § 1201(a)(3)(B) ................................................................. 18

17 U.S.C. § 1201(c)(1) ........................................................................ 20

## <u>INTRODUCTION</u>

The record of evidence is overwhelming that defendant Tim Robinson

("Robinson") through his websites <u>www.ow-racing.com</u>, <u>www.torn8oalley.com</u> and

<u>www.first-racing-sucks.com</u> distributed at least three derivative versions of the

NASCAR® Racing 2003 Season ("NASCAR® 2003") software program, the copyrights

to which are owned by plaintiff iRacing.com Motorsport Simulations, LLC ("iRacing").

Robinson openly admits that he created and distributed these versions without iRacing's

authorization and that he defeated the copy protection contained in NASCAR® 2003 in

at least two of the versions he distributed.  Robinson waived his only defense, that his

conduct was protected "fair use", as a matter of law when he accepted the NASCAR®

2003's end user license agreement's explicit prohibitions against creating and

distributing derivative versions.

Accordingly, iRacing brings this motion for partial summary judgment to establish

liability because Robinson:  (1) violated United States copyright law by modifying and

distributing over the Internet derivative versions of NASCAR® 2003; and (2) violated the

Digital Millennium Copyright Act ("DMCA") by using and trafficking technology designed

to circumvent SecuROM™, an application embedded in NASCAR® 2003 to prevent

unauthorized use of the software.

### RULE 56.1 STATEMENT OF UNDISPUTED MATERIAL FACTS

NASCAR® 2003 was developed by iRacing's predecessor-in-interest, Papyrus

Design Group, Inc. ("Papyrus"), and released by Papyrus and its parent company,

Sierra On-Line, Inc. ("Sierra"), in February 2003.  (Answer ¶ 9; Affidavit of David

Kaemmer in Support of Motion for Summary Judgment ("Kaemmer Aff.") ¶ 2).

1

NASCAR® 2003 is registered with the United States Copyright Office under number

PA-1-266-286, which copyrights are now owned by iRacing.  (Kaemmer Aff. ¶ 3).

NASCAR® 2003 is widely regarded as the most realistic computerized auto racing

simulation ever created, used by numerous NASCAR® drivers as a training tool, and it

has won various awards.  (Kaemmer Aff. ¶ 6; Answer ¶ 14).

NASCAR® 2003 was distributed on CD-ROMs for use on personal computers.

(Answer ¶ 15).  NR2003.exe is the executable file for the original version of NASCAR®

2003, which was updated by version 1.2.0.1.  (Affidavit of Rance DeLong in Support of

Motion for Summary Judgment ("DeLong Aff.") ¶¶ 8-9).[1]  Upon installation of NASCAR®

2003 on a user's computer, the executable file NR2003.exe is copied from the

NASCAR® 2003 CD-ROM onto the user's hard drive.  (Answer ¶ 27; DeLong Aff. ¶ 10).

 NR2003.exe contains the software code that implements a complex simulation of the

physical behavior of a racing car on the user's computer.  (Answer ¶ 28; DeLong Aff. ¶

11).  NR2003.exe also contains data that are the parameters of that simulation, which is

at the core of the creative expression and is a large part of the creative value

manifested in NASCAR® 2003.  (Answer ¶ 28; DeLong Aff. ¶ 11).

NASCAR® 2003 also incorporates a sophisticated anti-copying software

mechanism called SecuROM™, which Sony DADC developed to protect software from

piracy.  (DeLong Aff. ¶ 12).  In other words, SecuROM™ is a technological measure

that controls access to NASCAR® 2003 and prevents unlicensed users from utilizing

---

[1]      An executable or ".exe" file is a sequence of computer code that can be executed by the
computer's operating system.  Network Commerce, Inc. v. Microsoft Corp., 422 F.3d 1353, 1360 (Fed. Cir.
2005).  In other words, an executable file contains both instructions to the computer in the form of machine
code and data upon which some of those instructions operate.  (Answer ¶ 27; DeLong Aff. ¶ 10).

2

illegal copies of the software.  (DeLong Aff. ¶ 12).  SecuROM™ operates by in effect

locking the NR2003.exe application unless the user's computer disk drive contains the

originally purchased NASCAR® 2003 CD-ROM ("NR2003 CD"), which is the key that

allows the user to run the NASCAR® 2003 software.  (DeLong Aff. ¶ 12).  This

SecuROM™ mechanism protects against piracy by preventing a third party from

obtaining and running an illicit copy of the NASCAR® 2003 software without also having

an original NR2003 CD in the computer's disk drive.  (DeLong Aff. ¶ 12).[2]

## THE END USER LICENSE AGREEMENT

Upon installation of NASCAR® 2003 on a user's computer, the software presents

the user with an end user license agreement (the "EULA") and asks the user to accept

or reject its terms.[3]  (Answer ¶ 17; Kaemmer Aff. ¶ 7).  NASCAR® 2003 will only

complete installation on the user's computer if the user accepts the EULA's terms.

