UNITED STATES DISTRICT COURT
FOR THE
DISTRICT OF MASSACHUSETTS

iRACING.COM MOTORSPORT SIMULATIONS LLC,  )
a Delaware Limited Liability Company, Plaintiff  )
                                                 )
V.                                               )          Civil Action No.
                                                 )          05-11639 NG
TIM ROBINSON, individually and d/b/a             )
www.ow-racing.com and www.torn8oalley.com,       )
Defendant                                        )
---------------------------------------------------------------------

MEMORANDUM IN OPPOSITION TO
PLAINTIFF'S MOTION FOR PARTIAL SUMMARY JUDGMENT

**Legal Standard**

The EULA upon which plaintiff relies states that "any dispute arising hereunder shall be resolved in accordance with the law of California."  Kaemmer Affid. Ex. D, ¶ 11.

Where, as here, plaintiff is the party moving for summary judgment and would bear the burden of proof at trial, it must come forward with evidence which would entitle it to a directed verdict if the evidence went uncontroverted at trial.  Plaintiff has the initial burden of establishing the absence of a genuine issue of fact on each issue material to its case. C.A.R. Transportation Brokerage Co., Inc. v. Darden Restaurants, Inc., 213 F.3d 474, 480 (9th Cir. 2000) (citations omitted).  Miller v. Glenn Miller Productions, Inc., 454 F.3d 975 (9th Cir. 2006) In ruling on a motion for summary judgment, the nonmoving party's evidence is to be believed, and all justifiable inferences are to be drawn in that party's favor. Hunt v. Cromartie, 526 U.S. 541, 552, 119 S.Ct. 1545, 143 L.Ed.2d 731 (1999).

Under the facts as presently developed, there clearly are substantial genuine issues of material fact, so that a grant of summary judgment is not appropriate.

**Argument**

1.    Plaintiff's fact assertion that Robinson permitted others to use the
       <u>NASCAR®2003 without the need for a valid CD Key is clearly contradicted.</u>

Robinson denies that the work he did permitted anybody to run NASCAR Racing 2003

Season software (NASCAR®2003) without having a valid CD key.  Robinson insists that in

order to run the program that he created, a person independently would have to obtain a valid

NASCAR®2003 CD key to unlock the program.  Robinson Affid ¶ 1.

The "proof of the pudding" that Robinson's files would not work without a valid CD key

is the fact that Attorney Schwartz was unable to do so during Robinson's deposition.  Attorney

Schwartz loaded Robinson's files into his lap top computer during Robinson's deposition, and

then tried to open and run the executable file using a NO-CD file.  Robinson Affid. ¶ 7.  He

<u>failed</u>.. *Ibid.*  "He spent substantial time, going step-by-step  attempting to demonstrate that one

could open and operate the NASCAR®2003 program without the need for a valid CD key.  He

<u>failed</u>.  The program failed to start." *Ibid.*


2.    <u>Plaintiff's assertion that Robinson's work is "derivative" is clearly contradicted.</u>

Robinson asserts, with good support, that his work is "transformative."   Plaintiff

describes the core of its innovation as follows:

> NR2003.exe contains the software code that implements a complex simulation of the
> physical behavior of a racing car on the user's computer. . . . NR2003.exe also contains
> data that are the parameters of that simulation, which is at the core of the creative
> expression and is a large part of the creative value manifested in <u>NASCAR@2003."</u>

Pltf's Memo, p. 2.

The racing cars that NR2003.exe contains are NASCAR cars.  Those are the cars for

which plaintiff's predecessor developed their physical behavior and the parameters of simulating

their physical behavior.

A NASCAR™ style stockcar has no similarity to an Open Wheel Car.  The cars handle differently, look different, sound different, and even are painted differently.  Robinson Affid. ¶ 8.  An Open Wheel Sprint Car ("OWSC") is a single gear car.  Indy Racing League cars are 6-gear cars.   A NASCAR is a 4-gear car.   The work that Robinson did changed the game in form, appearance and structure, to resemble an Open Wheel Car and an Open Wheel Sprint Car.  In doing so, Robinson had to determine the software codes and values needed to simulate the actions of the cars that he created, using a trial and error process.  Pltf's Memo, pp. 6-7.  Among the values that Robinson had to calculate for his new cars were the values for spring rates, shock rates, weight distribution, maximum weight allowed, gas, fuel cell size, fuel cell location, and front and rear wing adjustments. Pltf's Memo, p. 7.  Robinson also created new sound files that emulate the new cars.  Robinson Affid. ¶ 9.

