UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | X | |
|---|---|---|
| IRACING.COM MOTORSPORT SIMULATIONS, LLC, a Delaware Limited Liability Company, | :<br>:<br>: | Civil Action No.<br>05-11639 NG |
| Plaintiff, | :<br>: | |
| v. | :<br>:<br>: | REPLY IN FURTHER SUPPORT OF<br>MOTION FOR PARTIAL |
| TIM ROBINSON, individually and d/b/a www.ow-racing.com, www.torn8oalley.com and www.First-Racing-Sucks.com, | :<br>:<br>: | SUMMARY JUDGMENT<br>(Leave to file granted on<br>November 6, 2006) |
| Defendant. | :<br>: | |
| | X | |

As set forth in its moving brief, iRacing.com Motorsport Simulations, LLC ("iRacing") demonstrated copyright infringement against defendant Tim Robinson ("Robinson") based on: (1) iRacing's ownership of registered copyrights in NASCAR® Racing 2003 Season ("NASCAR® 2003") software code; and (2) Robinson's copying and distribution of constituent elements of that copyrighted work without authorization. Segrets, Inc. v. Gillman Knitwear Co., Inc., 207 F.3d 56, 60 (1st Cir. 2000) (affirming summary judgment in favor of copyright holder); see also 17 U.S.C. § 106(1)-(3) (owner has exclusive right to reproduce, prepare derivative works based upon, and distribute the copyrighted work); 17 U.S.C. § 501(a) ("Anyone who violates any of the exclusive rights of the copyright owner as provided by section[ ] 106 . . . is an infringer of the copyright."). In addition, iRacing demonstrated that Robinson violated the Digital Millennium Copyright Act ("DMCA") by distributing applications designed to defeat NASCAR® 2003's SecuROM™ copy protection.

In opposition, Robinson does not dispute that: (1) iRacing owns the copyrights in NASCAR® 2003: (2) Robinson reverse-engineered NASCAR® 2003 in violation of the NASCAR® 2003 End User License Agreement ("EULA"); (3) Robinson modified and distributed at least three versions of the NASCAR® 2003; (4) two of Robinson's versions circumvented SecuROM™ in NASCAR® 2003; or (5) third parties downloaded Robinson's modifications of the game from websites that Robinson created and operated.[1]  This is all that is necessary for iRacing to prevail on the liability phase of its copyright and DMCA claims.

Instead, Robinson focuses his defense on subjective claims that his infringement was "a labor of love," "encouraged by the developer [not owner] of the program," and thus it would be "unconscionable" to punish Robinson for his wrongdoings under the fair use and transformative use doctrines.  But, as a matter of law, there is nothing fair nor transformative about Robinson's usurpation of the creative effort behind NASCAR® 2003 to distribute derivative versions of the software using derisive website buttons inviting plaintiff to "bite me."[2]  Moreover, Robinson waived his fair use defenses to reverse engineer the software when he accepted the EULA.  Indeed, Robinson's purported subjective good faith in violating the copyright laws is irrelevant and iRacing

---

[1] In his Affidavit, Robinson denies ever distributing a file named "OW-Racing 2004 Mod." (Aff. of Tim Robinson in Opp. to Pl.'s Mot. for Partial Summary J. ("Robinson Aff.") at 1).  However, as Robinson admitted and as set forth in the Affidavit of Rance DeLong in Support of Motion for Partial Summary Judgment "(DeLong Aff."), "OW-Racing 2004 Mod" is a defined term referring to a modified version of OWSC.exe, and, as defined, is a file that Robinson admittedly distributed online.  (Compare Dep. of Tim Robinson ("Robinson Dep.") 99:15–101:9 (received application and distributed Sprint Car Mod); 102:6–103:18 (Robinson ran application to create a new modified executable of NR2003.exe); 68:11-22 (Robinson hosted races with other users utilizing the mod) with Memo. of Points & Authorities in Support of Mot. for Partial Summary J. ("iRacing Brief ") at 4-5 (citing DeLong Aff.)).

[2] Robinson asserts a separate "transformative use" defense, but such a label as to the purpose and character of his use is not a defense to copyright infringement, but merely a factor in determining fair use. Wall Data Inc. v. Los Angeles County Sheriff's Dept., 447 F.3d 769, 778 (9th Cir. 2006) (delineating fair use factors); see also Rubin v. Brooks/Cole Publ'g Co., 836 F. Supp. 909, 915 (D. Mass. 1993) (same).  Accordingly, iRacing addresses these defenses collectively.

respectfully submits this short reply brief to demonstrate that Robinson's arguments have no factual or legal basis and raise no material facts in dispute.

