UNITED STATES DISTRICT COURT

DISTRICT OF MASSACHUSETTS

| | | |
|---|---|---|
| ————————————————— | X | |
| IRACING.COM MOTORSPORT SIMULATIONS, LLC, a Delaware Limited Liability Company, | : : : | Civil Action No. 05-11639 NG |
| Plaintiff, | : : | |
| v. | : : | |
| TIM ROBINSON, individually and d/b/a www.ow-racing.com, www.torn8oalley.com and www.First-Racing-Sucks.com, | : : : : | |
| Defendant. | : : | |
| ————————————————— | X | |

**MEMORANDUM OF POINTS AND AUTHORITIES
IN SUPPORT OF MOTION FOR PARTIAL SUMMARY JUDGMENT**

**Business Litigation Associates, P.C.**
225 Franklin Street, 26th Floor
Boston, Massachusetts 02110
(617) 421-1800
(617) 421-1810 (fax)

Counsel for Plaintiff iRacing.com Motorsport
Simulations, LLC

Dated:  December 18, 2007

## TABLE OF CONTENTS

TABLE OF AUTHORITIES.........................................................................................iii-vi

INTRODUCTION...................................................................................................... 1

RULE 56.1 STATEMENT OF UNDISPUTED MATERIAL FACTS .................................. 1

THE END USER LICENSE AGREEMENT..................................................................... 2

THE CONFIDENTIAL DISCLOSURE AGREEMENT ...................................................... 3

ROBINSON'S MODIFICATION OF NASCAR® 2003..................................................... 3

      *The OW-Racing 2004 Mod* ....................................................................... 4

      *The NO-CD File* ...................................................................................... 5

      *The OW-Racing 2005 Mod* ....................................................................... 5

ROBINSON'S DISTRIBUTION OF NASCAR® 2003 DERIVATIVE WORKS.................... 7

ARGUMENT............................................................................................................ 8

    I.   THE COURT SHOULD ENTER JUDGMENT ON ALL ASPECTS OF THE
       COPYRIGHT CLAIM AND RESERVE FOR TRIAL ONLY THE MARKET
       EFFECT FACTOR OF ROBINSON'S FAIR USE DEFENSE........................ 9

       A.  iRacing Is Entitled to A Declaration That The Copyright Is Valid......... 9

       B.  Robinson Infringed On iRacing's Copyrights..................................... 12

    II.  ROBINSON BREACHED THE EULA.......................................................... 15

    III.  iRacing is Entitled To A Declaration That The CDA Is Enforceable ........... 18

CONCLUSION AND REQUEST FOR RELIEF.............................................................. 20

## <u>TABLE OF AUTHORITIES</u>

### <u>Federal Cases</u>

<u>Accusoft Corp. v. Palo,</u>
  923 F. Supp. 290 (D. Mass. 1996) ........................................................ 10, 12

<u>Adobe Sys. Inc. v. One Stop Micro, Inc.,</u>
  84 F. Supp. 2d 1086 (N.D. Cal. 2000) ........................................................ 17

<u>Anderson v. Liberty Lobby, Inc.,</u>
  477 U.S. 242 (1986) ........................................................................ 9

<u>Baystate Tech., Inc. v. Bentley Sys., Inc.,</u>
  946 F. Supp. 1079 (D. Mass. 1996) ........................................................ 11

<u>Bowers v. Baystate Tech., Inc.,</u>
  320 F.3d 1317 (Fed. Cir. (Mass.) 2003) ............................................... 17, 18

<u>Bromberg v. Signal Gasoline Corp.,</u>
  130 Cal. App. 469 (1933) ............................................................... 16, 18

<u>Callahan v. U.S. Filter, Inc.,</u>
  No. 01-CV-6406, 2005 WL 61498 (W.D.N.Y. Jan. 11, 2005) ................................. 8, 15

<u>Dakotah, Inc. v. Tomelleri,</u>
  21 F. Supp. 2d 1066 (D.S.D. 1998) ......................................................... 10

<u>Data Gen. Corp. v. Grumman Sys. Supp. Corp.,</u>
  803 F. Supp. 487 (D. Mass. 1992) .......................................................... 10

<u>Data Gen. Corp. v. Grumman Sys. Supp. Corp.,</u>
  825 F. Supp. 340 (D. Mass. 1993) ..................................................... 10, 14

<u>Data Gen. Corp. v. Grumman Sys. Support Corp.,</u>
  36 F.3d 1147 (1st Cir. 1994) ............................................................... 13

<u>Flag Fables, Inc. v. Jean Ann's Country Flags & Crafts, Inc.,</u>
  730 F. Supp. 1165 (D. Mass. 1989) ........................................................ 14

<u>Flomerics Ltd. v. Fluid Dynamics Int'l, Inc.,</u>
  880 F. Supp. 60 (D. Mass. 1995) ........................................................... 12

Flynn v. AK Peters, Ltd.,
    377 F.3d 13 (1st Cir. 2004) ........................................................................ 16

Foster-Miller, Inc. v. Babcock & Wilcox Canada,
    210 F.3d 1 (1st Cir. 2000) ......................................................................... 18

Greenwich Workshop, Inc. v. Timber Creations, Inc.,
    932 F. Supp. 1210 (C.D. Cal. 1996) ..................................................... 14, 15

GSI Lumonics, Inc. v. BioDiscovery, Inc.,
    112 F. Supp. 2d 99 (D. Mass. 2000) ......................................................... 13

i.Lan Sys., Inc. v. Netscout Serv. Level Corp.,
    183 F. Supp. 2d 328 (D. Mass. 2002) .................................................. 16, 17

James L. Miniter Ins. Agency, Inc. v. Ohio Indem. Co.,
    112 F.3d 1240 (1st Cir. 1997) ..................................................................... 8

Lacy v. Gardino,
    791 F.2d 980 (1st Cir. 1986) cert. denied 107 S. Ct. 284 (1986)................ 15

Lehman v. Revolution Portfolio,
    166 F.3d 389 (1st Cir. 1999) ..................................................................... 20

MAI Sys. Corp. v. Peak Computer, Inc.,
    991 F.2d 511 (9th Cir. 1993) ........................................................... 6, 13, 14

Martin v. Stericycle, Inc.,
    389 F. Supp. 2d 131 (D. Mass. 2005) ......................................................... 9

Michelson v. Digital Fin. Serv.,
    167 F.3d 715 (1st Cir. 1999) ............................................................... 16, 18

