```
                    UNITED STATES DISTRICT COURT
                  FOR THE DISTRICT OF MASSACHUSETTS
```

| | |
|---|---|
| **iRACING.COM MOTORSPORTS** ) | |
| **SIMULATIONS, LLC,** ) | |
|     **Plaintiff,** ) | |
| ) | |
|     v. ) | **Civil Action No. 05cv11639-NG** |
| ) | |
| **TIM ROBINSON,** ) | |
|     **Defendant.** ) | |

**GERTNER, D.J.**

### MEMORANDUM AND ORDER RE: MOTION FOR SUMMARY JUDGMENT
September 24, 2008

### I.   INTRODUCTION

This case arises from a dispute between plaintiff iRacing.com Motorsport Simulations, LLC ("iRacing"), a computer software company, and defendant, Tim Robinson ("Robinson"). iRacing alleges that Robinson reverse engineered NASCAR 2003, a simulated auto racing game owned by iRacing; modified the game's underlying computer code; and distributed derivative versions of the game through various websites. iRacing's claims sound in copyright, the Digital Millennium Copyright Act ("DMCA"), and breach of contract.

The case has proceeded in a rather piecemeal fashion. In May 2007, the Court granted in part and denied in part iRacing's first motion for partial summary judgment, finding Robinson liable under the DMCA but declining to grant summary judgment as to iRacing's infringement claim. Specifically, the Court found that iRacing had unquestionably made out a prima facie case of infringement, but that there were disputed issues of material

fact relating whether Robinson's modifications to the program had any effect on the market for NASCAR 2003, the so-called "fair use" defense.

Currently before the Court is iRacing's second motion for partial summary judgment, in which iRacing seeks to further parse the various legal issues presented in the case.  iRacing moves this Court to 1) issue a declaration that iRacing possesses a valid copyright; 2) enter judgment on all aspects of the copyright claim, reserving the question of market effect for a later trial; 3) grant summary judgment on the issue of whether Robinson breached the End User License Agreement that accompanied NASCAR 2003; and 4) issue a declaration that the terms of a Confidential Disclosure Agreement ("CDA") are enforceable against Robinson.

The problem is a technical one.  The issues on which iRacing seeks a declaratory judgment are not even contested.  The Court lacks the authority to "declare" anything when there is no "case or controversy."  It must be emphasized, however, that this outcome is not remotely a comment on the merits of the case.  Indeed, the vast majority of the issues have been resolved in iRacing's favor.  It is only a reflection of the procedural posture of the case.

For the reasons that follow, iRacing's Motion for Partial Summary Judgment (document # 68) is **GRANTED IN PART** as to

Robinson's breach of the End User License Agreement and **DENIED IN PART** as to all other forms of relief sought by iRacing

## II.  FACTS

Many, if not most, of the facts relevant to resolution of the plaintiff's motion were laid out in the Court's Memorandum and Order of May 25, 2007 (document # 60) ("Prior Order").  Thus, the Court provides only a brief summary of the case here.[1]

In May 2004, iRacing (then doing business under the name "First, LLC") purchased the rights to NASCAR 2003, an auto racing simulation game developed by Papyrus, a software company that ceased operations around the time of the sale to iRacing.  NASCAR 2003 is registered with the United States Copyright Office under number PA-1-266-286.  See Exh. A to Kaemmer Aff. (document # 53-2).  At the heart of NASCAR 2003 is a file called NR2003.exe.  NR2003.exe includes a copy-protection program called SecuROM.  SecuROM automatically checks to see whether the game's CD is in the computer's drive; if it is not, the game will not function.

The first time a user runs NR2003.exe, she is presented with and End User License Agreement ("EULA").  In order to play the game, the user must signal acceptance of the terms of the agreement by clicking a button; otherwise, the game shuts down.  In relevant part, the EULA provides:

---

[1] Unless otherwise noted, the recitation of facts is taken from the Prior Order (document # 60).

> You may not, in whole or in part, copy, photocopy, reproduce, translate, reverse engineer, derive source code, modify, disassemble, decompile, create derivative works based on the Program, or remove any proprietary notices or labels on the Program without prior consent, in writing, of [iRacing's predecessor in interest].
>
> The Program is licensed to you as a single product.  Its component parts may not be separated for use on more than one computer.
>
> You are entitled to use the Program for your own use, but you are not entitled to . . . sell, grant a security interest in, or transfer reproductions of the Program to other parties in any way, nor to rent, lease or license the Program to others without the prior written consent of [iRacing's predecessor in interest].

