UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

| | | |
|---|---|---|
| IRACING.COM MOTORSPORTS SIMULATIONS, LLC,<br>　　　Plaintiff,<br><br>　　　v.<br><br>TIM ROBINSON,<br>　　　Defendant. | )<br>)<br>)<br>)<br>)<br>)<br>)<br>) | Civil Action No. 05cv11639-NG |

GERTNER, D.J.:

**BRIEFING ORDER**
March 4, 2009

### I.　　BACKGROUND

iRacing.com Motorsports Simulations, LLC ("iRacing"), a software/video game company, began this suit against Tim Robinson in 2005, alleging copyright infringement, violation of the Digital Millennium Copyright Act ("DMCA"), breach of the End User License Agreement ("EULA") he signed when he first installed NASCAR 2003, and breach of the Confidential Disclosure Agreement ("CDA") he signed when he became a beta tester for iRacing.

　　　**A.　　DMCA and Copyright Infringement**

On May 25, 2007, I found (in response to iRacing's motion for partial summary judgment) that Robinson did in fact violate the DMCA by creating a program, the "NO-CD patch," to circumvent iRacing's anti-piracy measures. At the same time, I declined summary judgment on copyright infringement because there were contested issues with respect to Robinson's "fair use" affirmative defense. Specifically, I found that while three of the four factors involved in the fair use test weighed against a finding of fair use, there were material factual issues that remained as to the effect of Robinson's alleged infringement on iRacing's

potential market.  See Mem. & Order re: Pl.'s Mot. for Partial Summ. J. ("2007 Order"), at 23-24 (document # 60).

### B. EULA and CDA

On September 24, 2008, I granted summary judgment for iRacing as to Robinson's breach of the EULA in reverse engineering NASCAR 2003, but I declined to issue declaratory judgment on the issues of iRacing's possession of a valid copyright and the enforceability of the CDA against Robinson solely because those issues were uncontested.  See Mem. & Order re: Mot. for Summ. J. ("2008 Order"), at 2-3 (document # 78).

### C. Bench Trial Issues

On December 16, 2008, I entered an electronic order clarifying that the remaining issues for the bench trial were limited to: (1) the "Effect on Potential Market" fair use factor and, if I conclude there was no fair use, damages from Robinson's copyright infringement; (2) iRacing's damages under the DMCA claim; (3) iRacing's damages for breach of the EULA; (4) whether Robinson breached the CDA; and (5) if he did, iRacing's damages for breach of the CDA.

A bench trial was held on February 5, 2009, at which point I ruled on the pending motions in limine.  This order is intended to identify the outstanding issues of law and fact that I must decide and to clarify the state of the evidence.  It also sets a schedule for final post-trial briefing, should the parties desire it, though they may also stand on their pretrial submissions.

## II. ISSUES OF LAW AND FACT

The remaining issues of law and fact, organized by claim, are as follows:

### A. Copyright Infringement

1. <u>Fair Use</u>: Did Robinson's infringement have an effect on the potential market for NASCAR 2003 and/or its derivative works? What was the extent of the market harm caused by his infringing conduct, and would unrestricted and widespread conduct of that nature have a substantially adverse impact on the potential market for the original or derivative works? See <u>Fitzgerald v. CBS Broad., Inc.</u>, 491 F. Supp. 2d 177, 190 (D. Mass. 2007); <u>see also</u> <u>Harper & Row, Publishers, Inc. v. Nation Enters.</u>, 471 U.S. 539, 568 (1985).

2. <u>Willfulness</u>: If Robinson infringed iRacing's copyright, was his infringement willful in that he knew or should have known that his conduct constituted infringement? <u>See</u> <u>Fitzgerald</u>, 491 F. Supp. 2d at 190.

   a. At what point was Robinson on notice that iRacing owned the copyright to NASCAR 2003?

3. <u>Damages</u>: If Robinson infringed iRacing's copyright, he is liable for statutory damages of $750 to $30,000. 17 U.S.C. § 504(c)(1). If his infringement was willful, I can impose statutory damages up to $150,000. <u>Id.</u> § 504(c)(2). If Robinson proves that he was not aware and had no reason to believe that his acts constituted infringement, I may reduce the award to as low as $200. <u>Id.</u> In each scenario, what amount of damages is warranted if not the minimum or maximum? On what basis should an intermediary figure be selected?

