UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | | |
|---|---|---|
| iRACING.COM MOTORSPORT SIMULATIONS, LLC, a Delaware Limited Liability Company, | : | Civil Action No. 05-11639 NG |
| Plaintiff, | : | |
| v. | : | **PLAINTIFF'S POST-TRIAL BRIEF** |
| TIM ROBINSON, individually and d/b/a www.ow-racing.com, www.torn8oalley.com and www.First-Racing-Sucks.com, | : | |
| Defendant. | : | |

Pursuant to Local Rule 16.5(f) and this Court's March 4, 2009 Briefing Order (Docket No. 111), Plaintiff iRacing.com Motorsport Simulations, LLC ("iRacing") hereby submits its Post-Trial Brief. As the Court suggested in the Briefing Order, iRacing rests largely on the legal arguments set forth in its Trial Brief submitted on January 29, 2009 (Docket No. 89), but desires to address certain of the open issues of law and fact outlined in the Briefing Order. (Briefing Order at 3-4).

**1.     Did Robinson's infringement have an effect on the potential market for NASCAR 2003 and/or its derivative works? What was the extent of the market harm caused by his infringing conduct, and would unrestricted and widespread conduct of that nature have a substantially adverse impact on the potential market for the original or derivative works? (Briefing Order at 3).**

The testimony of David Kaemmer ("Kaemmer") established that unrestricted and widespread conduct similar to that of Robinson's would have a substantially adverse impact on the potential market for iRacing.com, which is a derivative work of NASCAR 2003. (Trial Aff. of David Kaemmer (Docket No. 97) ("Kaemmer Aff.") ¶ 22). As more fully outlined in iRacing's Trial Brief, that is all that is necessary to establish that the

"effect on the potential market" fair use factor balances in favor of iRacing.  (Trial Brief at 2-4 *citing* Fitzgerald v. CBS Broad., Inc., 491 F. Supp. 2d 177, 189 (D. Mass. 2007)).  Robinson submitted no evidence to the contrary, despite the fact that it is his burden to demonstrate this fair use factor.  (Memo. & Order re: Pl.'s Mot. for Partial Summ. J. (May 25, 2007) (Docket No. 60) at 12 (Robinson's burden to demonstrate fair use)).[1]

**2.   If Robinson infringed iRacing's copyright, was his infringement willful in that he knew or should have known that his conduct constituted infringement? (Briefing Order at 3).**

In March 2005, iRacing's Steve Myers ("Myers") and Robinson exchanged numerous e-mails in which Myers informed Robinson that his conduct constituted copyright infringement.  (Trial Aff. of Steve Myers (Docket No. 98) ("Myers Aff.") ¶¶ 5-12).  Apparently in recognition of this fact, Robinson removed his infringing files later that month.  (Myers Aff. ¶ 11).  However, Robinson began distributing his modifications again in August 2005, together with graphics that read "Bite Me FIR$T" and "Bite Me TWICE FIR$T" in reference to First Racing.  Based on this, as well as the arguments outlined in iRacing's Trial Brief, Robinson's infringement was willful.  (Trial Brief at 4-10 *citing* Fitzgerald, 491 F. Supp. 2d at 190).

**3.   At what point was Robinson on notice that iRacing owned the copyright to NASCAR 2003? (Briefing Order at 3).**

On March 3, 2005, Kaemmer posted an open letter to the sim-racing community on iRacing's website (the "Open Letter").  (Kaemmer Aff. ¶ 11).  The Open Letter notified sim-racers that iRacing had purchased all of the rights to NASCAR 2003. (Kaemmer Aff. ¶ 11).  The Open Letter explained that the copyrights were significant to the value of iRacing's investment and, as such, iRacing would seek to protect its

---

[1]   Robinson is precluded from arguing that his work was transformative, as this Court has found otherwise.  (Memo. & Order re: Pl.'s Mot. for Partial Summ. J. (May 25, 2007) (Docket No. 60) at 17).

2

copyrights in NASCAR 2003. (Kaemmer Aff. ¶ 11). Robinson read the Open Letter in March 2005. (Robinson Dep. Tr. 61:12 – 66:8; Direct Testimony of Tim Robinson (Docket No. 96) ("Robinson Aff.") ¶ 34).[2] Additionally, from March 4-18, 2005, Myers and Robinson exchanged numerous e-mails in which Myers repeatedly indicated that iRacing purchased the copyrights to NASCAR 2003. (Myers Aff. ¶¶ 5-12). On March 4, 2005, Robinson confirmed his knowledge that iRacing purchased the copyrights to NASCAR 2003. (Myers Aff. Ex. C at 00146 ("The copyright you purchased enables you to modify the physics which then protects your version of your own executable when it is completed, which I have no problem supporting")). Robinson's argument that he lacked constructive knowledge of iRacing's ownership of the copyrights based on iRacing's alleged failure to immediately register the assignment of the copyright is irrelevant in the face of the evidence demonstrating his actual notice. Even assuming *arguendo* that Robinson's constructive notice of iRacing's ownership of NASCAR 2003 is somehow relevant to this matter, Robinson admits that the assignment was recorded on June 28, 2005 (Robinson Aff. ¶ 38), and Robinson's infringements indisputably continued into August 2005 (Myers Aff. ¶¶ 21-26).