(Answer ¶ 18; Kaemmer Aff. ¶ 7). If the user rejects the EULA, the NASCAR® 2003

setup application will close and the software will not install on the user's computer.

(Answer ¶ 18).  The EULA permits the user to install NASCAR® 2003 on a home,

portable or business computer, but only permits use of a single copy of the software.

(Answer ¶ 19).

The EULA explicitly prohibits the conduct at issue here:  "you may not, in

whole or in part, copy, photocopy, reproduce, translate, <u>reverse engineer</u>, derive

source code, <u>modify</u>, disassemble, decompile, <u>create derivative works</u> based on the

---

[2]    Robinson was fully aware of this anti-copying application in NASCAR® 2003.  Deposition of Tim Robinson ("Robinson Dep.") 186:4-11("the CD has to be in the disk drive").  Cited excerpts from the Robinson Dep. transcript are attached to Affidavit of Irwin B. Schwartz In Support of Motion For Partial Summary Judgment as Exhibit B.

[3]    A true and correct copy of the NASCAR® 2003 EULA is Exhibit D to the Kaemmer Aff.

3

Program . . ."  and "you are not entitled to: (i)  . . .transfer reproductions of the

Program to other parties in any way. . . ."  (Kaemmer Aff. Ex. D, ¶ 3 (emphasis

added); Answer ¶ 20).  The EULA permits an end user to copy the program only

when necessary for the end user's utilization of the program or for personal

archives.  (Kaemmer Aff. Ex. D, ¶ 10; Answer ¶ 21).  iRacing can enforce the EULA

as needed to protect its NASCAR® 2003 copyrights.  (Kaemmer Aff. ¶ 8).

<u>ROBINSON'S MODIFICATION OF NASCAR® 2003</u>

Robinson admits he installed NASCAR® 2003 on a computer and accepted the

NASCAR® 2003 EULA, including its prohibitions on reverse engineering, modifying and

distributing any versions of NASCAR® 2003.  (Robinson Dep. 154:2–154:6; Answer ¶

24).  Nevertheless, as set forth below, Robinson admits that he reverse engineered,

modified and distributed derivative versions of NASCAR® 2003 on multiple occasions.

*The OW-Racing 2004 Mod*

According to Robinson, he received an application from a third party, Don

Wilshe, which Robinson operated to modify the NR2003.exe contained in NASCAR®

2003 to create the OW-Racing 2004 Mod.  (Robinson Dep. 99:18–101:9 (received

application); 102:6–103:18 (Robinson ran application to create a new modified

executable of NR2003.exe); 105:1–5 (also known as Sprint Car Mod); 107:22–108:3

(Don Wilshe)).  According to Robinson, he ran Wilshe's application himself, which made

modifications to the retail version of NR2003.exe and saved the modified file.

(Robinson Dep. 102:6–103:25).  This was confirmed by iRacing's expert, who found that

Robinson's OW-Racing 2004 Mod includes an OWSC.exe file, which is a modified and

derivative version of NR2003.exe version 1.2.0.1.  (DeLong Aff. ¶ 16).  There is no

4

dispute that Robinson thereafter distributed the OW-Racing 2004 Mod, over the Internet through his torn8oalley.com and ow-racing.com websites from September 2004 until March 15, 2005. (Robinson Dep. 99:15–100:13 (distributed Sprint Car Mod); 29:24–30:1 (Robinson owns ow-racing.com); 43:23–44:4 (Robinson owns first-racing-sucks.com); 44:22–25 (Robinson owns torn8oalley.com)).[4]  There is no dispute that third parties downloaded and used the OW-Racing 2004 Mod.  (Robinson Dep. 68:11-22 (Robinson hosted races with other users utilizing the mod)).

*The NO-CD File*

Purportedly in response to anonymous popular request, Robinson further modified NR2003.exe to create the owsc_nocd_temp.zip file (the "NO-CD File"). (Robinson Dep. 112:22–114:11; 157:4–13 (Robinson created the NO-CD File because people asked for it on ow-racing.com)).  The NO-CD File is a zip file that, when uncompressed, yields the NOCD_OWSC.exe file.  (DeLong Aff. ¶ 20).[5]  To create the NO-CD File, Robinson utilized a "no CD patch" that he purportedly found on the Internet contained in another (evidently illegitimate version) of NASCAR® 2003 and compared it to his OWSC.exe file to isolate the differences and generate the SecuROM™ circumvention functionality in the NO-CD File.  (Robinson Dep. 112:22–114:11).

The NOCD_OWSC.exe file carries forward the modified functionality of OWSC.exe and also circumvents the SecuROM™ copy protection.  (DeLong Aff. ¶¶ 22-23).  In other words, Robinson's NOCD_OWSC.exe file allows users to run the OW-

---

[4]    The Wilshe application that modified the NR2003.exe to produce OWSC.exe left intact the SecuROM™ protection that requires an NR2003 CD be present to run the game.  (DeLong Aff. ¶ 17).
[5]    A zip file is a computer file that has been compressed; a compressed file can be stored in less space and transmitted using less bandwidth than a non-compressed file.  TPS, Inc. v. U.S. Dept. of Defense, 330 F.3d 1191, 1193 n.1 (9th Cir. 2003).