DeLong acknowledges that "Minor changes in the NR2003.exe code and data may result in significant changes to the response and look-and-feel of the game's functionality."  DeLong Affid. ¶ 15.  These changes in fact required a lengthy and time-consuming trial-and-error method, by which Robinson created a program using different physics for different types of cars making different noises.  Robinson Affid. ¶ 12.  The changes were made to what plaintiff characterizes as "the core of the creative expression."  Thus, DeLong is confirming Robinson's position that what he has done is "transformative" in nature.   In any event, entering summary judgment in favor of a plaintiff is not highly favored on the "substantial similarity" issue in copyright cases. Berkic v. Crichton, 761 F.2d 1289, 1292 (9th Cir. 1985).

3.  Robinson's work constitutes fair use.

The Copyright Act was intended to promote creativity.  Kelly v. Ariba Soft Corp., 336 F.3d 811 (9th Cir. 2003).  To that end, the Act incorporates limitations on exclusive rights, and

permits "fair use."  17 U.S.C. § 107.  The right to reverse engineer has been upheld in order to

foster creativity.  <u>Sony Computer Entertainment v. Connectix Corp.</u>, 203 F.3d 596 (9th Cir.

2000).  <u>Sega Enterprises Ltd.v. Accolade, Inc.</u>, 977 F.2d 1510, 1518 (1993).  "[T]he fair use

doctrine preserves public access to the ideas and functional elements embedded in copyrighted

computer software programs.  <u>Sony</u>, *id* at 603.  Elements to be examined are (1)whether

defendant's use was for commercial purposes, (2) the effect on plaintiff's market, (3) the nature

of the copyrighted work, and (4) the substantiality of the portion used.  17 U.S.C. § 107.

Robinson's work was a labor of love; sim racing is his hobby.  Robinson Affid. ¶ 13.  He

did not create his files to make money, nor has he done so.  *Ibid.*  He never offered any of his

files for sale; he always made them available without charge.  *Ibid.*

Robinson's work has not caused plaintiff to lose any sales.  Robinson Affid. ¶ 14.  In

addition to the fact that his files did not permit anybody to access NASCAR®2003 without

having a valid CD key, at the time he released his files, the NASCAR®2003 game no longer was

being offered for sale.  *Ibid.*  Indeed, the NASCAR®2003 game has not been sold since that

time, and plaintiff's web site indicates that plaintiff has no intention of selling or supporting

anything resembling the NASCAR®2003 game any time in the future.  Robinson Affid. ¶ 14 &

Ex. 1.

 Although plaintiff now is adamant that nobody can tinker with their program, that was

not the attitude promoted by Papyrus when it owned the program.  Papyrus <u>encouraged</u> people

to develop enhancements to the program.  Robinson Affid. ¶ 15-16.  Papyrus's encouragement of

developers went so far as voluntarily to distribute tools and some source code, to permit

developers to create new files.  Robinson Affid. ¶ 16 & Ex. 2.

Robinson created his files in this milieu, at a time well before plaintiff endeavored to put

a stop to all creativity, and well before plaintiff sought copyright protection for itself.  Robinson

Affid. ¶ 19.  Indeed, plaintiff took no action to request removal of Robinson's files for several months, and even invited Robinson to serve as a Beta tester for a proposed new program. Robinson Affid. ¶ 19-20.  In the circumstances, it would be unconscionable to punish Robinson for conduct that was encouraged by the developer of the program and that transpired long before plaintiff acquired copyright protection..

## Conclusion

Upon the foregoing points and authorities, the defendant Tim Robinson respectfully submits that there are substantial genuine issues of contested fact making the case inappropriate for summary judgment, and plaintiff's Motion should be denied.