**I.     ROBINSON CANNOT CLAIM "FAIR USE"**

Courts occasionally excuse certain otherwise infringing uses of copyrighted works under the "fair use" doctrine, particularly for purposes such as "criticism, comment, news reporting, teaching (including multiple copies for classroom use), scholarship, or research." Wall Data Inc. v. Los Angeles County Sheriff's Dept., 447 F.3d 769, 777 (9th Cir. 2006) (copying of copyright holder's software, and the use of those copies for the same purpose as the original software, was not a fair use) (citing 17 U.S.C. § 107).   The defendant has the burden of proof to establish fair use.  Wall Data, 447 F.3d at 778; see also Rubin, 836 F. Supp. at 915 (burden on defendant to demonstrate fair use, which was met on scholarly use).

**1.     Robinson waived the fair use defense as to reverse engineering.**

A party waives the fair use defense upon agreeing not to "translate, reverse engineer, derive source code, modify, disassemble decompile, create derivative works." Davidson & Assocs., Inc. v. Internet Gateway, 334 F. Supp. 2d. 1164, 1169-71, 1180-81 (E.D. Mo. 2004) (fair use defense waived by acceptance of language identical to EULA in this case), aff'd 422 F.3d 630 (8th Cir. 2005); see also Bowers v. Bay State Techs., Inc., 320 F.3d 1317, 1325-26 (Fed. Cir. 2003) ("the First Circuit would find that private parties are free to contractually forego the limited ability to reverse engineer"), aff,g in relevant part Baystate Techs. Inc. v. Bowers, 81 F. Supp. 2d 152 (D. Mass. 1999).

Robinson admittedly accepted the NASCAR® 2003 EULA that contained the following explicit restrictions:

> you may not, in whole or in part, copy, photocopy, reproduce, translate, <u>reverse engineer</u>, derive source code, modify, disassemble, decompile, create derivative works based on the Program . . ." and "you are not entitled to: (i) . . .transfer reproductions of the Program to other parties in any way…

(Kaemmer Aff. In Support of Mot. for Summary J. Ex. D (EULA) ¶ 3 (emphasis added)). Yet that is exactly what Robinson admitted doing. (Robinson Dep. 123:8–124:4 (Robinson undertook trial and error process for reverse engineering and modifying NR2003.exe)). Indeed, Robinson's opposition to the summary judgment motion explicitly admits that Robinson reverse engineered the NASCAR® 2003 software to develop Robinson's versions. (Opposition to Pl.'s Motion for Partial Summary J. ("Opp.") at 4 (claiming a fair use right to reverse engineer NASCAR® 2003)).

Nevertheless, Robinson argues "fair use" permitted him to reverse engineer the NASCAR® 2003 code to create his derivative work. (Opp. at 3-4). Unfortunately for Robinson, however, this is precisely the argument that the <u>Davidson</u> court considered and rejected. 334 F. Supp. 2d. at 1180-82. There, the court found the defendant had waived its fair use defense by entering into an identical EULA to the case at hand, reasoning that defendants were bound by their knowing waivers of their statutory rights and that the software copyright holder was well within its rights to require an end user to enter into such an agreement before purchasing a license to its software. <u>Id.</u>

Accordingly, Robinson waived any fair use defense to his admitted reverse engineering. <u>Davidson</u>, 334 F. Supp. 2d. at 1170-71.

    **2.**    **There is no factual basis for Robinson to claim fair use.**

In determining whether a use is fair, the following four factors are considered: (1) the purpose and character of the use; (2) the nature of the copyrighted work; (3) the

amount and substantiality of the copyrighted work used; and (4) the effect of the use upon the potential market for the copyrighted work. 17 U.S.C. § 107; Wall Data, 447 F.3d at 777. Notably, none of these factors support a purported "labor of love" defense to infringing the NASCAR® 2003 copyrights. As set forth below, Robinson failed to meet his burden of establishing any factual basis upon which the Court could find fair use excused the infringing conduct. Wall Data, 447 F.3d at 778.

    a.    The Purpose and Character of Robinson's Work Was Not Transformative

The act of slightly modifying the source code of a computer program (while maintaining the operative source code base) is derivative in nature, rather than transformative, and therefore violates a copyright holder's exclusive rights. Dun & Bradstreet Software Serv., Inc. v. Grace Consulting, Inc., 307 F.3d 197, 212 (3d Cir. 2002) (consultant's copying and modification of copyrighted source code constituted copyright infringement); Computer Assoc. Int'l v. Quest Software, Inc., 333 F. Supp. 2d 688, 699 (N.D. Ill. 2004) (plaintiff may prove copyright infringement by showing that defendant had access to its source code and that defendant's copied code is substantially similar to the original code). This is especially true where these tweaks supplanted the need to purchase the genuine video game. See Sega Enters. Ltd. v. MAPHIA, 948 F. Supp. 932, 935 (N.D. Cal. 1996).