Micro Star v. Formgen, Inc.,
    154 F.3d 1107 (9th Cir. 1998) ................................................................... 15

Network Commerce, Inc. v. Microsoft Corp.,
    422 F.3d 1353 (Fed. Cir. 2005) .................................................................... 2

Robinson v. Lorillard Corp.,
    444 F.2d 791 (4th Cir.), cert. dismissed, 404 U.S. 1006 (1971) ................ 20

Santana Row Hotel Partners, L.P. v. Zurich Am. Ins. Co.,
    446 F. Supp. 2d 1108 (N.D. Cal. 2006) ............................................... 16, 18

iv

Schacter v. Circuit City Stores, Inc.,
  433 F. Supp. 2d 140 (D. Mass. 2006) ....................................................... 16

Segrets, Inc. v. Gillman Knitwear Co., Inc.,
  207 F.3d 56 (1st Cir. 2000) ........................................................... 8, 12

St. Paul Fire & Marine Ins. Co. v. Halifax Trawlers, Inc.,
  495 F. Supp. 2d 232 (D. Mass. 2007) ......................................................... 8

Sterling Research, Inc. v. Pietrobono,
  No. 02-40150-FDS, 2005 WL 3116758 (D. Mass. Nov. 21, 2005) ..................... 16, 18

Tom Trading, Inc. v. Better Blue, Inc.,
  26 Fed. App'x. 733 (9th Cir. 2002) ......................................................... 16

TPS, Inc. v. U.S. Dept. of Defense,
  330 F.3d 1191 (9th Cir. 2003) ............................................................... 5

U.S. v. Marin,
  651 F.2d 24 (1st Cir. 1981) ................................................................ 20

Wall Data Inc. v. L.A. County Sheriff's Dept.,
  447 F.3d 769 (9th Cir. 2006) ............................................................... 17

Warner-Lambert Co. v. Execuquest Corp.,
  427 Mass. 46, 691 N.E.2d 545 (1998) ....................................................... 18

Wolverine Proctor & Schwartz, Inc. v. Aeroglide Corp.,
  402 F. Supp. 2d 365 (D. Mass. 2005) ............................................... 18, 19, 20

Super Tire Eng'g Co. v. McCorkle,
  416 U.S. 115 (1974) .................................................................. 9, 12, 20

Veeck v. S. Bldg. Code Congress Int'l Inc.,
  241 F.3d 398 (5th Cir. 2001) ................................................................ 9

**Statutes**

17 U.S.C. § 103(b) ......................................................................... 10

17 U.S.C. § 106 ..................................................................... 10, 13, 15

17 U.S.C. § 107 ........................................................................................................ 15

17 U.S.C. § 204(a) .................................................................................................... 10

17 U.S.C. § 410(c) ............................................................................................... 10, 12

17 U.S.C. § 501(a) ............................................................................................... 11, 13

28 U.S.C. § 2201 .................................................................................................... 9, 12

## **Rules**

Fed. R. Civ. P. 56(c) ................................................................................................. 20

Fed. R. Civ. P. 57 ....................................................................................................... 9

## INTRODUCTION

The great bulk of this case is properly determined on summary judgment.  As this Court found in its May 25, 2007 Memorandum & Order (Docket No. 60) (the "May 25th Order"), Defendant Tim Robinson ("Robinson") distributed at least three derivative versions of the NASCAR® Racing 2003 Season ("NASCAR® 2003") software program, the copyrights to NASCAR® 2003 are owned by Plaintiff iRacing.com Motorsport Simulations, LLC ("iRacing").  There can be no dispute that Robinson breached the End User License Agreement ("EULA") that he agreed to when he installed the NASCAR® 2003 software.  Robinson openly admits that he created and distributed these versions without iRacing's authorization and does not dispute that this conduct is barred by the EULA.  Additionally, there can be no dispute that Robinson agreed to the terms of a Confidential Disclosure Agreement ("CDA") in December 2004 and therefore the CDA is enforceable against Robinson.

Accordingly, iRacing brings this motion for partial summary adjudication to establish its declaratory relief and breach of contract claims against Robinson.  iRacing also requests that the Court find that iRacing established all of the elements of its copyright infringement claim, and only the fair use factor relating to the "market effect" of Robinson's conduct remains to be tried.[1]

## RULE 56.1 STATEMENT OF UNDISPUTED MATERIAL FACTS

NASCAR® 2003 was developed by iRacing's predecessor-in-interest, Papyrus Design Group, Inc. ("Papyrus"), and released by Papyrus and its parent company,

---

[1]    On November 5, 2007, iRacing moved to bifurcate this action into a liability phase and a damages phase, which the Court granted on November 29, 2007.  As such, iRacing proposes that the parties proceed to trial focused solely on the "market effect" fair use factor.

1

Sierra On-Line, Inc. ("Sierra"), in February 2003. (Answer (Docket No. 19) ¶ 9; Aff. of David Kaemmer in Supp. of Mot. for Summ. J. (Aug. 11, 2006, Docket No. 53) ("Kaemmer Aff.") ¶ 2). NASCAR® 2003 is registered with the United States Copyright Office under number PA-1-266-286, which copyrights are now owned by iRacing. (Kaemmer Aff. ¶ 3). NASCAR® 2003 is regarded as the most realistic computerized auto racing simulation ever created, used by numerous NASCAR® drivers as a training tool, and it has won various awards. (Kaemmer Aff. ¶ 6; Answer ¶ 14).

NASCAR® 2003 was distributed on CD-ROMs for use on personal computers. (Answer ¶ 15). NR2003.exe is the executable file for the original version of NASCAR® 2003, which was updated by version 1.2.0.1. (Aff. of Rance DeLong in Supp. of Mot. for Summ. J. (Aug. 11, 2006, Docket No. 52) ("DeLong Aff.") ¶¶ 8-9).[2] Upon installation of NASCAR® 2003 on a user's computer, the executable file NR2003.exe is copied from the NASCAR® 2003 CD-ROM onto the user's hard drive. (Answer ¶ 27; DeLong Aff. ¶ 10). NR2003.exe contains the software code that implements a complex simulation of the physical behavior of a racing car on the user's computer. (Answer ¶ 28; DeLong Aff. ¶ 11). NR2003.exe also contains data that are the parameters of that simulation, which are at the core of the creative expression and a large part of the creative value manifested in NASCAR® 2003. (Answer ¶ 28; DeLong Aff. ¶ 11).