Exh. A to Am. Compl. (document # 18-2); Exh. D to Kaemmer Aff. (document #53-5).  Pursuant to the EULA's choice of law provision, the terms of the EULA are to be governed by California law.  Exh. D to Kaemmer Aff. (document #53-5).

In early 2003, Robinson purchased a copy of NASCAR 2003 at a retail store in Texas.  Robinson Aff. ¶ 2 (document # 72).  In December 2004, defendant Robinson was asked by iRacing to test an unreleased beta version of NASCAR 2003.  Robinson received a copy of NASCAR 2003 1.2.0.1 ("beta version") to test and signed a CDA in which he agreed not to share any information about the beta

version with third parties or to allow third parties access to the game.[2]

## A.   The Modifications

From 2004 to 2005, Robinson made certain modifications to NASCAR 2003.[3]  First, in 2004, Robinson used a tool he got from a third party named Don Wilshe, which modified NR2003.exe and saved the new file as OWSC.exe.[4]  The Wilshe tool altered the game such that its cars would behave like single-gear "open-wheel" cars rather than NASCAR cars.  Robinson made the new file available on two websites he owned: www.torn80alley.com and www.ow-racing.com.  The file was available from September 4, 2004, until March 15, 2005.

In 2005, Robinson used a program called Ultra Edit to view NASCAR 2003's underlying code and, through trial and error, altered the program to make the cars simulate open-wheel cars.  He saved he file as owr2k5_v1.0.0.1.exe.  Robinson made this file available on www.ow-racing.com as well.  Links also appeared on www.torn80alley.com and www.first-racing-sucks.com.  Robinson also posted a patch ("NO-CD patch") on his website that allowed

---

[2] The CDA provided that Robinson could be held liable for any damages arising from his "release of or dissemination of confidential information, proprietary information, intellectual property or software."  Exh. B. to Am . Compl. (document # 18-3).

[3] Robinson's modifications are laid out in more detail in the Prior Order.

[4] It appears that Robinson did not create the tool, but merely ran it so that it created the modified copy of NASCAR 2003 and saved it as OWSC.exe.

users to run the files without the CD in the drive, thereby bypassing the user agreement.

    B.    **Procedural History**

iRacing filed suit in August 2005.  On August 17, 2005, the parties stipulated to a preliminary injunction prohibiting Robinson from publishing any of his modifications to NASCAR 2003. Approximately one year later, iRacing moved for partial summary judgment.  This Court found largely in iRacing's favor -- Robinson was clearly liable under the DMCA.  I declined to grant summary judgment on iRacing's infringement claim only because additional factual issues remained to be litigated. Specifically, the Court clearly found that iRacing had made out a sufficient prima facie case of copyright infringement.  "It is undisputed that plaintiff and its predecessors have owned the copyright to NASCAR 2003 since 2003, and that since then Robinson, without authorization, reverse-engineered NASCAR 2003 and distributed modifications of it."  Prior Order at 10 (document # 60).  To the extent there were any disputed issues of material fact, they related to Robinson's "fair use" defense -- namely whether Robinson's modifications to the program had any effect on the market for NASCAR 2003.  So long as those disputes existed, it was not possible to enter judgment for iRacing.

**III. DISCUSSION**

    **A.   Standard**

Considering the "facts and the reasonable inferences therefrom in the light most favorable to the nonmoving party," Freadman v. Metro. Prop. & Cas. Ins. Co., 484 F.3d 91, 94 (1st Cir. 2007), summary judgment is appropriate when "the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law," Fed. R. Civ. P. 56(c).  "Once the moving party avers the absence of genuine issues of material fact, the nonmovant must show that a factual dispute does exist, but summary judgment cannot be defeated by relying on improbable inferences, conclusory allegations, or rank speculation."  Ingram v. Brink's, Inc., 414 F.3d 222, 228-29 (1st Cir. 2005).