4. <u>Injunctive Relief</u>: On what basis is injunctive relief warranted in this case? What evidence suggests that Robinson does or does not pose a threat of future infringement to iRacing?

**B.     DMCA**

1. Robinson violated the DMCA. Under 17 U.S.C. § 1203(c)(3)(a), statutory damages are $200 to $2,500 per act of circumvention, device, product, component, offer, or performance of service. How many such acts did Robinson commit? What amount of damages should I assign for each act?

**C.     Breach of the EULA**

1. Robinson breached the EULA he signed in February 2003. That EULA is governed by California law. <u>See</u> 2008 Order, at 17 (document # 60). By what reason, if any, should iRacing not be awarded nominal damages?

**D.      Breach of the CDA**

1. Did Robinson breach the CDA he signed in January 2005 when he posted on racing web forums on March 19, 2005, June 5, 2005, or any other occasion? Did his revelations about the existence of the new game or of the beta testing, the number of testers, the plan to grow the beta testing, the regional teams feature, or the addition of a low horsepower car to the game constitute "information" under the CDA?

2. If Robinson breached the CDA, is there any reason not to award iRacing nominal damages?

      **E.**      **Attorneys Fees**

           1.      I will reserve briefing on this issue until I have resolved the issues of liability and damages.

**III.**      **STATE OF THE EVIDENCE**

The federal rules instruct courts on the impact of factual findings made in partial summary judgment orders on the record for trial:

> If summary judgment is not rendered on the whole action, the court should, to the extent practicable, determine what material facts are not genuinely at issue.  The court should so determine by examining the pleadings and evidence before it and by interrogating the attorneys.  It should then issue an order specifying what facts — including items of damages or other relief — are not genuinely at issue.  The facts so specified must be treated as established in the action.

Fed. R. Civ. P. 56(d).  In accordance with this rule, I issued an electronic order on December 16, 2008, clarifying that the factual findings made in the 2007 Order and the 2008 Order "are taken as established for the purpose of the trial."  The purpose of summary judgment proceedings is to give the parties and the Court an opportunity to narrow the issues, to identify what is contested and what is not.  A considerable amount of time was spent evaluating the claims and issuing two decisions.  Neither side can now come forward to claim that a decided issue should be reopened without good cause.

Accordingly, my electronic order of December 16, 2008, stands, with a single exception: In summarizing the facts of the case, I wrote, "Once in possession of a copy of the beta version, Robinson reverse-engineered the program, made various modifications, and distributed the modified code via his websites . . . ."  2007 Order, at 4-5 (document # 60).  In fact, Robinson reversed engineered the copy of NASCAR 2003 that he purchased from a retail store in February

2003; he did not reverse engineer any files sent to him as part of beta testing in late 2004 or early 2005.

The parties submitted additional factual evidence in the form of pre-trial affidavits, exhibits to those affidavits, and testimony at trial. iRacing submitted affidavits from CEO David Kaemmer and Executive Vice President Steve Myers and made both available for examination at trial. The entirety of their testimony, written and live, is now part of the record. Furthermore, Robinson did not object to any of the exhibits iRacing sought to admit, so all were moved into evidence. These included all screen captures from Robinson's websites, his forum posts, and iRacing's website; emails between Robinson and iRacing officials or its counsel between March and August 2005; take-down letters issued by iRacing in August 2005; a copy of the CDA; a copy of the EULA; Kaemmer's March 2005 "open letter" to the sim racing community; Robinson's responses to iRacing's first set of interrogatories, dated November 11, 2005; and the transcript of Robinson's deposition, held on November 15, 2005; and affidavits provided by Robinson. iRacing also submitted evidence on the issue of attorney's fees, but that evidence is not relevant at this time: as I stated in my electronic order of January 28, 2009, the issue of attorneys fees will be addressed after I dispose of the remaining questions of liability and damages.