**4.  If Robinson infringed iRacing's copyright, he is liable for statutory damages of $750 to $30,000. 17 U.S.C. § 504(c)(1). If his infringement was willful, I can impose statutory damages up to $150,000. Id. § 504(c)(2). If Robinson proves that he was not aware and had no reason to believe that his acts constituted infringement, I may reduce the award to as low as $200. Id. In each scenario, what amount of damages is warranted if not the minimum or maximum? On what basis should an intermediary figure be selected? (Briefing Order at 3).**

The maximum amount of statutory damages should be awarded for the reasons

---

[2]  iRacing designated portions of Robinson's deposition transcript as evidence on February 2, 2009. (Docket No. 99). At the Court's request, iRacing delivered a full copy of the deposition transcript to the Court's chambers on February 3, 2009. The Court accepted this transcript as evidence without objection from Robinson. (Briefing Order at 6).

3

set forth in iRacing's Trial Brief.  (Trial Brief at 4-10).  Some factors that may be considered in determining willfulness include the defendant's continuing disregard for the law, the size of the defendant's operation, the defendant's resistance to production of documents, or the defendant's intent, concealment, or basic lack of respect for others' copyrights.  Venegas-Hernandez v. Sonolux Records, 370 F.3d 183, 195-96 (1st Cir. 2004) (affirming judgment of copyright infringement) (*cited* in Trial Brief at 5).  Other courts find that the two primary factors in determining statutory damages are: (1) deterring future conduct similar to that of the defendant and (2) compensating the plaintiff.  Eros Entm't, Inc. v. Melody Spot, L.L.C., No. 99 CV 1157 SJ, 2005 WL 4655385, *10-11 (E.D.N.Y. Oct. 11, 2005) (awarding $225,000 in statutory damages, recognizing a "need for a significant deterrent" based on unrefuted evidence that the defendant continued to violate plaintiff's copyrights even after he was aware of plaintiff's ongoing objections).

Furthermore, Robinson may not argue ignorance of the relevant copyright laws to overcome a finding of willfulness.  Broadcast Music, Inc. v. Triple L Vending, Inc., No. SA-86-CA-754, 1987 WL 45244, *3 (W.D. Tex. Aug. 14, 1987) ("Defendants' argument of ignorance of the law is not based on common sense. The copyright laws are just like any other law and ignorance is no excuse"); Chi-Boy Music v. Charlie Club, Inc., 930 F.2d 1224, 1227-28 (7th Cir. 1991) (discussing notice, deliberate ignorance, and past dealings between the parties as relevant to a finding of willful infringement).  Moreover, "a defendant's ability to pay damages is not generally a factor that is considered in determining the amount of statutory damages awarded under the [Copyright] Act." Wilen v. Alternative Media Net, Inc., No. 03-CIV-2524-RMB-JCF, 2005 WL 167589, *5

4

(S.D.N.Y. Jan. 26, 2005) (awarding statutory damages).

**5.    On what basis is injunctive relief warranted in this case? What evidence suggests that Robinson does or does not pose a threat of future infringement to iRacing? (Briefing Order at 4).**

As discussed in iRacing's Trial Brief, a finding of liability for copyright infringement, combined with the threat of future infringement, justifies the imposition of a permanent injunction. (Trial Brief at 4-10 *citing* Cipes v. Mikasa, Inc., 404 F. Supp. 2d 367, 371-72 (D. Mass. 2005)). Here, Robinson stated on the record in November 2005 – three months after this case was initiated – that he would like to continue "modding" NASCAR 2003. (Robinson Dep. Tr. 239:10 – 240:1). Additionally, evidence submitted at trial demonstrated that Robinson reneged on previous promises not to infringe on NASCAR 2003 when he redistributed modifications that he had previously agreed to remove from online distribution. (Myers Aff. ¶¶ 5-12, 21-25). These facts show that Robinson poses a threat of future infringement to iRacing, warranting an injunction. Cipes, 404 F. Supp. 2d at 371-72.