Racing 2004 Mod without having an NR2003 CD installed in their disk drive.  (DeLong Aff. ¶ 23).

*The OW-Racing 2005 Mod*

Robinson also admits he also modified NR2003.exe to create owr2k5_v1.0.0.1.zip (the "OW-Racing 2005 Mod").  (Robinson Dep. 68:1–6 (contained a modified executable); 108:16–109:10 (Robinson assembled and created the OW-Racing 2005 Mod); 121:18–122:3 (Robinson created the modified version)).  The OW-Racing 2005 Mod is a zip file that, when uncompressed, yields the file owr2k5_v1.0.0.1.exe.  (Robinson Dep. 70:10–15; DeLong Aff. ¶ 27).  To develop the OW-Racing 2005 Mod, Robinson used a reverse-engineering tool called Ultra Edit, which is a hex editor. (Robinson Dep. 164:3–167:16; 230:14–24 ("Hex editing is an essential part for creating a modified executable").  Although he claims to have no records of this, Robinson used Ultra Edit to inspect the "millions of lines" of hex code contained in NASCAR® 2003  and through a trial and error process he discerned what variables in the software he needed to change to effect the different look and feel of the OW-Racing 2005 Mod.  (Robinson Dep. 208:22–211:17; 226:4–16 ("there are over a million lines of code in this particular executable"); 227:1–228:6 (kept records of the values' location but threw them out)).

According to Robinson, he then changed certain values in the NASCAR® 2003 code and saved and re-installed the software after each modification to observe whether his changes to NR2003.exe achieved the desired results.  (Robinson Dep.

6

208:22–211:17).[6]  Through this trial and error process Robinson claims to have isolated

what variables in the NR2003.exe hex code related to what characteristics of the look

and feel of NASCAR® 2003, including but not limited to spring rates, shock rates,

weight distribution, maximum weight allowed, gas, fuel cell size, fuel cell location, and

front and rear wing adjustments.  (Robinson Dep. 208:22–211:17; 216:16–217:25).  As

an end result of this repeated process of "a series of very, very small steps", Robinson

was able to change up to fifty of these variables.  (Robinson Dep. 233:15–238:18).

     The result of Robinson's reverse engineering was the owr2k5_v1.0.0.1.exe file,

which is an executable installer.  (DeLong Aff. ¶ 27).  When a user runs

owr2k5_v1.0.0.1.exe, the executable goes through a polished installation procedure

similar to that of a consumer software product that results in the creation of a directory

called "Open Wheel Racing 2005 Season" on the user's computer.  (DeLong Aff. ¶ 27).

In this directory, there are other directories and files that mimic the structure of a

NASCAR® 2003 installation.  (DeLong Aff. ¶ 27).  One of the files packaged in the OW-

Racing 2005 Mod, OWR05.exe, is a modified and derivative version of NR2003.exe that

circumvents the SecuROM™ copy protection.  (DeLong Aff. ¶¶ 28-30).

<u>ROBINSON'S DISTRIBUTION OF NASCAR® 2003 DERIVATIVE WORKS</u>

     Robinson admitted that he created and operates the <u>www.ow-racing.com</u>,

<u>www.torn8oalley.com</u> and <u>www.first-racing-sucks.com</u> websites. (Answer ¶ 8; Robinson

Dep. 29:24–30:1; 43:23–44:4; 44:22–25).  These websites relate to computerized auto

---

[6]     Robinson admitted and there can be no dispute that each time Robinson saved and reinstalled a
modified NR2003.exe he made an unauthorized copy of NASCAR® 2003 copy on his computer's memory.
(Robinson Dep. 210:9–12). <u>See</u> <u>MAI Sys. Corp. v. Peak Computer, Inc.</u>, 991 F.2d 511, 518 (9th Cir.
1993) ("Copying," in the context of copyright law, "occurs when a computer program is transferred from a
permanent storage device to a computer's random access memory").

racing simulation, NASCAR® 2003 and derivatives of NASCAR® 2003.  (Kaemmer Aff. ¶ 9).  Each of these websites features an electronic bulletin board system ("BBS"). (Robinson Dep. 111:24 – 112:2; Kaemmer Aff. ¶ 10).  Thus, users of these websites can download information from the BBS to their own computers' memories, hard drives, or other storage devices.  (Def. Tim Robinson's Answers to Pl.'s First Set of Interrogs. ("Int. Resp.") ¶ 9; Kaemmer Aff. ¶ 10).