By his attorneys,

Joseph F. Ryan BBO# 435720
Lyne Woodworth & Evarts LLP
600 Atlantic Avenue
Boston, MA 02210
Telephone 617/523-6655 - Telecopy 617/248-9877
E-mail: Jryan@LWELaw.com

UNITED STATES DISTRICT COURT
FOR THE
DISTRICT OF MASSACHUSETTS

iRACING.COM MOTORSPORT SIMULATIONS LLC, )
a Delaware Limited Liability Company, Plaintiff )
                                              )
V.                                            )          Civil Action No.
                                              )          05-11639 NG
                                              )
TIM ROBINSON, individually and d/b/a          )
www.ow-racing.com and www.torn8oalley.com,    )
Defendant                                     )
------------------------------------------------------  )

### AFFIDAVIT OF DEFENDANT TIM ROBINSON IN OPPOSITION TO PLAINTIFF'S MOTION FOR PARTIAL SUMMARY JUDGMENT

I, Tim Robinson, OF Richardson, Texas, named as defendant in this action, upon oath depose and say as follows:

I have reviewed the "Affidavit of Rance J. DeLong in Support of Motion for Partial Summary Judgment" and "Plaintiff's Memorandum in Support of Plaintiff's Motion for Partial Summary Judgment." There are some instances where the representations made are just plain wrong, and some instances where the representations made are misleading and out of context. In several places (e.g., ¶s 4, 5) Mr. DeLong and the Memorandum refers to an "OW-Racing 2004 Mod." I have never distributed, allowed for download anything with that name.

A.     My files did not make NASCAR®2003 available to anybody who did not possess a valid CD Key

1. The several repeated statements to the effect that what I did permitted anybody to run NASCAR Racing 2003 Season software (NASCAR®2003) without having a valid CD key is wrong. In order to run the program that I created, a person independently would have to obtain a valid NASCAR®2003 CD key to unlock the program.

Page -1-

2. In paragraph 12 of his Affidavit, Mr. DeLong states that "SecuROM™ is a technological measure that controls access to NASCAR®2003. In effect, SecuROM creates a lock on the NR2003.exe application using the original NR2003 CD-ROM disk as the key that allows the user to run NASCAR®2003 only if the NR2003 CD is in the computer's drive. This SecuROM mechanism protects against piracy . . . ." This is an overstatement of the capability of SecuROM. The SecuROM is <u>not</u> copy protection. The SecuROM does <u>not</u> lock the *.exe file. All that the SecuROM does is to require that a CD be in the drive to launch the *.exe.

3. Mr. DeLong elsewhere admits that one can still open the *.exe file using a hex editor. DeLong Affid. ¶ 6-7). If what Mr. DeLong represents were indeed true, then he would not have been able to look at executables by means of hex editors, debuggers or other readily available programs. Hence, it is not accurate to represent that the SecuROM provides copy protection. SecuROM is easily exploitable.

4. Mr. DeLong's conclusion, in paragraph 24, that "a person who downloaded the NOCD_OWSC.exe file may freely transfer a derivative version of NASCAR®2003 to other users who may operate OW-Racing 2004 Mod without owing a licensed version of NASCAR®2003 or possessing an NR2003 CD" is clearly false. Simply transferring that file to someone else does not give the recipient the ability to operate the OW-Racing 2004 Mod. If one were simply to place the file onto a desktop PC and double click on the NOCD_OWSC.exe file, it would <u>fail</u>. Indeed, before stating his conclusion, Mr. DeLong stated (¶ 18, last sentence) that the OWSC Mod does <u>not</u> modify the SecuROM sections. Therefore, the NOCD-OWSC does not relieve the recipient of the need for a legal version of NASCAR®2003.

5. Indeed, every previous verison of Papyrus software has had a NO-CD patch made available and, to the best of my knowledge, no one was ever sued over that.

6. In fact, FIRST/iRacing allowed, and continues to allow, a NO–CD version of the GTP Mod to be circulated. The GTP mod was a mod done by a group called Redline Development. The GTP mod, much like the transformative version that I created, had heavily modified physics and other modifications. This "GTP" mod had a NO–CD patch that was openly allowed to exist.