Indeed, "a use is considered transformative only where a defendant changes a plaintiff's copyrighted work or uses the plaintiff's copyrighted work in a different context such that the plaintiff's work is transformed into a new creation." Wall Data, 447 F.3d at 778 (the copying of a copyright holder's software, and the use of those copies for the same purpose as the original software, is not a transformative use). An infringing work

that simply supplants an original work is not transformative and therefore weighs heavily towards a finding of copyright infringement and against a finding of fair use. Wall Data, 447 F.3d at 778 (citing Worldwide Church of God v. Philadelphia Church of God, Inc., 227 F.3d 1110, 1117 (9th Cir. 2000) (defendant's copying was not transformative, weighing against fair use); Perfect 10 v. Google, Inc., 416 F. Supp. 2d 828, 845 (C.D. Cal. 2006) (whether a use is transformative depends in part on whether it serves the public interest) (citing Campbell v. Acuff-Rose Music, Inc., 510 U.S. 569, 579 (1994)).

In other words, for a work to be transformative, "[t]here must be real, substantial condensation of the materials, and intellectual labor and judgment bestowed thereon; and not merely the facile use of the scissors; or extracts of the essential parts, constituting the chief value of the original work." Worldwide Church, 227 F.3d at 1117 (quoting Folsom v. Marsh, 9 F. Cas. 342, 344-45 (D. Mass. 1841)). In cases where the defendant's use is for the same intrinsic purpose as the copyright holder's, such use seriously weakens a claimed fair use. Wall Data, 447 F.3d at 778; Weissmann v. Freeman, 868 F.2d 1313, 1324 (2d Cir. 1989) (reversing district court's finding of fair use); Antioch Co. v. Scrapbook Borders, Inc., 291 F. Supp. 2d 980, 987-983 (D. Minn. 2003) (defendant's use was not transformative).

Nevertheless, Robinson claims the purpose and character of his work on the Open Wheel Mods and the Sprint Car Mod is transformative because: (1) "[t]he racing cars that NR2003.exe contains are NASCAR cars" (Opp. at 2); (2) Robinson's versions of the game "resemble an Open Wheel Car and an Open Wheel Sprint Car" (Id. at 3); and (3) "[a] NASCAR™ [sic] style stockcar has no similarity to an Open Wheel Car" because the cars have some different characteristics. (Opp. at 2-3). But, Robinson

admittedly "copied as much of the original *.exe file as was necessary for [his] intended use" (Robinson Aff. ¶ 10) and merely tweaked its parameters. (Id. ¶¶ 10, 12). Indeed, Robinson's modifications to NASCAR® 2003 simply changed existing variables in the NR2003.exe hex code to modify the response, look and feel of the simulated cars. (DeLong Aff. ¶¶ 16-19, 22). Robinson admits as much. (Opp. at 3). Additionally, Robinson does not dispute that even after his changes, the OW-Racing 2004 Mod (the first modification Robinson created) is more than 99.9 percent original NR2003.exe code and data and less than one tenth of one percent modified code and data. (DeLong Aff. ¶¶ 18-19). The other two modifications of NASCAR® 2003 that Robinson created (i.e., the No-CD File and the OW-Racing 2005 Mod) include the same modifications as the OW-Racing 2004 plus additional modifications that violate not only the copyright law. (Id. ¶¶ 22, 28).[3]

    Moreover, nothing else about Robinson's conduct supports a favorable "purpose and character" determination for Robinson. Massachusetts Courts generally examine whether the defendant used the copyrighted work in bad faith, whether the work was obtained through legitimate channels, whether the original author was credited favorably, and whether the offending material was quickly removed after protest by the original author. Rubin, 836 F. Supp. at 918. Here, Robinson's bad faith is

---

[3] Nor does it matter that Robinson's work was a "labor of love" and that he did not make money from the creation or distribution of his files or that Papyrus, the former copyright holder, "encouraged" users to enhance NASCAR® 2003 or that Robinson created these files before iRacing obtained the rights to NASCAR® 2003. (Opp. at 4). Fitzgerald Publ'g. Co., Inc. v. Baylor Pub. Co., Inc., 807 F.2d 1110, 1113 (2d Cir. 1986) ("Even an innocent infringer is liable for infringement … Under § 501(a) intent or knowledge is not an element of infringement"); Basic Books, Inc. v. Kinko's Graphics Corp., 758 F. Supp. 1522, 1526 (S.D.N.Y. 1991) (duplication of copyrighted works without express permission of actual copyright holder does not constitute fair use); Schumann v. Albuquerque Corp., 664 F. Supp. 473, 475 (D. N.M. 1987) (same). It is also irrelevant that Robinson's purportedly created his infringing files before iRacing acquired the copyrights from Papyrus since the undisputed facts are that Robinson *distributed* the modifications after iRacing purchased the copyrights. (Robinson's Answers to Interrogatories 6-10; Robinson Dep. 154:2–154:6; Answer ¶ 24).