<u>THE END USER LICENSE AGREEMENT</u>

Upon installation of NASCAR® 2003 on a user's computer, the software presents

---

[2]    An executable or ".exe" file is a sequence of computer code that can be executed by the computer's operating system. <u>Network Commerce, Inc. v. Microsoft Corp.</u>, 422 F.3d 1353, 1360 (Fed. Cir. 2005). In other words, an executable file contains both instructions to the computer in the form of machine code and data upon which some of those instructions operate. (Answer ¶ 27; DeLong Aff. ¶ 10).

the user with the EULA and asks the user to accept or reject its terms.  (Answer ¶ 17; Kaemmer Aff. ¶ 7, Ex. D).  NASCAR® 2003 will only complete installation on the user's computer if the user accepts the EULA's terms.  (Answer ¶ 18; Kaemmer Aff. ¶ 7). If the user rejects the EULA, the NASCAR® 2003 setup will close and the software will not install.  (Answer ¶ 18).  The EULA permits the user to install NASCAR® 2003 on a home, portable or business computer, but only permits use of a single copy of the software.  (Answer ¶ 19).  The EULA explicitly prohibits the conduct at issue here:

> you may not, in whole or in part, copy, photocopy, reproduce, translate, reverse engineer, derive source code, modify, disassemble, decompile, create derivative works based on the Program" and "you are not entitled to: (i) … transfer reproductions of the Program  to other parties in any way.

(Kaemmer Aff. Ex. D, ¶ 3 (emphasis added); Answer  ¶ 20).  The EULA permits an end user to copy the program only when necessary for the end user's utilization of the program or for personal archives.  (Kaemmer Aff. Ex. D, ¶ 10; Answer ¶ 21).

## THE CONFIDENTIAL DISCLOSURE AGREEMENT

In December 2004, iRacing trusted Robinson enough to allow him to test the Beta version of another auto racing simulation computer game that iRacing was developing under the protections of the CDA.  (Am. Compl. ¶ 50, Ex. B; Answer ¶¶ 1, 50 (Robinson admits Ex. B to the Amended Complaint is a true and correct copy of the CDA)).  Robinson later posted in an online public forum that the CDA "wouldn't stand up in court."  (Answer ¶ 55).

## ROBINSON'S MODIFICATION OF NASCAR® 2003

Robinson admits that he installed NASCAR® 2003 on a computer and accepted the NASCAR® 2003 EULA, including its prohibitions on reverse engineering, modifying

and distributing any versions of NASCAR® 2003.  (Deposition of Tim Robinson ("Robinson Dep.")[3] 154:2–154:6; Answer ¶ 24).  Nevertheless, as set forth below, Robinson admits that he reverse engineered, modified, and distributed derivative versions of NASCAR® 2003 on multiple occasions.

### The OW-Racing 2004 Mod

Robinson apparently received a software application from a third party, Don Wilshe, which Robinson used to modify the NR2003.exe code in order to create the OW-Racing 2004 Mod.  (Robinson Dep. 99:18–101:9 (received application); 102:6–103:18 (Robinson ran application to create a new modified executable); 105:1–5 (also known as Sprint Car Mod); 107:22–108:3 (Don Wilshe)).  According to Robinson, he ran Wilshe's application himself, which made modifications to the retail version of NR2003.exe and saved the modified file.  (Robinson Dep. 102:6–103:25).  This was confirmed by iRacing's expert, who found that the OW-Racing 2004 Mod includes a modified and derivative version of NR2003.exe.  (DeLong Aff. ¶ 16).  There is no dispute that Robinson thereafter distributed the OW-Racing 2004 Mod through his websites from September 2004 until March 15, 2005.  (Robinson Dep. 99:15–100:13 (distributed Sprint Car Mod)).[4]  There is also no dispute that third parties downloaded and used the OW-Racing 2004 Mod.  (Robinson Dep. 68:11-22 (Robinson hosted races with other users utilizing the mod)).

---

[3]    Cited excerpts from the Robinson Dep. transcript are attached to Affidavit of Irwin B. Schwartz In Support of Motion For Partial Summary Judgment ("Schwartz Aff.") (Docket No. 51) as Exhibit B.

[4]    *See also*, *e.g.*, Robinson Depo. 29:24–30:1 (Robinson owns ow-racing.com); 43:23–44:4 (Robinson owns first-racing-sucks.com); 44:22–25 (Robinson owns torn8oalley.com).  The Wilshe application that modified the NR2003.exe to produce OWSC.exe left intact the SecuROM™ protection that requires an NR2003 CD be present to run the game.  (DeLong Aff. ¶ 17).

*The NO-CD File*

Purportedly in response to anonymous popular request, Robinson further modified NR2003.exe to create the owsc_nocd_temp.zip file (the "NO-CD File"). (Robinson Dep. 112:22–114:11; 157:4–13 (Robinson created the NO-CD File because people asked for it on ow-racing.com)).  The NO-CD File is a zip file that, when uncompressed, yields the NOCD_OWSC.exe file.  (DeLong Aff. ¶ 20).[5]  To create the NO-CD File, Robinson utilized a "no CD patch" that he purportedly found on the Internet contained in another (evidently illegitimate version) of NASCAR® 2003 and compared it to his OWSC.exe file to isolate the differences and generate the SecuROM™ circumvention functionality in the NO-CD File.  (Robinson Dep. 112:22–114:11).  The NOCD_OWSC.exe file carries forward the modified functionality of OWSC.exe and also circumvents the SecuROM™ copy protection.  (DeLong Aff. ¶¶ 22-23).  In other words, Robinson's NOCD_OWSC.exe file allows users to run the OW-Racing 2004 Mod without having an NR2003 CD installed in their disk drive.[6]  (DeLong Aff. ¶ 23).

*The OW-Racing 2005 Mod*

Additionally, Robinson admits that he modified NR2003.exe to create owr2k5_v1.0.0.1.zip (the "OW-Racing 2005 Mod").  (Robinson Dep. 68:1–6 (contained a modified executable); 108:16–109:10 (Robinson assembled and created the OW-Racing 2005 Mod); 121:18–122:3 (Robinson created the modified version)).  The OW-

---

[5]    A zip file is a computer file that has been compressed; a compressed file can be stored in less space and transmitted using less bandwidth than a non-compressed file.  TPS, Inc. v. U.S. Dept. of Defense, 330 F.3d 1191, 1193 n.1 (9th Cir. 2003).

[6]    In the May 25th Order, the Court recognized that a factual dispute exists as to whether Robinson's NO-CD File made it possible for users to run his modifications without purchasing a NASCAR® 2003 CD. (May 25th Order at 22-23).  Any such dispute is immaterial to the present motion, because the Court found that the NO-CD File also violated the DMCA in other manners.  Id.