    **B.   Copyright Validity**

iRacing seeks a declaration from this Court that its copyright to NASCAR 2003 is valid and that 1) Robinson has no right to reproduce or distribute copies of NASCAR 2003 or any derivative versions thereof; 2) iRacing has the exclusive right to the source code and object code of NASCAR 2003; and 3) iRacing has the exclusive right to reproduce and distribute copies of its

copyrighted works and derivative versions thereof.[5]  The problem in granting declaratory relief as to these issues is that there is effectively no dispute as to these issues.  And without a "case or controversy" (under Article III of the Constitution) there is no basis for a declaratory judgment.

As an initial matter, the Court has <u>already</u> found that it is "undisputed that plaintiff and its predecessors have owned the copyright to NASCAR 2003 since 2003."  Prior Order at 10 (document # 60).  Thus, the issue here is not whether the copyright is, in fact, valid, but whether there is evan a <u>controversy</u> between the parties as to the validity of the copyright.  The Court concludes that there is not.

The Declaratory Judgment Act confers jurisdiction on federal courts to issue declaratory judgments in appropriate cases where there is an actual justiciable controversy within the meaning of Article III of the Constitution.  <u>Calderon v. Ashmus</u>, 523 U.S. 740, 745 (1998).  The Supreme Court, however, has explicitly "recognized the potential for declaratory judgment suits to fall outside the constitutional definition of a 'case' in Article III."  <u>Calderon</u>, 523 U.S. at 746.  "Basically, the question in

---

[5] The owner of a copyright possesses several exclusive rights: 1) the right to reproduce the copyrighted work in copies; 2) the right to prepare derivative works based upon the copyrighted work; and 3) the right to distribute copies of the copyrighted work to the public by sale or other transfer of ownership, or by rental, lease, or lending.  <u>Accusoft Corp. v. Palo</u>, 923 F. Supp. 290, 296 (D. Mass. 1996) (citing 17 U.S.C. § 106).  The copyright holder maintains all of these exclusive rights in any derivative works prepared by any third party, save for the material actually contributed by that third party.  17 U.S.C. § 103(b).

each case is whether the facts alleged, under all the circumstances, show that there is a substantial controversy, between parties having adverse legal interests, of sufficient immediacy and reality to warrant the issuance of a declaratory judgment." MedImmune, Inc. v. Genentech, Inc., 127 S. Ct. 764, 771 (2007) (quoting Md. Cas. Co. v. Pac. Coal & Oil Co., 312 U.S. 270, 273 (1941)). Here, iRacing's evidence fails to show that there is a controversy of "sufficient immediacy and reality."

iRacing asserts that Robinson refuses to acknowledge iRacing's ownership of the NASCAR 2003 copyright and maintains that his conduct is not a violation of iRacing's rights. While it is true that Robinson has denied that his conduct violated iRacing's rights, it is not true that he has denied the validity of iRacing's copyright. Nowhere in the record cited by iRacing does Robinson challenge the validity, per se, of the copyright. Indeed, Robinson admits that NASCAR 2003 is protected by copyright law in his answer. Answer ¶ 57 (document # 19). While Robinson's conduct is rightfully the focus of the infringement action in this case, the fact that Robinson may be liable for infringement does not entitle iRacing to a formal declaration from this Court as to the validity of the copyright.[6] See Calderon, 523 U.S. at 749 (declaratory judgment in favor of plaintiff class inappropriate where it "would not completely

---

[6] Robinson argues that his conduct constituted fair use, not that the copyright is invalid.

resolve [the controversy], but would simply carve out one issue in the dispute for separate adjudication"). As such, a declaratory judgment would be inappropriate; there simply is no articulable legal dispute over the validity of the copyright. See MedImmune, 127 S. Ct. at 773; Coffman v. Breeze Corp., 323 U.S. 316, 302 (1945) (no justiciable question unless declaratory judgment defendant relies on relevant defense).

### C. Copyright Infringement

iRacing's second request is puzzling: It urges the Court to "enter judgment on all aspects of the copyright claim and reserve for trial only the market effect factor of Robinson's fair use defense." Pl.'s Mem. 9 (document # 70). To the extent that iRacing seeks summary judgment on the question of liability, the Court already addressed the issue in its Prior Order: This Court found Robinson liable under the DCMA, see Fact Section supra. To the extent that iRacing moves the Court to formally enter some form of partial judgment, the motion must be denied.