Robinson submitted affidavits from himself and Tim McArthur, and both testified live on cross-examination. Robinson also put forth the following set of exhibits: the Wikipedia entry on Papyrus; a screen shot of Project Wildfire's website, which includes its mission statement and its later notice that all downloads had been removed; a BHMotorsports.com interview with a member of Project Wildfire from July 22, 2003; an email exchange between Myers and a

modification ("mod") developer from October 2003; a May 10, 2004 About.com story about Papyrus; a screen shot of instructions posted at Torn8oAlley.com on how to install a Project Wildfire mod; screen shots from OW-Racing.com; press releases from First-Racing.net; news articles on iRacing's development of its web-based product; iRacing's beta tester application; emails between Myers and Robinson; emails between Robinson and iRacing marketing vice president Brett Roubinek; search results from the Copyright Office's online catalog; a screen shot of a discussion thread at ThePits.com; a blog post by Myers that appears on iRacing's website; and certain other exhibits attached to Tim McArthur's affidavit.

iRacing objected to most of these exhibits as not produced during discovery, irrelevant to the issues identified for trial, hearsay, lacking foundation, and unduly prejudicial. See Omnibus Mot. in Limine (document #102). Plaintiff also moved to exclude the entirety of McArthur's affidavit and any part of Robinson's own affidavit dealing with the mod development groups Project Wildfire or Team Redline. See Mot. in Limine (document # 106).

While I take seriously the defendant's obligations under Rule 26, I find that iRacing will not be prejudiced by the admission of these late-produced documents. Accordingly, I will allow them to be admitted. These documents, including the news articles, are not hearsay because they go to Robinson's state of mind and are relevant to whether any copyright infringement was willful. Any foundation defects were cured at trial. Any Rule 403 objections are likewise inapplicable in this bench trial.

On the other hand, McArthur's testimony about First Racing's lawsuit against him is irrelevant to the instant action and is excluded. McArthur's legal analysis of Robinson's NO-CD

patch is excluded because he is not qualified as a legal expert, but the Court will consider his testimony about the purpose, functionality, and availability of NO-CD patches generally.

iRacing's remaining objections center around the relevance of information about Project Wildfire and Team Redline.  According to Robinson, a group of developers and beta testers formed Project Wildfire in 2003 when they learned that Sierra, then-owner of NASCAR 2003, was not going to continue to develop the game.  They received patches and development tools from individuals at Papyrus, including Myers.  iRacing co-founder John Henry served as senior advisor to the group.  Project Wildfire produced mods from mid-2003 to mid-2004.  Team Redline is another development cohort that released a mod as late as 2005.  In reviewing this history, Robinson argues that Papyrus waived the EULA long before he first reverse engineered the game and created a mod in June or July 2004.

As discussed above, the EULA issue is closed.  I found in my second summary judgment order that Robinson breached the EULA by reverse engineering NASCAR 2003, see 2008 Order, at 17 (document # 78).  Robinson had an opportunity to fully litigate this issue at that time.  It is far too late now to reopen this issue on the basis of evidence available years ago.  Nonetheless, evidence about Project Wildfire's and Team Redline's activities may bear on the issue of whether Robinson's infringement of iRacing's copyright, if found, was willful.  If any documents suggest that Robinson believed he was entitled to modify the NASCAR 2003 executable, that he reasonably did not know that his action was copyright infringement, see Fitzgerald, 491 F. Supp. 2d at 190, then they are relevant and admissible.  Therefore, I will consider them for the limited purpose of deciding the willfulness issue.

## IV.     BRIEFING SCHEDULE

iRacing submitted a trial brief on the remaining issues of law and fact on January 29, 2009 (document # 89), but Robinson has not. While I am surely not obliged to give Robinson another opportunity to file a brief, when he ignored earlier deadlines, I will do so. Robinson may submit a brief by March 18, 2009. Though it may rest on its pretrial brief, iRacing may also submit an additional brief by that date. Both parties shall limit their briefs to 20 pages.

**SO ORDERED.**

**Date: March 4, 2009**                                   */s/Nancy Gertner*
                                                                        **NANCY GERTNER, U.S.D.C.**