**6.    Robinson violated the DMCA. Under 17 U.S.C. § 1203(c)(3)(a), statutory damages are $200 to $2,500 per act of circumvention, device, product, component, offer, or performance of service. How many such acts did Robinson commit? What amount of damages should I assign for each act? (Briefing Order at 4).**

As outlined in iRacing's Trial Brief, iRacing requests that this Court enter an award for iRacing against Robinson on the DMCA claim in the amount of $2,500, multiplied by a reasonable estimate that at least forty users downloaded Robinson's NO-CD Patch, for an award of $100,000 (Trial Brief at 12 *citing* Sony Computer Entm't Am., Inc. v. Divineo, Inc., 457 F. Supp. 2d 957, 966-67 (N.D. Cal. 2006); *see also* Microsoft Corp. v. Silver Star Micro, Inc., No. 1:06-cv-1350-WSD, 2008 WL 115006, *9

(N.D. Ga. Jan. 9, 2008) (awarding the statutory maximum $2,500 per violation).

***7.     Robinson breached the EULA he signed in February 2003. That EULA is governed by California law … By what reason, if any, should iRacing not be awarded nominal damages? (Briefing Order at 4).***

iRacing is entitled to nominal damages for Robinson's breach of the EULA for the reasons set forth in iRacing's Trial Brief.  (Trial Brief at 12).

***8.     Did Robinson breach the CDA he signed in January 2005 when he posted on racing web forums on March 19, 2005, June 5, 2005, or any other occasion? Did his revelations about the existence of the new game or of the beta testing, the number of testers, the plan to grow the beta testing, the regional teams feature, or the addition of a low horsepower car to the game constitute "information" under the CDA? (Briefing Order at 4).***

The relevant provision of the CDA states:

> Without prior written consent of [iRacing], [Robinson] shall neither disclose to any third party any or all of the Information disclosed by [iRacing] hereunder, including the existence of the Product … Such obligations of confidentiality shall continue until such a time as the Information becomes public knowledge without fault on the part of [Robinson].

(Trial Brief at 12-15 *citing* CDA ¶ 2).  The CDA defines "Information" as "including but not limited to specifications and product features" of the product tentatively titled "FIRST-Racing.net."  (CDA ¶ 2).  The evidence at trial demonstrated that in late 2004, iRacing developed a beta version of FIRST-Racing.net (later known as iRacing.com) that included open-wheel capability (the "Beta Version").  (Myers Aff. ¶ 4).  In December 2004, iRacing asked a number of users and programmers, including Robinson, to test the Beta Version.  (Myers Aff. ¶ 4).  As part of the arrangement, Robinson was provided with a copy of the Beta Version to test and supply feedback to iRacing.  (Myers Aff. ¶ 4).  Upon receiving the Beta Version, Robinson signed the CDA.  (Myers Aff. ¶ 4, Ex. A).

The trial evidence also demonstrated that in 2005, Robinson was a frequent contributor under the user name "TRobinson" to the public online forum at *FIRST-*

*RACING-SUCKS.com*. (Myers Aff. ¶ 13). On June 5, 2005, Robinson posted on *FIRST-RACING-SUCKS.com* numerous non-public details regarding the testing of the Beta Version, including the number of testers, the breakdown of the testers into regional teams, and iRacing's plans to grow the beta testing. (Myers Aff. ¶ 17, Ex. H). He also disclosed that "[t]heir plans may be revolutionary, but while I was testing, it was nothing more than a modified .exe to drive a tricked up IROC car with very low HP in the 'FPA' and 'FPB' groups as they called them." (Myers Aff. ¶ 17, Ex. H). Robinson did not refute this evidence. Accordingly, under both Massachusetts and Texas law, Robinson breached this essential provision of the CDA on these two occasions. Teragram Corp. v. Marketwatch.com, Inc., 444 F.3d 1, 11-12 (1st Cir. 2006) (finding material breach); Lazy M Ranch, Ltd. v. TXI Operations, LP, 978 S.W.2d 678, 681 (Tex. App. 1998) (material breach occurred).

**9.  If Robinson breached the CDA, is there any reason not to award iRacing nominal damages? (Briefing Order at 4).**

iRacing is entitled to nominal damages for Robinson's breach of the CDA for the reasons set forth in iRacing's Trial Brief. (Trial Brief at 15).

DATED: March 18, 2009                    Respectfully submitted,

iRacing.com Motorsport Simulations, LLC
By its attorneys,

  /S/  Michael G. Andrews
Irwin B. Schwartz (BBO# 548763)
Michael G. Andrews (BBO# 663452)
Nicholas R. Cassie (BBO# 672698)
Business Litigation Associates, P.C.
225 Franklin Street, 26th Floor
Boston, Massachusetts 02110
(617) 421-1800

**Certificate of Service**

      I, Michel G. Andrews, attorney for Plaintiff iRacing.com Motorsport Simulations, LLC, hereby certify that on this 18th day of March 2009, I filed the foregoing document with the Clerk of the Court using the CM/ECF system, which will send notification of such filing to: Joseph F. Ryan, Lyne Woodworth & Evarts LLP, 12 Post Office Square, Boston, MA 02109, counsel for Defendant Tim Robinson.

    /s/  Michael G. Andrews
    Michael G. Andrews