Robinson offered the NO-CD File for free download at www.torn8oalley.com through links at www.ow-racing.com. (Robinson Dep. 85:21–87:3).  Robinson offered the OW-Racing 2004 Mod and the OW-Racing 2005 Mod for free download at www.ow-racing.com and www.torn8oalley.com (Int. Resp. ¶¶ 6-8; Robinson Dep. 85:21–87:13). Robinson also made the OW-Racing 2005 Mod available online at www.first-racing-sucks.com. (Robinson Dep. 141:21–142:5).  Several users downloaded the OW-Racing 2004 Mod and the OW-Racing 2005 as evidenced by their participation in races and practice sessions utilizing these files.  (Robinson Dep. 68:11–22 (Robinson hosted races with other users utilizing the OW-Racing 2004 Mod);129:2–132:10 (Robinson organized practice sessions for the OW-Racing 2005 Mod)).

## ARGUMENT

In the First Circuit, summary judgment is properly entered on copyright infringement claims when there is no genuine issue of material fact.  Segrets, Inc. v. Gillman Knitwear Co., Inc., 207 F.3d 56, 63-65 (1st Cir. 2000) (summary judgment properly granted where infringing sweater stitch pattern was substantially similar to copyrighted design); John G. Danielson, Inc. v. Winchester-Conant Props., Inc., 186 F. Supp. 2d. 1, 4 (D. Mass. 2002) (granting summary judgment on copyright infringement

of architectural drawings). "'Factual disputes that are irrelevant or unnecessary will not be counted.' A genuine issue of material fact exists where the evidence with respect to the material fact in dispute 'is such that a reasonable jury could return a verdict for the nonmoving party.'" Martin v. Stericycle, Inc., 389 F. Supp. 2d 131, 133-34 (D. Mass. 2005) (granting summary judgment motion, quoting Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986)). If the evidence the nonmoving party presents "is merely colorable or is not significantly probative, summary judgment may be granted." Id. (citation and internal quotation marks omitted).

## I.    ROBINSON VIOLATED iRACING'S COPYRIGHTS

To establish its claim for copyright infringement, iRacing need only demonstrate two things: (1) iRacing owns a valid copyright; and (2) Robinson copied or distributed constituent elements of iRacing's copyrighted work without authorization. Segrets, 207 F.3d at 60 (affirming summary judgment in favor of copyright holder); 17 U.S.C. § 106(1)-(3) (owner has exclusive right to reproduce, prepare derivative works based upon, and distribute the copyrighted work); 17 U.S.C. § 501(a) ("Anyone who violates any of the exclusive rights of the copyright owner as provided by section[ ] 106 . . . is an infringer of the copyright."). Anyone who violates any of the exclusive rights of the copyright owner, including the rights to reproduce, prepare derivative works, or distribute copies of the work, is an infringer of the copyright. 17 U.S.C. §§ 106, 501; Data Gen. Corp. v. Grumman Sys. Support Corp., 36 F.3d 1147, 1186 (1st Cir. 1994) (affirming summary judgment for plaintiff software copyright holder and explaining Copyright Act grants owners exclusive rights, including rights to distribute the protected work); GSI Lumonics, Inc. v. BioDiscovery, Inc., 112 F. Supp. 2d 99, 106 (D. Mass.

9

2000) (copyright infringement occurs when consumers of software products either reverse-engineer or otherwise copy some copyrighted portion of the software); MAI Sys. Corp., 991 F.2d at 518.

As demonstrated below, there is no genuine issue as to any material fact with respect to these two elements.

### A.    iRacing Owns the Copyright to NASCAR® 2003

There can be no dispute that NASCAR® 2003 was developed by iRacing's predecessor-in-interest, Papyrus, and released by Papyrus and its parent company, Sierra, in February 2003.  (Kaemmer Aff. ¶ 2).  Papyrus registered NASCAR® 2003 with the United States Copyright Office under registration number PA-1-266-286.  (Kaemmer Aff. ¶ 3).  On May 28, 2004, Papyrus and Sierra sold their copyrights in the NASCAR® 2003 software to iRacing's predecessor, First, LLC, and the associated assignment of the copyrights was recorded as June 28, 2005.  (Kaemmer Aff. ¶ 4).  First, LLC then changed its name to iRacing.  (Kaemmer Aff. ¶ 5).  Accordingly, iRacing's copyright registration for NASCAR® 2003 is in full force and there can be no material issue in dispute that iRacing owns NASCAR® 2003 nor can there be any dispute that the NR2003.exe is covered by that copyright for the purposes of 17 U.S.C. § 101 et seq.; Data Gen. Corp., 36 F.3d at 1160 (certificate of registration is prima facie evidence of the validity of the copyright and of the facts stated in the certificate) (Kaemmer Aff. Ex. B (copyright registration for NASCAR® 2003 covers all files and code incorporated in the NASCAR® 2003 software)).