7. Attorney Schwartz demonstrated for himself that my files do <u>not</u> permit anyone lacking a valid CD Key from using NASCAR®2003. During my deposition, Attorney Schwartz tried to do what is in Mr. DeLong's Affidavit. Attorney Schwartz loaded my files into his lap top computer, and then tried to open and run the executable file using a NO–CD file. He <u>failed</u>. He spent substantial time, going step-by-step attempting to demonstrate that one could open and operate the NASCAR®2003 program without the need for a valid CD key. He <u>failed</u>. The program failed to start.

## B. <u>My work is "transformative", not "derivative"</u>

8. I vehemently disagree with Mr. DeLong's characterization in paragraph 33 of what I have done as being "derivative versions." The characterization is incorrect and unfair. A NASCAR™ style stockcar has no similarity to an Open Wheel Car. The cars handle differently, look different, sound different, and even are painted differently. The work that I did changed the game in form, appearance and structure, to resemble an Open Wheel Car and an Open Wheel Sprint Car.

9. What I have done is to create a substantially different game. I have created new files with new functions of a different character from NASCAR races. I have created new cars, called "Open Wheel" cars. They bear little to no resemblance to NASCAR cars. They are substantially different not only in their looks, but also in their operating characteristics and the physics required to operate them. An Open Wheel Sprint Car ("OWSC") is a single gear car.

Indy Racing League cars are 6-gear cars. A NASCAR is a 4-gear car. I also have created new sound files that emulate the new cars. Again, the sound files are different from the sounds created by NASCAR cars.

10. My work was creative. I have produced something that plaintiffs did not have. I spent a very significant amount of time to create these new files. What I have created is "transformative." I only copied as much of the original *.exe file as was necessary for my intended use. My work does not impinge upon plaintiff's rights, because one must have rights to the original game in order to use what I have created.

11. Mr. DeLong states in paragraph 15 of his Affidavit that "Minor changes in the NR2003.exe code and data may result in significant changes to the response and look-and-feel of the game's functionality." Mr. DeLong thereby is confirming my position that what I have done is "transformative" which is an adjective of the verb "transform" meaning "1. to change in form, appearance or structure; metamorphose. 2. to change in condition, nature, or character; convert." (Dictionary.com Unabridged (v 1.0.1).

12. Mr. DeLong's characterization of my changes as being "minor" is incorrect and unfair. A significant new element in NASCAR®2003 was the physics and handling characteristics of NASCAR race cars. Using a lengthy and time-consuming trial-and-error method, I created a program using different physics for different types of cars making different noises.

C. My work constitutes fair use.

13. I have not made any money on any of the files that I have created. I spent the time creating the files, because simulated auto racing is my hobby. I never offered any of my files for sale; I always made them available without charge.

14. What I have done has not caused plaintiff to lose any sales. In addition to the fact that my files did not permit anybody to access NASCAR®2003 without having a valid CD key, when I released my files, the NASCAR®2003 game no longer was being offered for sale. The NASCAR®2003 game has not been sold since that time. The only copies of NASCAR®2003 available for purchase today that I am aware of are copies sold on eBay and similar sites. And plaintiff's web site indicates that plaintiff has no intention of selling or supporting anything resembling the NASCAR®2003 game any time in the future. Apparently plaintiff just wants the NASCAR®2003 game to die a silent death. Attached as **Exhibit 1** is an excerpt from the FAQ posting presently on plaintiff's web site.

15. I created many of my files at a time when Papyrus owned the program and Papyrus was encouraging people to do work on the program. Indeed, some time after I purchased a copy of NASCAR2003 in February 2003, Papyrus released "a patch" that included a "Sandbox" tool. Using the "Sandbox" tool issued by Papyrus, one could export track geometry from NASCAR2003 and read it. Papyrus encouraged simulated racing enthusiasts like myself to create new tracks.