demonstrated by his operation of the "First Racing Sucks" website and download links entitled "Bite Me Fir$t" and "Bite Me Twice Fir$t" in reference to First Racing. (Robinson Dep. 55:22 – 59:22, 97:19 – 98:1).

    b. NASCAR® 2003 Is A Creative Work

Fair use is more difficult to establish "the closer the copyrighted work is to the core of intended copyright protection." Sega, 948 F. Supp. at 934. "In analyzing the [the nature of the copyrighted work], the law generally recognizes a greater need to disseminate (and thus provides lesser protection to) factual works than works of fiction or fantasy." Rubin, 836 F. Supp. at 919. Because NASCAR® 2003 is purely for entertainment and involves fiction and fantasy, which are more creative than informational, the consideration of the nature of the copyrighted work weighs against a finding of fair use. Rubin, 836 F. Supp. at 919; Sega, 948 F. Supp. at 934 (holding that video games are creative works).

    c.    Robinson' Copied 99.9 Percent of NASCAR® 2003

Moreover, the sheer extent of original NASCAR® 2003 software code contained in Robinson's derivative works militates against this Court's application of a fair use defense. See Rubin, 836 F. Supp. at 919 (factor weighed in favor of copyright holder); Sega, 948 F. Supp. at 934 ("[a]lthough not a per se rule, the copying of an entire work will ordinarily militate against a finding of fair use"); (DeLong Aff. ¶ 18 (one of the modified executables that Robinson posted on his websites was more than 99.9 percent original NR2003.exe code and less than one tenth of one percent modified code)).

## II.   ROBINSON VIOLATED THE DIGITAL MILLENNIUM COPYRIGHT ACT

In its moving brief, iRacing demonstrated that Robinson's distribution of the NO-CD File and the OW-Racing 2005 Mod violated both section 1201(a)(2)(A) (prohibiting programs "primarily designed or produced" to circumvent anti-circumvention measures) and section 1201(a)(2)(B) (prohibiting programs with "limited commercially significant purpose or use other than to circumvent an anti-circumvention measure) of the DMCA. (iRacing Brief at 17-20).  In opposition, Robinson argues that "in order to run the program that he created, a person independently would have to obtain a valid NASCAR® 2003 CD key to unlock the program." (Opp. at 2).  But Robinson does not dispute that he created both the No-CD File and OW-Racing 2005 Mod, which enable users to circumvent SecuROM™ and Robinson does not dispute that SecuROM is a technological measure used to restrict copying of NASCAR® 2003.  (See DeLong Aff. ¶¶ 23-25, 29).  Nor does Robinson dispute that he distributed those files over his websites.  That is all that is necessary to establish a DMCA violation.  <u>Universal City Studios, Inc. v. Reimerdes</u>, 111 F. Supp. 2d 294, 317 (S.D.N.Y. 2000) (finding violations of both Section 1201(a)(2)(A) and (B).  And there is no "fair use" defense to a DMCA violation.  <u>Universal City Studios, Inc. v. Corley</u>, 273 F.3d 429, 443 (2d Cir. 2001) (17 U.S.C. § 1201(c)(1) cannot "be read to allow the circumvention of . . . technology protecting copyrighted material when the material will be put to 'fair uses' ").

## **CONCLUSION AND REQUEST FOR RELIEF**

For the reasons set forth above and in iRacing's moving papers, iRacing respectfully requests that this Court enter partial summary judgment against Robinson for liability under:  (1) United States copyright law; and (2) the DMCA.

DATED:  November 6, 2006	Respectfully submitted,

iRacing.com Motorsport Simulations, LLC

By its attorneys,

 /S/  Irwin Schwartz
**BUSINESS LITIGATION ASSOCIATES, P.C.**
Irwin B. Schwartz (#548763)
Michael G. Andrews (#663452)
500 Boylston Street, Suite 1860
Boston, Massachusetts 02116
Telephone: (617) 421-1800
Facsimile:  (617) 421-1810

### Certificate of Service

I, Irwin B. Schwartz, attorney for Plaintiff iRacing.com Motorsport Simulations, LLC, hereby certify that on this 6th day of November, 2006, I filed the foregoing document with the Clerk of the Court using the CM/ECF system, which will send notification of such filing to: Joseph F. Ryan, Lyne Woodworth & Evarts LLP, 600 Atlantic Avenue, Boston, MA 02210, counsel for Defendant Tim Robinson.


   */s/  Irwin Schwartz*
Irwin B. Schwartz