5

Racing 2005 Mod is a zip file that, when uncompressed, yields the file

owr2k5_v1.0.0.1.exe.  (Robinson Dep. 70:10–15; DeLong Aff. ¶ 27).  To develop the

OW-Racing 2005 Mod, Robinson used a reverse-engineering tool called Ultra Edit,

which is a hex editor. (Robinson Dep. 164:3–167:16; 230:14–24 ("Hex editing is an

essential part for creating a modified executable")).  Robinson used Ultra Edit to inspect

the "millions of lines" of hex code contained in NASCAR® 2003 and through a trial and

error process he discerned which variables in the software he needed to change to

affect the different look and feel of the OW-Racing 2005 Mod.  (Robinson Dep. 208:22–

211:17; 226:4–16 ("there are over a million lines of code in this particular executable")).

    According to Robinson, he then changed certain values in the NASCAR® 2003

code and saved and re-installed the software after each modification to observe

whether his changes to NR2003.exe achieved the desired results.  (Robinson Dep.

208:22–211:17).[7]  Through this trial and error process, Robinson isolated which

variables in the NR2003.exe hex code related to which characteristics of the look-and-

feel of NASCAR® 2003, including spring rates, shock rates, weight distribution,

maximum weight allowed, gas, fuel cell size, fuel cell location, and front and rear wing

adjustments.  (Robinson Dep. 208:22–211:17; 216:16–217:25).  As an end result of this

repeated process of "a series of very, very small steps", Robinson was able to change

up to fifty of these variables.  (Robinson Dep. 233:15–238:18).

    The result of Robinson's reverse engineering was the owr2k5_v1.0.0.1.exe file,

---

[7]    Robinson admitted and there can be no dispute that each time Robinson saved and reinstalled a
modified NR2003.exe he made an unauthorized copy of NASCAR® 2003 copy on his computer's memory.
 (Robinson Dep. 210:9–12).  *See* MAI Sys. Corp. v. Peak Computer, Inc., 991 F.2d 511, 518 (9th Cir.
1993) ("Copying," in the context of copyright law, "occurs when a computer program is transferred from a
permanent storage device to a computer's random access memory").

which is an executable installer.  (DeLong Aff. ¶ 27).  When a user runs

owr2k5_v1.0.0.1.exe, the executable goes through a polished installation procedure

similar to that of a consumer software product that results in the creation of a directory

called "Open Wheel Racing 2005 Season" on the user's computer.  (DeLong Aff. ¶ 27).

In this directory, there are other directories and files that mimic the structure of a

NASCAR® 2003 installation.  (DeLong Aff. ¶ 27).  One of the files packaged in the OW-

Racing 2005 Mod, OWR05.exe, is a modified and derivative version of NR2003.exe that

circumvents the SecuROM™ copy protection.  (DeLong Aff. ¶¶ 28-30).

<u>ROBINSON'S DISTRIBUTION OF NASCAR® 2003 DERIVATIVE WORKS</u>

Robinson admitted that he created and operates the <u>www.ow-racing.com</u>,

<u>www.torn8oalley.com</u> and <u>www.first-racing-sucks.com</u> websites.  (Answer ¶ 8; Robinson

Dep. 29:24–30:1; 43:23–44:4; 44:22–25).  These websites relate to computerized auto

racing simulation, NASCAR® 2003, and derivatives of NASCAR® 2003.  (Kaemmer Aff.

¶ 9).  Each of these websites features an electronic bulletin board system ("BBS").

(Robinson Dep. 111:24 – 112:2; Kaemmer Aff. ¶ 10).  Thus, users of these websites

can download information from the BBS to their own computers' memories, hard drives,

or other storage devices.  (Schwartz Aff. Ex. C (Robinson's Answers to Pl.'s First Set of

Interrogs.) ("Interrog. Resp."), ¶ 9; Kaemmer Aff. ¶ 10).

Robinson offered the NO-CD File for free download through links at <u>www.ow-</u>

<u>racing.com</u> to the file located at <u>www.torn8oalley.com</u>.  (Robinson Dep. 85:21–87:3).

Robinson offered the OW-Racing 2004 Mod and the OW-Racing 2005 Mod for free

download at <u>www.ow-racing.com</u> and <u>www.torn8oalley.com</u> (Interrog. Resp. ¶¶ 6-8;

Robinson Dep. 85:21–87:13).  Robinson also made the OW-Racing 2005 Mod available

7

online at www.first-racing-sucks.com.  (Robinson Dep. 141:21–142:5).  Several users

downloaded the OW-Racing 2004 Mod and the OW-Racing 2005 Mod, as evidenced by

their participation in race sessions utilizing these programs derived from NASCAR®

2003.  (Robinson Dep. 68:11–22;129:2–132:10).

## ARGUMENT

In the First Circuit, summary judgment is properly entered on copyright

infringement, breach of contract, and declaratory relief claims when there is no genuine

issue of material fact.  Segrets, Inc. v. Gillman Knitwear Co., Inc., 207 F.3d 56, 63-65

(1st Cir. 2000) (summary judgment properly granted where infringing sweater stitch

pattern was substantially similar to copyrighted design); James L. Miniter Ins. Agency,

Inc. v. Ohio Indem. Co., 112 F.3d 1240, 1245 (1st Cir. 1997) (affirming summary

judgment on breach of contract claim, finding no genuine issue of material fact); St. Paul

Fire & Marine Ins. Co. v. Halifax Trawlers, Inc., 495 F. Supp. 2d 232, 236 (D. Mass.

2007) (granting declaratory relief at summary judgment stage as no material facts were

in dispute).  Federal courts have the discretion to order summary judgment on liability

subject to a later bifurcated trial on any affirmative defenses to liability.  Callahan v. U.S.

Filter, Inc., No. 01-CV-6406, 2005 WL 61498, *1 (W.D.N.Y. Jan. 11, 2005) (granting

plaintiff's motion for summary judgment as to defendant's liability, subject to later trial on

defendant's affirmative defense, because the only material factual disputes related

solely to that affirmative defense).