The questions posed by iRacing's present motion were answered in this Court's Prior Order of May 25, 2007. Indeed, plaintiff's motion seeks to further parse the legal questions in the case to squeeze as many favorable decisions from this Court as possible without having to go to trial. In its Prior Order, the Court held:

> It is undisputed that plaintiff and its
> predecessors have owned the copyright to

> NASCAR 2003 since 2003, and that since then Robinson, without authorization, reverse-engineered NASCAR 2003 and distributed modifications of it . . . .  This is enough to make out a prima facie case of copyright infringement.

Prior Order at 10 (document # 60).  Nonetheless, the Court went on to deny summary judgment on the grounds that there remained disputed issues of material fact relating to Robinson's "fair use" defense -- namely whether Robinson's modifications to the program had any effect on the market for NASCAR 2003.

On this basis, iRacing urges the Court to enter a summary judgment order finding Robinson liable for infringement, subject to a later determination of the "market effect" factor.  The Court cannot do this.  iRacing misunderstands the function of Robinson's fair use defense.  Fair use is a complete defense to a claim of infringement.  See 17 U.S.C. § 107 ("fair use . . . is not an infringement of copyright").  As the Court held in its previous order, iRacing has unquestionably made out a prima facie case of infringement, but it has not finally established liability.  That will not happen until the defendant puts forth evidence of fair use and plaintiff has countered it.  The Court has already made all of the findings that are appropriate in this regard given the evidence in the record.

    D.    **Breach of Contract**

Next, iRacing argues that summary judgment on the question of Robinson's liability for breach of the EULA is appropriate on the facts currently in the record. The Court agrees.

Again, many of the issues here have already been resolved or are undisputed. First, Robinson <u>admits</u> that he installed NASCAR 2003 on his computer and that the installation process required him to accept the EULA.[7] Answer ¶ 24 (document # 19). Further, the EULA states:

> [Y]ou may not, in whole or in part, <u>copy</u>, photocopy, <u>reproduce</u>, translate, <u>reverse engineer</u>, <u>derive source code</u>, <u>modify</u>, disassemble, decompile, [or] <u>create derivative works</u> based on the Program. . . . [Y]ou are not entitled to . . . transfer reproductions of the Program to other parties in any way.

Ex. A to Am. Compl. (document # 18-2); Exh. D to Kaemmer Aff. (document #53-5) (emphasis added). In its Prior Order, the Court found that it was "undisputed that . . . Robinson, without authorization, reverse-engineered NASCAR 2003 and distributed modifications of it."[8] Prior Order 10 (document # 60).

Indeed, Robinson <u>admitted</u> during his deposition that he ran an application in order to create a modified version of the game,

---

[7] At Robinson's deposition, the following exchange occurred: "Q: When you installed NASCAR 2003, did you accept the end user license agreement that was - -?  A: Yes." Robinson Dep. 154 (document # 51-5).

[8] The Court's finding in the Prior Order constitutes the law of the case. See <u>Harlow v. Children's Hosp.</u>, 432 F.3d 50, 55 (1st Cir. 2005); 18B Charles Alan Wright, Arthur R. Miller & Edward H. Cooper, <u>Federal Practice and Procedure</u> § 4478 (2d ed. 2002) ("Law-of-the-case rules have developed to maintain consistency and avoid reconsideration of matters once decided during the course of a single continuing lawsuit.").

Robinson Dep. 102 (document # 51-4), and that he <u>distributed</u> modified versions of the game, Robinson Dep. 100 (document # 51-3).[9]  In his most recent affidavit, Robinson also <u>admits</u> that he used the Ultra Edit tool to "look at [the NASCAR 2003] file and read the hexadecimal digits in that file," in order to create the owr2k5 file.  Robinson Aff. ¶ 28 (document # 72).  Such actions unequivocally contravene the terms of the EULA.[10]  <u>See</u> <u>Bowers v. Baystate Techs., Inc.</u>, 320 F.3d 1317, 1326 (Fed. Cir. 2003).  Thus, if the EULA is enforceable and binding, Robinson is liable for breach.

It is undisputed that the terms of the EULA were not presented to Robinson until after he purchased his copy of NASCAR 2003, inserted the CD-ROM in his computer, and ran the program for the first time.  According to Robinson's affidavit, there was nothing on the panels of the retail box indicating that the game was subject to a EULA.  Robinson Aff. ¶ 3 (document # 72).  Robinson does, however, admit that he installed NASCAR 2003 on his computer and accepted the EULA.  Answer ¶ 24 (document # 19).