### B.    Robinson Copied NASCAR® 2003 and Distributed Derivative Works

In creating the OW-Racing 2004 Mod, the OW-Racing 2005 Mod and the NO-CD File, Robinson admits he copied an original version of NASCAR® 2003 and modified the NR2003.exe file to create derivative versions of NASCAR® 2003.  (Robinson Dep. 102:6–103:18 (Robinson ran application to create a new modified executable of NR2003.exe, included in OW-Racing 2004 Mod);108:16–109:10 (Robinson assembled and created the OW-Racing 2005 Mod); 112:22–114:11 (Robinson modified NR2003.exe to create the NO-CD File); Answer ¶ 24 (Robinson used an original version of NASCAR® 2003); DeLong Aff. ¶¶ 33-34 ( the OW-Racing 2004 Mod, the OW-Racing 2005 Mod and the NO-CD File are each derivative versions of NASCAR® 2003)).  This alone establishes the copying element.  <u>Data Gen. Corp. v. Grumman Sys. Support Corp.</u>, 825 F. Supp. at 355 (plaintiff proved infringement of its copyright through the most direct method: by showing that the defendant repeatedly copied).  Moreover, Robinson's admitted trial and error process with the Ultra Edit hex editor for reverse engineering and modifying the NR2003.exe also is unauthorized copying.  (Robinson Dep. 123:8–124:4 (each time the executable is loaded into memory, a copy is made); 208:22–211:17; 226:4–16).  <u>MAI Sys. Corp.</u>, 991 F.2d at 518 (copying occurs each time a computer program is transferred into a computer's random access memory).[7]

Robinson then distributed those derivative versions of NASCAR® 2003 to other parties over the Internet through his websites.  (Int. Resp. ¶¶ 6-10 (offered modifications

---

[7]     Likewise, members of Robinson's websites downloaded the OW-Racing 2004 Mod and the OW-Racing 2005 Mod.  (Robinson Dep. 68:11–22 (Robinson hosted races with other users who had downloaded the OW-Racing 2004 Mod);129:2–132:10 (Robinson organized practice sessions with those users who downloaded the OW-Racing 2005 Mod)).  Of course, persons who downloaded the OW-Racing 2004 Mod, the OW-Racing 2005 Mod and/or the NO-CD File from Robinson's websites made unauthorized copies of NASCAR® 2003 when they saved those files to their own computers.  <u>Metro-Goldwyn-Mayer Studios, Inc. v. Grokster, Ltd.</u>, 125 S. Ct. 2764, 2766-7 (2005) (users employed software primarily to download files and infringe copyrights).

for download online); Robinson Dep. 66:21-68:13, 85:21-94:20; 140:11–142:5; 129:2–
132:10 (users were able to download modified files)).  iRacing did not authorize
Robinson's conduct.[8]  (Kaemmer Aff. ¶ 12).  Robinson admits that he distributed these
files even after he received cease and desist notice from iRacing (Answer ¶¶ 42
(Robinson received cease and desist letter in March 2005), 44 (Robinson thereafter re-
posted the OW-Racing 2005 Mod and the NO-CD File on his websites, which were
available in August 2005)), which demonstrates Robinson knew or should have known
of the infringing nature of the downloads.  Flag Fables, Inc. v. Jean Ann's Country Flags
& Crafts, Inc., 730 F. Supp. 1165, 1169 (D. Mass. 1989) ("cease and desist" letter gave
notice of copyrights).[9]  Accordingly, this distribution as well violates iRacing's exclusive
copyrights in NASCAR® 2003.  Greenwich Workshop, Inc. v. Timber Creations, Inc.,
932 F. Supp. 1210, 1214 (C.D. Cal. 1996) (defendants infringed on copyright holder's
"exclusive right under 17 U.S.C. §  106(2) to prepare and distribute derivative works").

## C.    Robinson Cannot Hide Behind "Fair Use"

The fair use doctrine permits unauthorized use of copyrighted works "for
purposes such as criticism, comment, news reporting, teaching (including multiple

---

[8]      Nor did Robinson seek permission to distribute modified versions of NASCAR® 2003.  (Robinson
Dep. 190:14–191:5 (no permission requested for OW-Racing 2004 Mod and OW-Racing 2005 Mod);
240:8–17 (no permission requested for NO-CD File)).
[9]      Robinson's contends that the NO-CD File and the OW-Racing 2005 Mod were distributed by
mistake over his websites when he was on vacation.  (Robinson Dep. 77:25–79:15).  But Robinson admits
that he knows of no one who had access to his computer while he was away to activate the links to permit
such downloads and he claims he just can't explain how they became active.  Id.  He does admit,
however, that he created the links to the downloads, which reflected "Bite Me Fir$t" and "Bite Me Twice
Fir$t" in reference to First Racing, iRacing's previous corporate name.  (Robinson Dep. 55:22–59:22,
97:19–98:1).  In any event, Robinson admits he owned the websites through which the NASCAR® 2003
derivative versions were distributed and thus he remains liable under copyright law.  Fonovisa, Inc. v.
Cherry Auction, Inc., 76 F.3d 259, 264 (9th Cir. 1996) (imposing liability for contributory copyright
infringement on defendant who induced, caused, or materially contributed to other users' direct
infringement with knowledge of the users' infringing activity).

copies for classroom use), scholarship, or research." <u>Micro Star v. Formgen, Inc.</u>, 154 F.3d 1107, 1112-13 (9th Cir. 1998) (reversing denial of preliminary injunction, finding that use was not fair use); 17 U.S.C. § 107; <u>Harper & Row Publishers, Inc. v. Nation Enter.</u>, 471 U.S. 539, 560 (1985) (unauthorized publication of verbatim quotes of presidential memoirs was not a fair use). As an affirmative defense, Robinson has the burden to prove that his otherwise infringing conduct is protected under the fair use doctrine. <u>Rubin v. Brooks/Cole Publ'g Co.</u>, 836 F. Supp. 909, 915 (D. Mass. 1993) (burden on defendant to demonstrate fair use, but fair use established on scholarly basis).