16. Indeed, Papyrus made tools and source code available to outside editors to enable them to violate the terms of the EULA. Steve Myers, formerly of Papyrus and now Vice President of Operations and Production for plaintiff, was fully aware of this. Attached as **Exhibit 2** are two e-mails relating to such disclosures having been made by Papyrus. I am aware that numerous people, other than myself, have created new tracks for use with the NASCAR2003 game, using the Sandbox tool made available by Papyrus, or other similar available tools.

17. While Papyrus still was in business, I, along with others, posted new tracks and new cars on the internet, without any complaint from Papyrus.

18.  Upon information and belief, Papyrus ceased business some time in early 2004, and it appeared that NR2003 would no longer be available for sale.  After Papyrus ceased selling NASCAR2003, I continued to develop numerous completely different models of cars that could be used with the game.  The cars differ not only in appearance, but also in the physics of those cars, so that they respond differently on the tracks.

19.  When I first posted my OWSC mod on the www.ow-racing.com site in September 2004, Papyrus had ceased operations.  And this was  approximately nine months before plaintiff undertook to file for federal copyright protection.. See Memo, p. 10.

20.  Plaintiff knew that the OWSC mod was available on the internet at least by the time plaintiff invited me to join plaintiff's Beta program in December 2004.  I even disclosed the existence of the OWSC mod in my application form.  Yet plaintiff registered no complaint at that time and had no qualms about inviting me to participate as a Beta tester.

21.  In response to plaintiff's threats, I removed my files from the www.ow-racing.com web site in mid-March 2005.  I am informed that thereafter plaintiff filed for copyright protection of the NASCAR®2003 program in June 2005.

SUBSCRIBED AND SWORN TO under the pains and penalties of perjury this 16th day of October 2006.

_____
Tim Robinson

# EXHIBIT  1

**09. Is this a mod of *NASCAR Racing: 2003 Season*?**
No. We used the *NR2003* code as a starting point, taking advantage of its greatest strengths, such as the net code, which allows full fields of drivers to race online in real time, and the replay system, which enables drivers to review their on-track performance. But every major section of the code has substantially improved for the iRacing.com simulation, and large portions are all new.

22.    Return to top

**10. Do you sell or support the *NASCAR Racing: 2003* simulation?**
No. While many people still race using *NR2003* and we are honored by the position it holds in the simracing community, neither we nor any other commercial entity has a legal right to distribute or derive profit from *NR2003*. After Vivendi's license to use the trademarks involved in *NR2003* expired in 2004, any remaining copies had to be removed from shelves.

Return

# EXHIBIT 2

-----Original Message-----
From: Jan Kohl [mailto:kohlj@bellsouth.net]
Sent: Monday, April 10, 2006 10:40 PM
To: swdiecast@torn8oalley.com; swdiecast@ow-racing.com
Subject: [Fwd: Dave Noonan's GPL track conversions]

Tim, this is an email showing that not only did Papy employees know of
modification going on, they approved of it

------- Original Message --------
Subject:    Dave Noonan's GPL track conversions
Date:       Mon, 3 Feb 2003 17:00:39 -0500
From:       Yasi, Richard <Richard.Yasi@papy.com>
To:         'jkohl@nc.rr.com' <jkohl@nc.rr.com>

Hi Jan.

Would you happen to have Dave Noonan's email address?  I'm thrilled that
he's doing conversions of the GPL tracks, but I'm very curious as to whether
or not he's going to make an effort to accomodate a full field of cars at
each of them.  Some of the GPL pit lanes do NOT lend themselves well to the
way the AI likes to pit in N2003.  My thought here is that with our tools
here we could (probably) take his conversions and modify the pit lanes both
in terms of width and length (assuming of course he wasn't planning on doing
so already).  For example, Kyalami's pit lane would need to be extended
down the hill in order to accomodate a full field. I'm sure we'd all agree
that we'd rather have the potential for 43 cars running around the 'Ring and
Spa (and Monza, and Silverstone, etc.) rather than GPL's 20!  If nothing
else, I could certainly hook him up with Greg Hill, our track geometry guy,
who would be more than willing to assist him in terms of advising minimum
pit lane widths, lengths, etc.