"'Factual disputes that are irrelevant or unnecessary will not be counted.'  A

genuine issue of material fact exists where the evidence with respect to the material fact

in dispute 'is such that a reasonable jury could return a verdict for the nonmoving

8

party.'" <u>Martin v. Stericycle, Inc.</u>, 389 F. Supp. 2d 131, 133-34 (D. Mass. 2005) (granting summary judgment motion, *quoting* <u>Anderson v. Liberty Lobby, Inc.</u>, 477 U.S. 242, 248 (1986)).  If the evidence the nonmoving party presents "is merely colorable or is not significantly probative, summary judgment may be granted." <u>Martin</u>, 389 F. Supp. 2d at 133-34 (citation and internal quotation marks omitted).

**I.    THE COURT SHOULD ENTER JUDGMENT ON ALL ASPECTS OF THE COPYRIGHT CLAIM AND RESERVE FOR TRIAL ONLY THE <u>MARKET EFFECT FACTOR OF ROBINSON'S FAIR USE DEFENSE</u>**

**A.    iRacing Is Entitled to a Declaration That the Copyright Is Valid**

In a case of actual controversy within its jurisdiction, any federal court may declare the rights and other legal relations of any interested party seeking such a declaration, and such declaration shall have the force and effect of a final judgment or decree.  28 U.S.C. § 2201; Fed. R. Civ. P. 57.  For declaratory relief to be available, there must be an actual controversy between the parties.  <u>Super Tire Eng'g Co. v. McCorkle</u>, 416 U.S. 115, 123-26 (1974) (reversing dismissal of declaratory relief claim and remanding for proper declaration).  An exception to this rule is where the plaintiff is able to show a substantial likelihood that the dispute will re-occur.  <u>Super Tire</u>, 416 U.S. at 123-26.  Declaratory judgments are often used in intellectual property cases to determine such issues as copyright validity.  <u>Veeck v. S. Bldg. Code Congress Int'l Inc.</u>, 241 F.3d 398, 401-02 (5th Cir. 2001) (in the absence of genuinely disputed material facts, granting summary judgment in favor of defendant copyright holder, finding that it held valid, enforceable copyrights); <u>Dakotah, Inc. v. Tomelleri</u>, 21 F. Supp. 2d 1066, 1073 (D.S.D. 1998) (denying dismissal of declaratory judgment action).

A computer program and its source code are protectable under the Copyright Act. Data Gen. Corp. v. Grumman Sys. Supp. Corp., 803 F. Supp. 487, 490 (D. Mass. 1992) ("[A] computer program, whether in object code or source code, is a 'literary work' and is protected from unauthorized copying, whether from its object or source code version."). Ownership of copyrights may be transferred pursuant to 17 U.S.C. § 201(d); in order to execute a transfer of copyright ownership, the instrument must be in writing and signed by the owner of the rights conveyed. Accusoft Corp. v. Palo, 923 F. Supp. 290, 296 (D. Mass. 1996) (ordering injunction against copyright infringer) (*citing* 17 U.S.C. § 204(a)). A copyright registration constitutes prima facie evidence of the validity of the copyright and of the facts stated in the certificate. 17 U.S.C. § 410(c); Data Gen. Corp. v. Grumman Sys. Supp. Corp., 825 F. Supp. 340, 351 (D. Mass. 1993) (finding valid copyright).

The owner of a copyright possesses several exclusive rights:

1) the right to 'reproduce the copyrighted work in copies',

2) the right to 'prepare derivative works based upon the copyrighted work', and

3) the right to 'distribute copies ... of the copyrighted work to the public by sale or other transfer of ownership, or by rental, lease or lending.'

Accusoft, 923 F. Supp. at 296 (*citing* 17 U.S.C. § 106). The copyright holder maintains all of these exclusive rights in any derivative works prepared by any third party, save for the material actually contributed by that third party. 17 U.S.C. § 103(b). Regardless, third parties are not permitted to reproduce or distribute copies of the copyrighted material or derivative works thereof; if anyone violates any of these exclusive rights, he

"is an infringer of the copyright." <u>Baystate Tech., Inc. v. Bentley Sys., Inc.</u>, 946 F. Supp. 1079, 1086 (D. Mass. 1996) (<u>*citing*</u> 17 U.S.C. § 501(a)).

In its Amended Complaint, iRacing requests a declaratory judgment that: (a) Robinson has no right to reproduce or distribute copies of NASCAR® 2003 or any derivative versions thereof; (b) iRacing has the exclusive right to the source code and object code of NASCAR® 2003; and (c) iRacing has the exclusive right to reproduce and distribute copies of its copyrighted works and derivative versions thereof. (Am. Compl. ¶ 80). Indeed, it is undisputed that NASCAR® 2003 was developed by Papyrus, and released by Papyrus and Sierra in February 2003. (Kaemmer Aff. ¶ 2). Papyrus registered NASCAR® 2003 with the United States Copyright Office under registration number PA-1-266-286. (Kaemmer Aff. ¶ 3, Ex. A). On May 28, 2004, Papyrus and Sierra sold their copyrights in the NASCAR® 2003 software to First, LLC, and the associated assignment of the copyrights was recorded on June 28, 2005. (Kaemmer Aff. ¶ 4, Ex. B). First, LLC later changed its name to iRacing. (Kaemmer Aff. ¶ 5, Ex. C). iRacing's ownership of the copyright is registered with the U.S. Copyright Office. (Kaemmer Aff. Exs. A-C). In fact, this Court already found that "[i]t is undisputed that plaintiff and its predecessors have owned the copyright to NASCAR 2003 since 2003." (May 25th Order at 10).

Nevertheless, Robinson refuses to acknowledge iRacing's ownership of the NASCAR® 2003 copyright, and maintains that his conduct is not a violation of iRacing's rights. (Answer ¶¶ 10-11, 80; Robinson Dep. 59:23-64:12; Aff. of Robinson in Opp. To Mot. For Partial Summ J. (Docket No. 56, Attachment 1) ¶¶ 8-21; Aff. of Michael G. Andrews in Supp. of Mot. For Partial Summ. J. ("Andrews Aff.") ¶¶ 2-5 (Robinson

refused to stipulate to the requested declaratory relief)).  Robinson's assertions create

an actual controversy as to the parties' rights, permitting this Court to declare the

parties' rights with respect to the NASCAR® 2003 copyright.  28 U.S.C. § 2201.

iRacing's copyright registration constitutes prima facie evidence of the validity of

the NASCAR® 2003 copyright, placing the burden on Robinson to demonstrate the

invalidity of the copyright.  17 U.S.C. § 410(c); <u>Flomerics Ltd. v. Fluid Dynamics Int'l,</u>