---

[9] At Robinson's deposition, the following exchange took place: "Q: --- somebody ran [Don Wilshe's] file to change the NASCAR 2003 executable?  A: Yes.  Q: Who did that – who ran that?  A: I ran it, for one.  Q: Okay.  And so – and it changed the NASCAR 2003 executable in some way?  A: Yes.  Q: How did it change it?  A: It made – it made some changes to the – I presume some values inside the executable to allow us to run Sprint cars."  Robinson Dep. 102 (document # 51-4).

[10] Robinson's attempt to create a material issue of disputed fact is unavailing.  His assertion, for example, that he did not know how the Wilshe tool worked does not change the fact that Robinson used the tool and created a modified version of the game.

Robinson now argues that because he was not on notice of the terms of the EULA when he purchased NASCAR 2003 no contract was ever formed.

Whether so-called "clickwrap" licenses, licensing agreement where users accept terms by clicking a button on the computer screen -- are enforceable contracts has been a much-disputed question. Some courts, following the lead of Step-Saver Data Sys., Inc. v. Wyse Tech., 939 F.2d 91 (3d Cir. 1991), have concluded that such licenses are unenforceable adhesion contracts under the Uniform Commercial Code. Others have come to the opposite conclusion in the vein of ProCD, Inc. v. Zeidenberg, 86 F.3d 1447 (7th Cir. 1996). However, case law nationwide seems to be moving in the direction of favoring enforcement of clickwrap licensing agreements. See A.V. v. iParadigms, Ltd. Liability Co., 544 F. Supp. 2d 473, 479-80 (E.D. Va. 2008) (collecting cases); e.g. Moore v. Microsoft Corp., 741 N.Y.S.2d 91, 92 (N.Y. App. Div. 2002) (EULA enforceable where terms prominently displayed onscreen and user was required to click "I agree" icon).

Courts increasingly hold that "money now, terms later" contracts are enforceable where 1) the binding terms are explicit and 2) the purchaser has a clear opportunity to consult those terms and return the product for a refund if she is unhappy with the terms. See Hill v. Gateway 2000, Inc., 105 F.3d 1147, 1148 (7th Cir. 1997); Adobe Sys. Inc. v. One Stop Micro, Inc., 84 F.

Supp. 2d 1086, 1090-91 (N.D. Cal. 2000) (noting that user had opportunity to return the software if it did not agree with the terms); see also Bowers v. Baystate Techs., Inc., 320 F.3d 1317, 1326 (Fed. Cir. 2003) (court assumed terms of clickwrap agreement were binding and held that defendant breached licensing agreement prohibiting reverse engineering).  In the leading case in this district, i.LAN Sys., Inc. v. Netscout Serv. Level Corp., 183 F. Supp. 2d 328 (D. Mass. 2002), for example, the Court analyzed the question under the UCC and upheld a clickwrap agreement in a dispute between two commercial entities, finding that "money now, terms later," "is a practical way to form contracts, especially with purchasers of software."  Id. at 338.  The Court adopted the reasoning in ProCD and Hill: "terms inside a box of software bind customers who use the software after an opportunity to read the terms and to reject them by returning the product."  Id.

The Court agrees with the reasoning in i.LAN.[11]  Certainly, where such agreements are at issue, courts should be on high alert for abusive, unfair, or unconscionable terms.  Id.  Those concerns, however, are not implicated here: prohibitions on reverse engineering, modification, and redistribution are reasonable in the computer software setting.  Moreover, it is undisputed that Robinson had an opportunity to read the terms; the terms were clear and not hidden.  Thus, by clicking the appropriate button, Robinson manifested his assent to the terms of the EULA.  See Feldman v. Google, Inc., 513 F. Supp. 2d 229,

---

[11] Though neither party has raised the issue, in light of the fact that Robinson is a resident of Texas and bought his copy of NASCAR 2003 there, it is not entirely clear that Massachusetts or California law should apply to questions of contract formation at all.  In a diversity case, a federal court must apply the conflict of laws principles of the state in which it sits. Klaxon Co. v. Stentor Elec. Mfg., Co., 313 U.S. 487, 496-97 (1941). Massachusetts applies "functional" choice-of-law principles and looks to the Restatement (Second) of Conflict of Laws.  Hodas v. Morin, 442 Mass. 544, 549 (2004).  According to § 187 of the Restatement:

> The law of the state chosen by the parties to govern
> their contractual rights and duties will be applied,
> even if the particular issue is one which the parties
> could not have resolved by an explicit provision in
> their agreement directed to that issues, unless . . .
> the chosen state has no substantial relationship to
> the parties or the transaction and there is no other
> reasonable basis for the parties' choice.