Fair use is a red-herring here because Robinson waived his rights to reverse engineer or distribute modified versions of NASCAR® 2003 when he admittedly accepted the EULA. Indeed, in <u>Davidson & Assocs., Inc. v. Jung</u>, 334 F. Supp. 2d. 1164 (E.D. Mo 2004) <u>aff'd</u> 422 F.3d 630 (8th Cir. 2005), the defendants likewise contended that their reverse engineering of another computer software game was protected by fair use. On a EULA practically identical to the one accepted by Robinson here, the district court ruled that the defendants waived their statutory fair use defense to copyright violation when they accepted the <u>Davidson</u> EULA by which they agreed not to "translate, reverse engineer, derive source code, modify, disassemble, decompile, create derivative works." 334 F. Supp. 2d at 1170-71.[10] In reaching this conclusion, the <u>Davidson</u> court relied on <u>Bowers v. Baystate Techs., Inc.</u>, 320 F.3d 1317, 1325 (Fed.

---

[10]    It is not surprising that the EULA in <u>Davidson</u> and the EULA here are practically identical since both Davidson and Sierra were owned by Vivendi Universal Games, Inc. at the time. <u>Compare</u> <u>Davidson</u>, 334 F. Supp.2d at 1170-71 (quoting EULA at issue there) <u>with</u> Kaemmer Aff. Exh. D (the EULA at issue here)

Cir. 2003) aff,g in relevant part Baystate Techs. Inc. v. Bowers, 81 F. Supp. 2d 152 (D.

Mass. 1999) (Gorton, J.), in which the Federal Circuit found that "the First Circuit would

find that private parties are free to contractually forego the limited ability to reverse

engineer a software product under the exemptions of the Copyright Act."  320 F.3d at

1325-26.

　　　Here, the EULA explicitly prohibits: the precise copying, reproducing, deriving

source code or reverse engineering NASCAR® 2003 or distributing any form of

NASCAR® 2003:

> 3. Responsibilities of End User.
>
> A. Subject to the Grant of License hereinabove, you may not, in whole or in part, copy, photocopy, reproduce, translate, reverse engineer, derive source code, modify, disassemble, decompile, create derivative works based on the Program, or remove any proprietary notices or labels on the Program without the prior consent, in writing, of Sierra.
>
> B. The Program is licensed to you as a single product. Its component parts may not be separated for use on more than one computer.
>
> C. You are entitled to use the Program for your own use, but you are not entitled to: (i) sell, grant a security interest in or transfer reproductions of the Program to other parties in any way, nor to rent, lease or license the Program to others without the prior written consent of Sierra.

(Kaemmer Aff. Ex. D ¶ 3).  There is no dispute that Robinson accepted the NASCAR®

2003 EULA.  (Robinson Dep. 154:2–7; Answer ¶ 24).  Accordingly, Robinson waived

any fair use defense by agreeing in the EULA not to copy, reproduce, derive source

code, reverse engineer NASCAR® 2003, transfer reproductions of NASCAR® 2003 to

other parties in any way.  Davidson, 334 F. Supp. 2d at 1180-81.

　　　Moreover, there is no other basis for Robinson to claim fair use.  The OW-Racing

2004 Mod, the NO-CD File and the OW-Racing 2005 Mod were designed to supersede

14

iRacing's copyrighted work and can not be "transformative." Perfect 10 v. Google, Inc.,
416 F. Supp. 2d 828, 845 (C.D. Cal. 2006) (where infringing work merely supersedes
original work, that work is not transformative, thus not a fair use). Indeed, the
distribution of unauthorized derivative versions of NASCAR® 2003 based upon one
authorized copy directly impacts iRacing's sales of NASCAR® 2003 by "supplant[ing]
the need to purchase the genuine ... video game[ ]." Sega Enters. Ltd. v. MAPHIA, 948
F. Supp. 932, 935 (N.D. Cal. 1996). "[U]nrestricted and widespread conduct of this sort
would result in a substantial adverse impact on the market for [NASCAR® 2003]." Id.
(citing Playboy Enters., Inc. v. Frena, 839 F. Supp. 1552, 1558-59 (M.D. Fla. 1993) (no
fair use for offering video games for download)). Likewise, by distributing unauthorized
versions of NASCAR® 2003 that bypassed the SecuROM™ protections, Robinson
enabled others to avoid the purchase of the authorized version. Sega, 948 F. Supp. at
934 (no fair use where website users downloaded games to avoid cost of purchase).
"Such a purpose weighs heavily against the fair use defense." Id.