If you feel uncomfortable giving me his email address, feel free to just
pass this message along to him and he can reply directly to me if he likes.
Thanks, and thanks for all of your N2003 coverage.  Tomorrow's the big day -
when it hits the streets.  Should be interesting!

Take care,

Rich

Richard Yasi
Director of Design and Production
Papyrus Racing Games
978-402-1118
FAX 978-402-1101
ryasi@papy.com

-----Original Message-----
From: Jan Kohl [mailto:kohlj@bellsouth.net]
Sent: Monday, April 10, 2006 10:40 PM
To: swdiecast@torn8oalley.com; swdiecast@ow-racing.com
Subject: [Fwd: Re: First Contact...]

 From Steve Myers (currently of iRacing), showing that they openly
passed tools to outside editors.  (Violating the Eula)


-------- Original Message --------
Subject:   Re: First Contact...
Date:      Thu, 16 Oct 2003 15:36:31 -0400
From:      steve@myersracing.com
To:    Fred Anderson <fred@wolfnettech.com>
CC:    jkohl@nc.rr.com


I nor anyone at Papyrus has any involvement in what is happening at PWF
at this time.  If you are looking for feedback from them then you should
ask them.  My own personal opinion from reading your posts in the shared
info forum is that you are not getting answers because you seem to be
posting with an attitude.  I am not really sure if this is your intention
or not, but if I perceive this than I am sure others must as well.

I would kindly ask that you change your readme for the tool on how you
obtained the source code, we gave it to you so it's not a mystery as to
how you got it.  The way you have it worded currently sounds like
someone stole it which is not a good thing.  I personally have not
checked out the tool, and I honestly would have no clue if it works
since I have no real experience with Max.  Glad you got something put
together though, I am sure there will be some very happy people out there.

Steve


-----"Fred Anderson" <fred@wolfnettech.com> wrote: -----

To: <steve@myersracing.com>
From: "Fred Anderson" <fred@wolfnettech.com>
Date: 10/16/2003 11:52AM
Subject: Re: First Contact...

Steve, I found out that you were the one who had supplied the source
code for the Plugin, I wanted to thank you for that. I am not sure what
all went on behind the scenes for that to happen but I appreciate your help.

Now, on to the real question, what's going on? I am trying to get som
efeedback from people in your camp and noone will reply to my posts in
the "Shared" section or my personal email attempts.

Like I had said to JayT if you have something to say to me, please do
so, being direct is the best way. I would offer the same courtesy to you.

Back to the plug, I want to release the final version but I cant find
anyone to test it fully. Maybe we could play that game were I ask you ->
you ask someone, they try it out, they tell you -> and then you tell

someone whoe tells me or you send out a smoke signal or hold up a sign
at the RedSox game ( that may only apply to today).

Thanks, Fred

    ----- Original Message -----
    *From:* steve@myersracing.com <mailto:steve@myersracing.com>
    *To:* Fred Anderson <mailto:fred@wolfnettech.com>
    *Sent:* Friday, August 01, 2003 4:37 PM
    *Subject:* Re: First Contact...

    Hi Fred,

    I am pretty sure I know who you are, fire away with what questions
    you have.  I can't promise I can answer them all.

    Steve
    -----"Fred Anderson" <fred@wolfnettech.com
    <mailto:fred@wolfnettech.com>> wrote: -----

    To: <steve@myersracing.com <mailto:steve@myersracing.com>>
    From: "Fred Anderson" <fred@wolfnettech.com
    <mailto:fred@wolfnettech.com>>
    Date: 08/01/2003 11:51AM
    Subject: First Contact...

    Hi Steve, my name is Fred Anderson. I have been working on papy
    files for a couple of years (playing since n1).
    I was talking with John B, and he mentioned that you would possibly
    be available for a few questions I might have.

    Well, I have a few. Lot's actually, but I can limit them.

    Let me know if you are interested in hearing them.
    Also, I can send you an email with a little history if you like.

    Thanks, Fred
    Fred Anderson
    fred@speedcircuit.com <mailto:fred@speedcircuit.com>