<u>Inc.</u>, 880 F. Supp. 60, 62 (D. Mass. 1995) (defendant failed to present evidence

rebutting presumption of copyright validity).  Robinson is unable to set forth a scintilla of

evidence that controverts the validity of that copyright.  Accordingly, this Court should

enter a declaratory judgment that iRacing's NASCAR® 2003 copyright is valid, that

iRacing has the exclusive right to reproduce and distribute copies of NASCAR® 2003

and derivative versions thereof, and that Robinson has no right to reproduce or

distribute copies of NASCAR® 2003 or any derivative versions thereof.  <u>Accusoft</u>, 923

F. Supp. at 296; 17 U.S.C. §§ 103(b), 106; <u>Flomerics</u>, 880 F. Supp. at 62; <u>Super Tire</u>,

416 U.S. at 123-26.

### B.    Robinson Infringed On iRacing's Copyrights

To establish its claim for copyright infringement, iRacing need only demonstrate

two things: (1) iRacing owns a valid copyright; and (2) Robinson copied or distributed

constituent elements of iRacing's copyrighted work without authorization.  <u>Segrets</u>, 207

F.3d at 60 (affirming summary judgment in favor of copyright holder); 17 U.S.C. §

106(1)-(3) (owner has exclusive right to reproduce, prepare derivative works based

upon, and distribute the copyrighted work); 17 U.S.C. § 501(a) ("Anyone who violates

any of the exclusive rights of the copyright owner as provided by section[ ] 106 . . . is an

infringer of the copyright").  Anyone who violates any of the exclusive rights of the

copyright owner, including the rights to reproduce, prepare derivative works, or

distribute copies of the work, is an infringer of the copyright.  17 U.S.C. §§ 106, 501;

Data Gen. Corp. v. Grumman Sys. Support Corp., 36 F.3d 1147, 1186 (1st Cir. 1994)

(affirming summary judgment for plaintiff software copyright holder and explaining

Copyright Act grants owners exclusive rights, including rights to distribute the protected

work); GSI Lumonics, Inc. v. BioDiscovery, Inc., 112 F. Supp. 2d 99, 106 (D. Mass.

2000) (copyright infringement occurs when consumers of software products either

reverse-engineer or otherwise copy some copyrighted portion of the software); MAI Sys.

Corp., 991 F.2d at 518.

       Here, as set forth above, Robinson cannot dispute that iRacing owns the

NASCAR® 2003 copyright.  Likewise, there can be no dispute that Robinson infringed

the NASCAR® 2003 copyright. In creating the OW-Racing 2004 Mod, the OW-Racing

2005 Mod, and the NO-CD File, Robinson admits that he copied an original version of

NASCAR® 2003 and modified the NR2003.exe file to create derivative versions of

NASCAR® 2003.  (See Supra at 4-5).[8]  This alone establishes the copying element.

Data Gen. Corp., 825 F. Supp. at 355 (plaintiff proved infringement of its copyright

through the most direct method: by showing that the defendant repeatedly copied).

       Moreover, Robinson's admitted trial-and-error process with the Ultra Edit hex

editor for reverse engineering and modifying the NR2003.exe also is unauthorized

---

[8]       See also, e.g., Robinson Dep. 102:6–103:18 (Robinson ran application to create a new modified
executable of NR2003.exe, included in OW-Racing 2004 Mod);108:16–109:10 (Robinson assembled and
created the OW-Racing 2005 Mod); 112:22–114:11 (Robinson modified NR2003.exe to create the NO-CD
File); Answer ¶ 24 (Robinson used an original version of NASCAR® 2003); DeLong Aff. ¶¶ 33-34 (the
OW-Racing 2004 Mod, the OW-Racing 2005 Mod and the NO-CD File are each derivative versions of
NASCAR® 2003).

copying.  (Robinson Dep. 123:8–124:4 (each time the executable is loaded into memory, a copy is made); 208:22–211:17; 226:4–16).  <u>MAI Sys. Corp.</u>, 991 F.2d at 518 (copying occurs each time a computer program is transferred into a computer's random access memory).  Robinson then distributed those derivative versions of NASCAR® 2003 to other parties through his websites, which also constitutes infringement. (Interrog. Resp. ¶¶ 6-10 (offered modifications for download online); Robinson Dep. 66:21-68:13, 85:21-94:20; 140:11–142:5; 129:2–132:10 (users were able to download modified files)).

There can be no argument that iRacing did not authorize Robinson's conduct. (Kaemmer Aff. ¶ 12).  Robinson admits that he distributed these files even after he received a cease and desist notice from iRacing.  (Answer ¶¶ 42 (Robinson received cease and desist letter in March 2005), 44 (Robinson thereafter re-posted the OW-Racing 2005 Mod and the NO-CD File on his websites, which were available in August 2005)).  This demonstrates that Robinson knew or should have known of the infringing nature of his downloads.  <u>Flag Fables, Inc. v. Jean Ann's Country Flags & Crafts, Inc.</u>, 730 F. Supp. 1165, 1169 (D. Mass. 1989) ("cease and desist" letter gave notice of copyrights).  Robinson's distribution violated iRacing's exclusive copyrights in NASCAR® 2003.  <u>Greenwich Workshop, Inc. v. Timber Creations, Inc.</u>, 932 F. Supp. 1210, 1214 (C.D. Cal. 1996) (defendants infringed on copyright holder's "exclusive right under 17 U.S.C. § 106(2) to prepare and distribute derivative works").

Indeed, on these facts, this Court found that Robinson "copied or distributed constituent elements of the work without authorization", enough to make out a prima facie case for copyright infringement.  (May 25th Order at 11).  "The law of the case

14

doctrine makes binding upon a court a ruling made by a court at the same or higher

level during prior stages of the same litigation, unless, of course, the ruling has been

reversed in the interim." Lacy v. Gardino, 791 F.2d 980, 984 (1st Cir. 1986) *cert. denied*

107 S. Ct. 284 (1986).  As this Court already determined, there is no genuine issue as

to any material fact with respect to the two elements of copyright infringement.  (May

25th Order at 10-11). [9]

## II.  ROBINSON BREACHED THE EULA

To succeed on a breach of contract action, a plaintiff must demonstrate: (1) that

the parties reached a valid and binding agreement; (2) that the defendant breached the

terms of the agreement; and (3) that the plaintiff suffered damages as a result of the

breach.  Michelson v. Digital Fin. Serv., 167 F.3d 715, 720 (1st Cir. 1999) (affirming

summary judgment on breach of contract action for plaintiff).[10]  At the summary