In the instant case, California has no apparent relationship to the parties in this case or the particular transaction at issue.  In these circumstances, the Restatement looks to the place of contracting -- here, Texas.

Nevertheless, application of Texas law would not alter the outcome here. In fact, Texas law is arguably even more accepting of "clickwrap" agreements than other jurisdictions.  See Barnett v. Network Solutions, Inc., 38 S.W.3d 200, 204 (Tex. App. 2001)  ("It was Barnett's responsibility to read the electronically -- presented contract, and he cannot complain if he did not do so."); Recursion Software, Inc. v. Interactive Intelligence, Inc., 425 F. Supp. 2d 756, 783 (N.D. Tex. 2006) (adopting Barnett under Texas law); RealPage, Inc. v. EPS, Inc., 2005 WL 2572255, at *5 (E.D. Tex. Sept. 5, 2007) (same).

236 (E.D. Pa. 2007) (citing, inter alia, Specht v. Netscape Commc'ns Corp., 306 F.3d 17, 28-30 (2d Cir. 2002); Forrest v. Verizon Commc'ns, Inc., 805 A.2d 1007, 1010 (D.C. 2002)).

Pursuant to the terms of the EULA, California law governs the construction of the contract. See Hodas, 442 Mass. at 550 (courts will honor parties' choice of law as long as the result is not contrary to public policy). Under California law, a breach of contract claim requires the plaintiff to prove 1) existence of the contract, 2) performance by the plaintiff or excuse for nonperformance, 3) breach by the defendant, and 4) damages. Spiegler v. Home Depot U.S.A, Inc., 552 F. Supp. 2d 1036, 1051 (C.D. Cal. 2008). At this stage, actual damages need not be proven in order for summary judgment to enter as to liability. See Restatement (Second) of Contracts § 346.

For the reasons discussed above, breach here is clear. Thus, the Court **GRANTS** summary judgment as to iRacing's breach of contract claim (Count IV).

### E.  Confidential Disclosure Agreement

Finally, iRacing seeks a declaration that the CDA is binding and enforceable against Robinson.[12] For the same reasons the Court declines to issue a declaratory judgment with respect to

---

[12] The Court notes that the Amended Complaint seeks damages against Robinson for breach of the CDA, but does not request declaratory relief. In the Amended Complaint, iRacing alleges that Robinson "made numerous postings on the Internet in which he disclosed and disseminated confidential and proprietary information regarding the Beta Software and differences between the Beta Software and NASCAR 2003." Am. Compl. ¶ 53 (document # 18). iRacing does not seek summary judgment on that claim here.

the validity of iRacing's copyright, the Court must also deny this request.

There is simply no justiciable controversy as to whether the terms of the CDA are enforceable.  Robinson admits that he entered into the CDA in December 2004.  Answer ¶¶ 1, 50 (document # 19).  He has not advanced any arguments that the CDA is unenforceable.  See MedImmune, 127 S. Ct. at 773; Coffman, 323 U.S. at 302.  The sole piece of evidence advanced by iRacing in support of its request for a declaratory judgment is Robinson's statement on an website that the CDA "wouldn't stand up in court."  Answer ¶ 55 (document # 19) (admitting statement).  While this sort of taunting statement is understandably irksome to iRacing, it simply does not rise to the level of a justiciable controversy for purposes of Article III.

A declaration that the CDA is enforceable would not resolve the underlying conflict between the parties, namely whether Robinson's actions violated the CDA's terms, but would "simply carve out one issue in the dispute for separate adjudication." Calderon, 523 U.S. at 749 (1998).  Summary judgment is inappropriate.

**IV.  CONCLUSION**

For the foregoing reasons, the Court **GRANTS** summary judgment as to the breach of contract claim (Count IV), **but DENIES** summary judgment as to all other relief sought by iRacing **(document #68)**.

**SO ORDERED.**

**Date:   September 24, 2008**              */s/Nancy Gertner*
                                            **NANCY GERTNER, U.S.D.C.**