Nor can Robinson contend that he modified NASCAR® 2003 in good faith, that
he obtained the derivative works in question through legitimate channels, that he
credited original author favorably, or that he removed the offending material after protest
by the original author. Rubin, 836 F. Supp. at 918. To the contrary, even after receiving
a take down notice, Robinson allowed visitors to his websites to repeatedly and
exploitatively copy the NO-CD File and the OW-Racing 2005 Mod derivative versions of
NASCAR® 2003. (Int. Resp. ¶ ¶ 6-10).[11]

---

[11]    Robinson's bad faith is further demonstrated by his anonymous creation and maintenance of the
derisive "First Racing Sucks" website. (Robinson Dep. 43:23–44:4 (Robinson created and operates first-

15

Finally, the sweeping similarity between Robinson's deriviative works and NASCAR® 2003 and sheer extent of original NASCAR® 2003 software code contained in those derivative works mitigates against a fair use defense.  <u>Rubin</u>, 836 F. Supp. at 919 (factor weighed in favor of copyright holder); <u>Sega</u>, 948 F. Supp. at 934 ("Although not a per se rule, the copying of an entire work will ordinarily militate against a finding of fair use").  There can be no dispute that the modified executables that Robinson posted on his websites are unlicensed derivatives of NASCAR® 2003 that are more than 99.9 percent original NR2003.exe code and less than one percent modified code.  (DeLong Aff. ¶ 18).  Nor does Robinson dispute that his derivative versions contained most of the same functionality of NASCAR® 2003.  (Robinson Dep. 226:4–227:6 (NASCAR® 2003 included millions of lines of code to which Robinson made isolated changes), 263:18–264:25 (the modified executables are essentially the same game as NASCAR® 2003)).  The fact that Robinson copied NASCAR® 2003 nearly in its entirety militates against a finding of fair use.  <u>Sega Enters. Ltd. v. MAPHIA</u>, 948 F. Supp. 932, 934 (N.D. Cal. 1996) (no fair use where website users downloaded games to avoid cost of purchase).

## II.    <u>ROBINSON VIOLATED THE DIGITAL MILLENNIUM COPYRIGHT ACT</u>

The DMCA prohibits the manufacture and distribution of any technology or product that circumvents the technological measures a copyright owner uses to restrict access to its copyrighted work.  17 U.S.C. § 1201(a)(2); <u>Davidson</u>, 334 F. Supp. 2d at 1183-87 (finding defendants trafficked in circumvention technology); <u>Sony Computer</u>

---

racing-sucks.com); 55:22–57:12 (Robinson chose the name <u>first-racing-sucks</u> because "the general Sim Racing community was rather pissed off at [iRacing CEO] Dave Kaemmer and his bunch"); 45:7–54:16 (Robinson registered <u>first-racing-sucks.com</u> anonymously).  Moreover, once iRacing notified Robinson of the applicable copyright, Robinson taunted iRacing by making the offending material available through his website under links "Bite Me Fir$t" and "Bite Me Twice Fir$t" in reference to First Racing.  (Robinson Dep. 55:22–59:22, 97:19–98:1).

Entm't Am., Inc. v. Filipiak, 406 F. Supp. 2d 1068, 1074 (N.D. Cal. 2005) (online retailer of computer games liable for trafficking in technology that was primarily designed to circumvent a technological measure that effectively controlled access to a work protected by copyright); Universal City Studios, Inc. v. Corley, 273 F.3d 429, 440-41 (2d Cir. 2001) (affirming injunction against web site owner that made decryption software available online).

The DMCA prohibits the very conduct at issue here:

(2) No person shall manufacture, import, offer to the public, provide, or otherwise traffic in any technology, product, service, device, component, or part thereof, that—

(A) is primarily designed or produced for the purpose of circumventing a technological measure that effectively controls access to a work protected under this title; [or]
(B) has only limited commercially significant purpose or use other than to circumvent a technological measure that effectively controls access to a work protected under this title.

17 U.S.C. § 1201(a)(2).  A technological measure "effectively controls access to a work" so long as that measure, "in the ordinary course of its operation, requires the application of information, or a process or treatment, with the authority of the copyright owner, to gain access to the work."  17 U.S.C. §1201(a)(3)(B).  Embedded applications in software designed to prevent copying are unquestionably such "technology" protected by DMCA.  Universal City Studios, Inc. v. Reimerdes, 111 F. Supp. 2d 294, 317 (S.D.N.Y. 2000) (a computer program "unquestionably is 'technology' within the meaning of the statute").

The DMCA also prohibits trafficking in any such technology which has only limited commercially significant purpose or use other than to circumvent a technological

17

measure that effectively controls access to a protected work.  17 U.S.C. §1201 (a)(2)(B); <u>Davidson</u>, 334 F. Supp. 2d at 1186 (defendants sole purpose in developing infringing software files was to avoid the anti-circumvention restrictions of the game).