---

[9]    The fair use doctrine permits unauthorized use of copyrighted works "for purposes such as criticism, comment, news reporting, teaching (including multiple copies for classroom use), scholarship, or research." Micro Star v. Formgen, Inc., 154 F.3d 1107, 1112-13 (9th Cir. 1998) (finding no fair use); 17 U.S.C. § 107.  As an affirmative defense, Robinson has the burden to prove that his otherwise infringing conduct is protected under the fair use doctrine.  (May 25th Order at 12).  Here, this Court already found that: (1) "there was nothing transformative" in Robinson's copying, therefore the first favor mitigates in favor of iRacing (May 25th Order at 15-17); (2)  NASCAR® 2003 "is a creative work of entertainment", thus the second factor favors iRacing (Id. at 18); and (3) "what [Robinson] took far outweighs what he did not", and thus the third factor also favors iRacing (Id. at 18-19).  However, the Court found that factual issues still exist as to the fourth factor, which is "not about determining [iRacing's] actual retrospective damages (which may be irrelevant if plaintiff seeks statutory damages), but rather the prospective effect of a ruling of fair use." (May 25th Order at 19).  This is the lone factual issue to be examined by the Court, so on November 5, 2007, iRacing moved to bifurcate this action in order to proceed to trial focused solely on the "market effect" fair use factor; the Court granted the motion to bifurcate on November 29, 2007. As iRacing already established the elements of its copyright infringement claim, this Court should enter a summary judgment order finding Robinson liable for copyright infringement, subject to a later determination of the "market effect" fair use factor.  Callahan, 2005 WL 61498, at *1 (granting plaintiff's motion for summary judgment as to liability, subject to later bifurcated trial on affirmative defenses).

[10]    The EULA purports to be governed by California law.  (Kaemmer Aff. Ex. D ¶ 11).  Under California law, the plaintiff must demonstrate the same elements and also establish that it performed its own obligations under the contract or was excused from doing so.  Santana Row Hotel Partners, L.P. v. Zurich Am. Ins. Co., 446 F. Supp. 2d 1108, 1114 (N.D. Cal. 2006) (*citing* Tom Trading, Inc. v. Better Blue, Inc., 26 Fed. App'x. 733, 735 (9th Cir. 2002)) (denying defendant's motion to dismiss for failure to state a

judgment stage of a breach of contract claim, the plaintiff need not show "actual" damages, because it is always entitled to "nominal" damages for breach of contract. *See* Sterling Research, Inc. v. Pietrobono, No. 02-40150-FDS, 2005 WL 3116758, *9 (D. Mass. Nov. 21, 2005) (denying defendant's motion for summary judgment) (*citing* Flynn v. AK Peters, Ltd., 377 F.3d 13, 23 (1st Cir. 2004) (plaintiff have been entitled to have claim go to jury with instruction on nominal damages); Bromberg v. Signal Gasoline Corp., 130 Cal. App. 469, 471 (1933) (plaintiff is entitled to recover nominal damages for the breach of a contract even if it is unable to demonstrate actual damage); Restatement (Second) Of Contracts § 346 ("If the breach caused no loss or if the amount of the loss is not proved a small sum fixed without regard to the amount of loss will be awarded as nominal damages")).[11]

Massachusetts and California courts regularly find that click-through end-user license agreements are valid, enforceable contracts subject to the general rules of contract interpretation.  i.Lan Sys., Inc. v. Netscout Serv. Level Corp., 183 F. Supp. 2d 328, 330-31 (D. Mass. 2002) (click-wrap software license agreement was enforceable contract); Schacter v. Circuit City Stores, Inc., 433 F. Supp. 2d 140, 143-44 (D. Mass. 2006) (same); Bowers v. Baystate Tech., Inc., 320 F.3d 1317, 1326 (Fed. Cir. (Mass.) 2003) (affirming finding that defendant breached license agreement prohibiting reverse engineering); Wall Data Inc. v. L.A. County Sheriff's Dept., 447 F.3d 769, 786 (9th Cir. 2006) (affirming finding that click-through license agreement constituted an operative

---

claim).  There is no dispute that iRacing's predecessor-in-interest performed all obligations required of it under the EULA by making NASCAR® 2003 available to Robinson when he loaded it onto his computer. (Kaemmer Aff. Ex. D).

[11]     Additionally, the terms of the EULA explicitly presume that iRacing would be irreparably damaged upon any breach of the EULA.  (Kaemmer Aff. Ex. D, ¶ 9).

contract); <u>Adobe Sys. Inc. v. One Stop Micro, Inc.</u>, 84 F. Supp. 2d 1086, 1089-93 (N.D. Cal. 2000) (end user license agreement valid under California law).

Here, Robinson admits that he installed NASCAR® 2003 on a computer and accepted the NASCAR® 2003 EULA, including its prohibitions on reverse engineering, modifying, and distributing NASCAR® 2003.  (Robinson Dep. 154:2–154:6; Answer ¶ 24; Kaemmer Aff. Ex. D).  The EULA explicitly prohibits the conduct at issue here:

> you may not, in whole or in part, copy, photocopy, reproduce, translate, <u>reverse engineer</u>, derive source code, <u>modify</u>, disassemble, decompile, <u>create derivative works</u> based on the Program"  and "you are not entitled to: (i) … <u>transfer reproductions</u> of the Program to other parties in any way.

(Kaemmer Aff. Ex. D, ¶ 3 (emphasis added); Answer ¶ 20).  The EULA permits an end user to copy the program only when necessary for the end user's utilization of the program or for personal archives.  (Kaemmer Aff. Ex. D, ¶ 10; Answer ¶ 21).  There is not and cannot be any dispute that the EULA constitutes a valid and binding agreement. <u>Netscout</u>, 183 F. Supp. 2d at 330-31; <u>Wall Data</u>, 447 F.3d at 786.