The DMCA is implicated by NASCAR® 2003's inclusion of SecuROM™, which effectively controls access to NASCAR® 2003 by creating a lock and key that only allows the user to run NASCAR® 2003 if the NASCAR® 2003 CD-ROM is in the computer's disc drive.  (DeLong Aff. ¶ 12).  The SecuROM™ application protects against piracy by preventing the use of illicit copies or altered versions of the software. (DeLong Aff. ¶ 12).  Thus, the NO-CD File and the OW-Racing 2005 Mod are "technology" under the DMCA because these files are designed to defeat the SecuROM™ copy protection system.  (DeLong Aff. ¶¶ 25, 30).

Robinson admittedly designed the NO-CD File and included the same functionality in the OW-Racing 2005 Mod for the purpose of circumventing the SecuROM™ protection that requires the original NR2003 CD to reside in the user's computer to play the NASCAR® 2003 game.  (Robinson Dep. 112:22–113:4 (the NO-CD File is a "modified executable that allowed you to operate a Sprint Car Mod without a CD in your computer"); DeLong Aff. ¶¶ 25, 30).  In creating the NOCD_OWSC.exe, Robinson circumvented NASCAR® 2003's SecuROM™ protection by means of a sophisticated "crack".  (DeLong Aff. ¶ 23).  By defeating SecuROM™, a person who downloaded the NOCD_OWSC.exe file may freely use it as a derivative version of NASCAR® 2003 without owning a license to NASCAR® 2003 or possessing an NR2003 CD.  (DeLong Aff. ¶ 24).  Robinson's NOCD_OWSC.exe variant of OWSC.exe could only be intended to circumvent the SecuROM™ protection that controls access to

18

NASCAR® 2003 and prevents unlicensed distribution of NASCAR® 2003.  (DeLong Aff. ¶ 25).

Moreover, Robinson distributed the NO-CD File and the OW-Racing 2005 Mod online at www.torn8oalley.com and www.ow-racing.com.  (Int. Resp. 6-10 (Robinson offered modifications for download online); Answer ¶ 44).  Thus, Robinson's distribution of these files constitutes trafficking in circumvention devices in violation of the DMCA. 17 U.S.C. § 1201(a)(2); Reimerdes, 111 F. Supp. 2d at 325 (posting or hyperlinking to decryption software online violates DMCA provision prohibiting trafficking in technology that circumvented measures controlling access to copyrighted works).

Accordingly, Robinson's development and distribution of the NO-CD File and the OW-Racing 2005 Mod violates both section 1201(a)(2)(A) (prohibiting programs "primarily designed or produced" to circumvent anti-circumvention measures) and section 1201(a)(2)(B) (prohibiting programs with "limited commercially significant purpose or use other than to circumvent an anti-circumvention measure).  Reimerdes, 111 F. Supp. 2d at 318-19 (finding violations of both Section 1201(a)(2)(A) and (B)).[12]

## CONCLUSION AND REQUEST FOR RELIEF

For all of these reasons, iRacing respectfully requests that this Court enter partial summary judgment finding Robinson liable for:  (1) violating United States copyright law;

---

[12]    Robinson cannot claim "Fair Use" to escape DMCA liability.  While 17 U.S.C. § 1201(c)(1) provides in relevant part that "[n]othing in this section shall affect ... defenses to copyright infringement, including fair use," that section "simply clarifies that the DMCA targets the circumvention of digital walls guarding copyrighted material (and trafficking in circumvention tools), but does not concern itself with the use of those materials."  Corley, 273 F.3d at 443.  Therefore, 17 U.S.C. § 1201(c)(1) cannot "be read to allow the circumvention of ... technology protecting copyrighted material when the material will be put to 'fair uses.' "  Id.; see also U.S. v. Elcom Ltd., 203 F. Supp. 2d 1111, 1125 (N.D. Cal. 2002) ("Congress' expressed intent to preserve the right of fair use is not inconsistent with a ban on trafficking in circumvention technologies, even those that could be used for fair use purposes other than infringement.").

and (2) violating the DMCA.

DATED:  August 11, 2006                    Respectfully submitted,
                                           iRacing.com Motorsport Simulations, LLC

                                           By its attorneys,


                                           _/S/  Irwin Schwartz__ _____
                                           **PETRIE SCHWARTZ  LLP**
                                           Irwin B. Schwartz (BBO# 548763)
                                           Lisa Lee Jordan (Pro Hac Vice)
                                           Michael G. Andrews (BBO# 663452)
                                           500 Boylston Street, Suite 1860
                                           Boston, Massachusetts 02116
                                           Telephone: (617) 421-1800
                                           Facsimile:  (617) 421-1810

## Certificate of Service

I, Irwin B. Schwartz, attorney for Plaintiff iRacing.com Motorsport Simulations, LLC, hereby certify that on this 11th day of August 2006, I filed the foregoing document with the Clerk of the Court using the CM/ECF system, which will send notification of such filing to: Joseph F. Ryan, Lyne Woodworth & Evarts LLP, 600 Atlantic Avenue, Boston, MA 02210, counsel for Defendant Tim Robinson.


     /s/  *Irwin Schwartz*
Irwin B. Schwartz