Robinson admits that he reverse engineered, modified, and distributed derivative versions of NASCAR® 2003 on multiple occasions.[12]  Accordingly, there is not and cannot be any dispute that Robinson breached the terms of the EULA prohibiting reverse engineering, modifying, creating derivative works of, or transferring reproductions of NASCAR® 2003.  <u>Bowers</u>, 320 F.3d at 1326.  As the element of

---

[12]    <u>See</u>, <u>e.g.</u>, Robinson Dep. 102:6–103:18 (Robinson ran application to create a new modified executable of NR2003.exe); 99:15–100:13 (distributed Sprint Car Mod); 68:11-22 (Robinson hosted races with other users utilizing the mod); 112:22–114:11; 157:4–13 (Robinson created the NO-CD File because people asked for it on ow-racing.com); 108:16–109:10 (Robinson assembled and created the OW-Racing 2005 Mod); 85:21–87:3 (Robinson offered the NO-CD File for free download at www.torn8oalley.com through links at www.ow-racing.com); 141:21–142:5 (Robinson made the OW-Racing 2005 Mod available online at www.first-racing-sucks.com); 85:21–87:13 & Interrog. Resp. ¶¶ 6-8 (Robinson offered the OW-Racing 2004 Mod and the OW-Racing 2005 Mod for free download on his websites).

damages is presumed at the summary judgment stage of breach of contract actions

under both Massachusetts and California law, at the very least iRacing is entitled to

nominal damages for Robinson's breach and accordingly this Court should enter

summary judgment that Robinson breached the EULA.  Michelson, 167 F.3d at 720;

Santana Row, 446 F. Supp. 2d at 1114; Sterling Research, 2005 WL 3116758, at *9;

Bromberg, 130 Cal. App. at 471.

## III.    iRacing Is Entitled To A Declaration That The CDA Is Enforceable

Massachusetts courts routinely find non-disclosure agreements protecting a

party's confidential information, proprietary information, or trade secrets to be valid,

binding contracts.  Wolverine Proctor & Schwartz, Inc. v. Aeroglide Corp., 402 F. Supp.

2d 365, 369 (D. Mass. 2005) (Gertner, J.) (finding no dispute that non-disclosure

agreement was valid); Foster-Miller, Inc. v. Babcock & Wilcox Canada, 210 F.3d 1, 3

(1st Cir. 2000) (affirming finding that defendant violated non-disclosure agreement);

Warner-Lambert Co. v. Execuquest Corp., 427 Mass. 46, 691 N.E.2d 545, 547 (1998)

("We further have recognized that confidential and proprietary business information may

be entitled to protection, even if such information cannot claim trade secret protection").

Non-disclosure agreements are interpreted as any other contracts – if the non-

disclosure agreement is unambiguous, the court must interpret the contract as a matter

of law, and it must be enforced according to its terms.  Wolverine, 402 F. Supp. 2d at

369-70.

Robinson admits that he entered into the CDA in December 2004 (Am. Compl. ¶

50, Ex. B; Answer ¶¶ 1, 50), and the CDA unambiguously states that:

Without prior written consent of Company, [Robinson] shall neither disclose

18

> to any third party any or all of the Information disclosed by Company hereunder, including the existence of the Product, or permit any such third party to have access to such Information, nor use such Information for any purpose other than [Beta testing] . . . . ;"

(Am. Compl. Ex. B, ¶ 2; Answer ¶ 51); and

> [Robinson] shall be held expressly liable for any damages sustained by the Company due a [sic] breach of this agreement by [Robinson].  [Robinson] may also be held liable for damages sustained by the Company due to a release or dissemination of confidential information, proprietary information, intellectual property or software; [Robinson] hereby acknowledges that such information, software and intellectual property in development is the result of great expense by the Company and acknowledges that future income of the Company could be adversely impacted by the release or dissemination of proprietary intellectual property.

(Am. Compl. Ex. B, ¶ 7; Answer ¶ 51).

Nevertheless, Robinson posted in an online public forum that the CDA "wouldn't stand up in court," introducing an actual controversy as to the enforceability of the CDA.  (Answer ¶ 55).  Robinson apparently still holds this position to this day as he is unwilling to stipulate that the CDA is enforceable against him.  (Andrews Aff. ¶¶ 4-5).  However, Robinson is unable to introduce a single piece of evidence demonstrating that the CDA is unenforceable.

Accordingly, this Court should enter a declaratory judgment that the CDA is enforceable against Robinson.[13]  Wolverine, 402 F. Supp. 2d at 369-70; Super

---

[13]    The Amended Complaint seeks damages against Robinson for breach of the CDA.  (Am Compl. ¶¶ 87-92).  At this time, iRacing merely seeks a declaration that the CDA is enforceable against Robinson. Under the Federal Rules, every final judgment shall grant the relief to which the party in whose favor it is rendered is entitled, even if the party has not requested such relief in its pleadings.  Fed. R. Civ. P. 56(c) (except as to a party against whom a judgment is entered by default). "This rule has been liberally construed, leaving no question that it is the court's duty to grant whatever relief is appropriate in the case on the facts proved." U.S. v. Marin, 651 F.2d 24, 30 (1st Cir. 1981) (*quoting* Robinson v. Lorillard Corp., 444 F.2d 791, 802-03 (4th Cir.), *cert. dismissed*, 404 U.S. 1006 (1971)); *see also* Lehman v. Revolution Portfolio, 166 F.3d 389, 394 (1st Cir. 1999) ("Even though [plaintiff's] complaint did not explicitly seek money damages, that omission did not eliminate the possibility that damages might be awarded to him").

<u>Tire</u>, 416 U.S. at 123-26.

## <u>CONCLUSION AND REQUEST FOR RELIEF</u>

For all of these reasons, iRacing respectfully requests that this Court: (1) enter summary judgment finding Robinson liable for copyright infringement subject to a later trial on the fourth fair use factor; (2) enter summary judgment for iRacing on its breach of the EULA claim; and (3) enter the declaratory relief requested herein.

DATED:  December 18, 2007                Respectfully submitted,

                                        iRacing.com Motorsport Simulations, LLC
                                        By its attorneys,

                                         /S/  Michael G. Andrews_____
                                        Irwin B. Schwartz (BBO# 548763)
                                        Michael G. Andrews (BBO# 663452)
                                        Business Litigation Associates, P.C.
                                        225 Franklin Street, 26th Floor
                                        Boston, Massachusetts 02110
                                        (617) 421-1800
                                        (617) 421-1810 (fax)

---

In an effort to further streamline this case, should the Court enter a declaratory judgment that the CDA is enforceable, iRacing anticipates dismissing its claim for damages under the CDA.

**<u>Certificate of Service</u>**

     I, Michael G. Andrews, attorney for Plaintiff iRacing.com Motorsport Simulations, LLC, hereby certify that on this 18th day of December 2007, I filed the foregoing document with the Clerk of the Court using the CM/ECF system, which will send notification of such filing to: Joseph F. Ryan, Lyne Woodworth & Evarts LLP, 600 Atlantic Avenue, Boston, MA 02210, counsel for Defendant Tim Robinson.


                  <u>  /s/  Michael G. Andrews        </u>
                  Michael G. Andrews